## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TOM HUSSEY PHOTOGRAPHY, LLC,

          Plaintiff,

    v.

BDG MEDIA, INC.,

          Defendant.

C.A. No. 20-404-MN

---

### DEFENDANT BDG MEDIA, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

OF COUNSEL:

Eleanor M. Lackman
Bradley J. Mullins
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022

Chad M. Shandler (#3796)
Nicole K. Pedi (#6236)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7836
shandler@rlf.com
pedi@rlf.com

*Attorneys for Defendant*
*BDG Media, Inc.*

1

**TABLE OF CONTENTS**

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ......................................... 1

II.    SUMMARY OF ARGUMENT ................................................................... 1

III.   STATEMENT OF FACTS ........................................................................ 3

       A.     Plaintiff's Allegations ................................................................ 3

       B.     The Parties' Lack Of Any Relevant Connections To This District ...................... 4

              1.     Plaintiff Is A Texas Company With No Connection To Delaware ........... 4

              2.     BDG Is Based In New York City, Where All Of Its Relevant
                     Witnesses And Evidence Are Located ........................................ 4

IV.    ARGUMENT ...................................................................................... 6

       A.     Plaintiff's Claims Should Be Dismissed Pursuant To Rule 12(b)(6) ................... 6

              1.     Plaintiff Fails To Allege Any Actionable Conduct By BDG ................... 7

              2.     Plaintiff's Copyright Infringement Claim Is Untimely ........................... 10

       B.     If This Case Proceeds, It Should Be Transferred To The Southern District Of
              New York ................................................................................ 12

              1.     Plaintiff Could Have Filed This Action In New York ........................... 13

              2.     Transfer Would Best Serve The Convenience Of The Parties And
                     Witnesses And Is In The Interests Of Justice .............................. 13

                     a.     The Private Interest Factors Weigh in Favor of Transfer ............ 13

                     b.     The Relevant Public Interest Factors also Weigh in Favor of
                            Transfer ........................................................... 17

              3.     The Balance Of Relevant Factors Favors Transfer To The Southern
                     District Of New York ............................................................ 20

**TABLE OF CONTENTS**
<u>(continued)</u>

                                                                                        **<u>Page</u>**

V.      CONCLUSION.................................................................................................................. 20

ii

# **TABLE OF AUTHORITIES**

**Page(s)**

## CASES

*Alfa Laval Inc. v. Flowtrend, Inc.*,
    No. CV H-14-2597, 2016 WL 2625068 (S.D. Tex. May 9, 2016) ......................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 6

*Berkery v. Verizon Commc'ns Inc.*,
    658 F. App'x 172 (3d Cir. 2016) ......................................................................................... 6

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*,
    No. 16-733-GMS, 2017 WL 1536394 (D. Del. Apr. 27, 2017) ........................................ 12

*Blackbird Tech LLC v. Cloudflare, Inc.*,
    No. 17-283, 2017 WL 4543783 (D. Del. Oct. 11, 2017) ................................................... 17

*Chelko v. Does JF Rests., LLC*,
    No. 3:18-CV-00536-GCM, 2019 WL 3294201 (W.D.N.C. July 22, 2019) ......................... 11

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
    No. 11- 1050-GMS, 2013 WL 828220 (D. Del. Mar. 6, 2013) .............................................. 16

*Contour IP Hld., LLC v. GoPro, Inc.*,
    No. 15-1108-LPS-CJB, 2017 WL 3189005 (D. Del. July 6, 2017) ................................ 14, 18

*Fortinet, Inc. v. FireEye, Inc.*,
    944 F. Supp. 2d 352 (D. Del. 2013) ...................................................................................... 16

*Good Tech. Corp. v. MobileIron, Inc.*,
    No. CV 14-1308-LPS-CJB, 2015 WL 1458091 (D. Del. Mar. 27, 2015) ............................. 20

*Hussey v. Style Pantry LLC*,
    Case No. 2:20-cv-00721 (C.D. Cal.) ..................................................................................... 3

*In re Delmarva Sec. Litig.*,
    794 F. Supp. 1293 (D. Del. 1992) ........................................................................................ 7

*Joseph v. Buffalo News, Inc.*,
    No. CV 16-1325-RGA, 2017 WL 3314006 (D. Del. Aug. 3, 2017) .......................... 14, 15, 17

iii

# TABLE OF AUTHORITIES
<u>(continued)</u>

<u>Page(s)</u>

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) .................................................................................14, 18

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
  421 F.3d 199 (3d Cir. 2005) ............................................................................................7

*Leonard v. Stemtech Health Scis., Inc.*,
  No. CV 08-67-LPS-CJB, 2013 WL 5288266 (D. Del. Sept. 19, 2013) .................7, 8

*McClain v. Camouflage Assocs.*,
  No. CIV.A. 93-0994, 1994 WL 570874 (E.D. Pa. Oct. 18, 1994) ...........................19

*MEC Res., LLC v. Apple, Inc.*,
  269 F. Supp. 3d 218 (D. Del. 2017) ........................................................................16, 18

*Memory Integrity, LLC v. Intel Corp.*,
  No. 13- 1804-GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015) ............................15

*Minden Pictures, Inc. v. Buzzfeed, Inc.*,
  390 F. Supp. 3d 461 (S.D.N.Y. 2019) .....................................................................11

*Mitel Networks Corp. v. Facebook, Inc.*,
  943 F. Supp. 2d 463 (D. Del. 2013) .........................................................................18

*MoneyCat Ltd v. PayPal Inc.*,
  No. CV 1:13-1358, 2014 WL 2042699 (D. Del. May 15, 2014) ......................14, 18

*N.J. Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*,
  760 F.3d 297 (3d Cir. 2014) .......................................................................................6

*O'Boyle v. Braverman*,
  337 F. App'x 162 (3d Cir. 2009) ...............................................................................6

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
  848 F.2d 414 (3d Cir. 1988) .......................................................................................7

*OpenTV, Inc. v. Netflix, Inc.*,
  No. 12-1733-GMS, 2014 WL 1292790 (D. Del. Mar. 31, 2014) ......................14, 15

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Parker v. Google, Inc.*,
   242 F. App'x 833 (3d Cir. 2007) .......................................................................7, 10

*Parker v. Paypal, Inc.*,
   No. CV 16-4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017)..............................8

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV11-07098 AHM SHX, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013)...........9

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
   572 U.S. 663 (2014)..............................................................................................10

*Rappoport v. Steven Spielberg, Inc.*,
   16 F. Supp. 2d 481 (D.N.J. 1998) ........................................................................19

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ....................................................................10

*Skidmore v. Led Zeppelin*,
   106 F. Supp. 3d 581 (E.D. Pa. 2015) ...................................................................13

*Tanksley v. Daniels*,
   902 F.3d 165 (3d Cir. 2018)................................................................................6, 7

*Thomas-Fish v. Avborne Accessory Grp., Inc.*,
   No. CV 18-1195-MN-SRF, 2019 WL 3281273 (D. Del. July 19, 2019)).............9

*VHT, Inc. v. Zillow Grp., Inc.*,
   918 F.3d 723 (9th Cir. 2019) ...............................................................................10

*Wacoh Co. v. Kionix Inc.*,
   845 F. Supp. 2d 597 (D. Del. 2012)................................................................19, 20

*Wolf v. Travolta*,
   167 F. Supp. 3d 1077 (C.D. Cal. 2016) ..........................................................11, 12

### STATUTES

17 U.S.C. § 507(b)........................................................................................................10

v

**TABLE OF AUTHORITIES**
<u>(continued)</u>

**Page(s)**

28 U.S.C.

§ 1331.................................................................................................................13

§ 1338(a)...........................................................................................................13

§ 1400(a)...........................................................................................................13

§ 1404................................................................................................................12

§ 1404(a)...........................................................................................................12

Copyright Act Section 106......................................................................................11

Federal Rule of Civil Procedure 12(b)(6) ....................................................1, 3, 6, 20

## I.     NATURE AND STAGE OF THE PROCEEDINGS

Defendant BDG Media, Inc. ("BDG") respectfully submits this brief in support of its motion to dismiss the Complaint of Plaintiff Tom Hussey Photography, LLC ("Plaintiff") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), based on Plaintiff's failure to allege any actionable conduct by BDG within the applicable statute of limitations, or indeed at any time.  In the alternative, BDG respectfully asks that the Court transfer this action to the Southern District of New York, where BDG maintains its principal place of business and where Plaintiff, a Texas company, has chosen to litigate in the past.

## II.    SUMMARY OF ARGUMENT

Plaintiff, along with its principal, Tom Hussey ("Hussey"), is a serial litigator, having filed numerous copyright infringement lawsuits against small companies and individuals throughout the country based on the same series of photographs at issue here.  Plaintiff appears determined to extract unreasonable payments based on years-old uses, without any regard to the actual merit of its claims, or the circumstances surrounding its lawsuit that would give a reasonable litigant pause.  This case serves as a prime example of this strategy.  Here, Plaintiff is suing BDG over an article posted to the website www.flavorwire.com ("Flavorwire") on March 23, 2011, nearly nine years before Plaintiff filed suit.  Worse, Plaintiff concedes that BDG only acquired Flavorwire in 2018, seven years after the article was posted on the Flavorwire website and the allegedly infringing photographs were posted to Wordpress.com ("Wordpress"), a third-party site.  Nevertheless, at the beginning of 2020, Plaintiff insisted that BDG pay it hundreds of thousands of dollars to resolve this dispute.  And while BDG was preparing a response to Plaintiff's demands, Plaintiff proceeded to file this lawsuit in the midst of a worldwide pandemic

that left both Courts and many offices closed to most business.

The truth is that Plaintiff should not have brought this lawsuit at all, and it certainly should not have filed it in Delaware, where neither party has any relevant connections. Plaintiff's Complaint fails to identify any volitional conduct by BDG as necessary to state a claim for copyright infringement, and its claim should be dismissed for that reason alone.  All Plaintiff accuses BDG of is acquiring a website that contained a previously-written article with allegedly infringing content embedded therein; Plaintiff does not, and cannot, allege that BDG played an active role in selecting that content, much less posting it on Wordpress.  More broadly, Plaintiff is attempting impermissibly to sue over a nine-year-old article, well outside of the Copyright Act's three-year statute of limitations, and its claim must fail for that reason as well.

But even if Plaintiff were able to adequately allege a properly stated claim against BDG (and all indications are that it cannot), the Court should exercise its discretion to transfer this action to the Southern District of New York.  BDG maintains its principal place of business in New York, and expects that all of its relevant witnesses and evidence, along with potential third-party witnesses, would be located there.  Plaintiff is based in Texas, has no apparent connection to Delaware, and has been fully willing to litigate in the Southern District of New York in the past, having filed multiple lawsuits there about some of the same photographs at issue here.

For the reasons set forth in more detail below, BDG respectfully requests that the Court dismiss Plaintiff's Complaint against it.  To the extent any of Plaintiff's claims proceed, BDG also respectfully requests that this action be transferred to the Southern District of New York.

### III.    STATEMENT OF FACTS

#### A.       Plaintiff's Allegations[1]

Plaintiff alleges it is the successor by assignment to the copyrights in nine images originally owned by its principal, Hussey.[2]  Compl., ¶ 2.  Hussey claims to be an "award-winning photographer" that specializes in commercial advertising and lifestyle photography, and the original author of a series of images known as the "Reflection Series," which series includes the nine photographs at issue in this litigation (the "Photographs").  *Id.*, ¶¶ 3, 8.  Plaintiff alleges that the Photographs were registered with the Copyright Office under two separate registrations, one in 2009 and one in 2019.  *Id.*, ¶ 9.

Plaintiff alleges that the Photographs were reproduced at a series of website URLs associated with third-party site Wordpress.com, all of which relate to a single article posted to Flavorwire on March 23, 2011 (the "Article").  Compl., ¶ 13 & Ex. D; *see also* Mullins Decl., Ex. A.  Plaintiff also alleges that BDG, which was incorporated more than two years after the date of the Article, acquired Flavorwire from its previous owner on or about August 15, 2018, and that BDG has been "directly operating and managing" Flavorwire since that time, "at the earliest." Compl., ¶¶ 10-11; *see also* Mullins Decl., Ex. B.

---

[1] These allegations are taken from Plaintiff's Complaint, and to the extent they plead plausible facts, are presumed true for the purposes of the motion on Rule 12(b)(6) grounds.  BDG reserves the right to challenge these allegations if this lawsuit proceeds.

[2] It is unclear whether it is Plaintiff or Hussey that is actually the owner of the Photographs. While Plaintiff claims to be the owner before this Court, in a separate lawsuit filed by different lawyers earlier this year, Hussey expressly alleged that he—not Plaintiff—was "the sole owner of the exclusive rights" in some of the very same Photographs.  *See* Declaration of Bradley J. Mullins ("Mullins Decl."), Ex. G (*Hussey v. Style Pantry LLC*, Case No. 2:20-cv-00721 (C.D. Cal.), at ¶¶ 8, 11, 14, 17, 23, 26).

**B.**     <u>**The Parties' Lack Of Any Relevant Connections To This District**</u>

  **1.**     **Plaintiff Is A Texas Company With No Connection To Delaware**

Plaintiff is a limited liability company that is incorporated in Texas, with its principal place of business in Dallas, Texas.  Compl., ¶ 2; Mullins Decl., Ex. C.  Hussey, the original author of the photographs and Plaintiff's principal, also resides in Dallas, Texas.  Compl., Ex. A. Starting in 2016 through today, Plaintiff (or Hussey himself) has filed at least twenty copyright infringement lawsuits against various defendants throughout the country, the majority of which were based on some of the same photographs at issue in this lawsuit.  Mullins Decl., ¶¶ 6-9 & Exs. D-F.  Six of these lawsuits were filed in the Southern District of New York (*id.*, ¶ 10), and the rest were spread between California, Colorado, Connecticut, Florida, Georgia, Nevada, and Washington, D.C.  *Id.*, Ex. D-F.  Plaintiff does not appear to have ever previously filed any lawsuits in Delaware, or have had any other meaningful contacts with Delaware.

  **2.**     **BDG Is Based In New York City, Where All Of Its Relevant Witnesses And Evidence Are Located**

BDG is a digital media company that publishes web content on a wide variety of topics of general and special interest through a number of websites, including, as relevant in this case, Flavorwire.  Decl. of Jessica Stukonis ("Stukonis Decl."), ¶ 2.  Like many corporations, BDG is incorporated in Delaware, but its primary place of business is in New York City, New York, in the borough of Manhattan.  *Id.*, ¶ 3.  BDG has approximately 246 full-time employees in New York City.  *Id.*  These include writers, editors, members of BDG's legal department, and all of BDG's executives.  *Id.*  BDG also has a number of smaller satellite offices in Chicago, London and Los Angeles. *Id.*, ¶ 4.  BDG has no employees or any other presence in Delaware, other than the presence of certain corporate documents in the state.

4

All of the BDG witnesses and documents potentially relevant to this dispute are located in New York City.  The Flavorwire website is not currently operational, and has not been operational since December 2019 (although it remains accessible).  Stukonis Decl., ¶ 6.  Any current BDG employee that would have knowledge of Flavorwire's operation prior to December 2019 would be located in New York City.  *Id.*  BDG's internal servers are also located in New York City.  *Id.*, ¶ 9.  Decisions regarding what ultimately is posted on BDG-owned websites and decisions regarding general policies and procedures for postings, including protocols for use of photographic content, are all made at BDG's headquarters.  *Id.*, ¶ 8.  Any documents related to those decisions, and documents reflecting general policies and procedures are also located at BDG's headquarters.  *Id.*, ¶ 9.  BDG employees who could testify as to how traffic to Flavorwire is measured, how revenue is attributed to any given article and how much revenue (if any) is attributable to the Article at issue in this case, are all located in New York City, as are any documents related to these topics.  *Id.*, ¶ 8.

The Article has no connection to Delaware.  The writer of the Article, Caroline Stanley, is not and has never been an employee of BDG, and appears currently to reside in or around Cupertino, California.  Mullins Decl., Exs. A, H.  The prior owner of Flavorwire, Flavorpill Productions LLC d/b/a Flavorpill Media, is based in New York City, and its former executive continues to reside there.  Mullins Decl., Ex. J, K.  Any articles published on Flavorwire are equally accessible from anywhere in the world.  Stukonis Decl., ¶ 10.  The Article received a total of 442 views since BDG's acquisition of Flavorwire in 2018.  *Id.*, ¶ 11.  It is unknown, and is difficult (if not impossible) to know whether any views originated in Delaware.  *Id.*, ¶ 12.

BDG's legal department is located at BDG's headquarters. *Id.*, ¶ 13.  Having to travel to

Delaware for trial, hearings, depositions, conferences and mediation would be inconvenient and disruptive for BDG's legal team. *Id*. All BDG executives with authority to settle this dispute are also in New York City. *Id.*, ¶ 14. To the extent travel to Delaware would be required for this case, it would be disruptive and inconvenient for BDG executives to do so. *Id.* Having to travel to Delaware for trial, hearings and depositions would also be inconvenient and disruptive for BDG employees who might serve as witnesses in this matter. *Id.*, ¶ 15.

## IV.   ARGUMENT

### A.   Plaintiff's Claims Should Be Dismissed Pursuant To Rule 12(b)(6)

Under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *N.J. Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). A limitations defense may provide a basis for dismissal on a Rule 12(b)(6) motion where the time bar is apparent "on the face of the complaint," or from judicially noticeable documents. *See Berkery v. Verizon Commc'ns Inc.*, 658 F. App'x 172, 174 (3d Cir. 2016); *O'Boyle v. Braverman*, 337 F. App'x 162, 164 (3d Cir. 2009) (affirming dismissal on statute of limitations grounds based on judicially noticeable documents).

"[I]n evaluating a motion to dismiss, courts are not limited to the four corners of the complaint, but may also consider evidence 'integral to or explicitly relied upon' therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (citation omitted). In a copyright infringement action, these documents include copies of the "allegedly infringing works." *Id.*

6

The Court may also take judicial notice of the factual record of a prior proceeding, and of other

matters of public record.  *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414,

416 n.3 (3d Cir. 1988); *In re Delmarva Sec. Litig.*, 794 F. Supp. 1293, 1299 (D. Del. 1992).

### 1.    Plaintiff Fails To Allege Any Actionable Conduct By BDG

Plaintiff's Complaint must be dismissed for the threshold reason that it entirely fails to

allege any actionable copyright infringement by BDG.  To allege a claim for copyright

infringement, a plaintiff must state: "(1) ownership of a valid copyright; and (2) unauthorized

copying of original elements of the plaintiff's work."  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421

F.3d 199, 203 (3d Cir. 2005) (internal quotation marks and citation omitted).  "Additionally, to

state a direct copyright infringement claim, a plaintiff must allege volitional conduct on the part

of the defendant."  *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007); *see also*

*Leonard v. Stemtech Health Scis., Inc.*, No. CV 08-67-LPS-CJB, 2013 WL 5288266, at *5 (D.

Del. Sept. 19, 2013) ("a finding of direct copyright infringement requires deliberate, direct action

or participation on the part of the defendant (i.e., volitional conduct)"), *report and*

*recommendation adopted*, ECF No. 217 (D. Del. Oct. 4, 2013) (docket entry only).

Here, the only actual conduct by BDG alleged in Plaintiff's Complaint is that BDG (i)

acquired Flavorwire in August 2018 by way of an asset purchase, and (ii) that BDG has been

operating and managing the website since that time.  *See* Compl., ¶¶ 10-11.  When it comes to

actual infringement of the Photographs, however, Plaintiff (in a glaring use of the passive voice)

alleges only that it "discovered the Copyrighted Works were reproduced and being publicly

displayed and distributed without Plaintiff's authorization at" a series of website URLs.  *Id.*, ¶

13.  Plaintiff does not allege that BDG had any direct role in the alleged infringement, *e.g.*, that

7

BDG created any of the content at those URLs, or that BDG played any part in deciding to post the Photographs to the URLs listed in the Complaint.  In fact, nine of the URLs do not lead to Flavorwire at all, but direct to a separate website, "flavorwire.files.wordpress.com".  *See id.*, ¶ 13.  And while Plaintiff alleges that "screenshots evidencing the Defendant's infringing reproductions, distributions and public displays of the Copyrighted Works are attached hereto as Exhibit D[,]" said Exhibit D consists only of screenshots from Wordpress.com, and omits any screenshots from Flavorwire itself.  *Id.*, ¶ 14 & Ex. D.  Plaintiff notably has not alleged that BDG had any role in posting any infringing material to the Wordpress.com website.

Moreover, the website URLs identified by Plaintiff themselves evidence that BDG was not involved in posting the allegedly infringing content.  The screenshots in Plaintiff's Exhibit D indicate that the content located at the Wordpress URLs was last modified on January 26, 2013, and the Article reflects that it was posted on March 23, 2011.  *See* Compl., Ex. D; Mullins Decl., Ex. A.  Plaintiff, however, concedes that BDG's involvement with Flavorwire did not begin until years later, in 2018, when it took over ownership of the Flavorwire site.  *See* Compl., ¶ 11.

Therefore, at most, Plaintiff alleges only that BDG now operates a website that embeds allegedly infringing content posted by someone else seven years before BDG was involved with that website (and two years before BDG even existed).  *See* Compl., ¶ 11; Mullins Decl., Ex. B.  The law is clear, however, that "merely hosting infringing content does not constitute direct copyright infringement."  *Parker v. Paypal, Inc.*, No. CV 16-4786, 2017 WL 3508759, at *4 (E.D. Pa. Aug. 16, 2017); *see also Leonard*, 2013 WL 5288266, at *8 (rejecting argument that "owning, hosting, and directly profiting from a website equates to direct liability for infringement, even in the absence of direct participation in causing the infringement to occur");

*Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM SHX, 2013 WL 2109963, at *8 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) ("An allegation that Defendants control the content on their servers, without a good-faith allegation specifying how Defendants exercised that control to directly create copies, cannot alone create an inference that Defendants engaged in a volitional act directly causing infringement.").

Moreover, BDG cannot be held liable for the earlier conduct of Flavorwire's prior owners for yet another, independent reason: Plaintiff expressly alleges that BDG's acquisition of Flavorwire "was accomplished by way of an asset purchase, not an acquisition of the corporate entity that formerly owned the Website itself."  Compl., ¶ 10.  Under well-settled law, "[t]he general rule of successorship liability is really one of nonliability .... [A] company which purchases the assets of another company will not ordinarily be held liable for the debts of the seller."  *Thomas-Fish v. Avborne Accessory Grp., Inc.*, No. CV 18-1195-MN-SRF, 2019 WL 3281273, at *3 (D. Del. July 19, 2019), *report and recommendation adopted sub nom. Thomas-Fish v. Avborne Accessory Grp.*, 2019 WL 3574205 (D. Del. Aug. 6, 2019).

Nor can Plaintiff salvage its claim by contending that, by merely operating Flavorwire after its acquisition in 2018, BDG somehow violated Plaintiff's reproduction, distribution or display right whenever a visitor stumbled upon the original 2011 Article and happened to view the Photographs.  Just like an internet service provider that simply makes available content posted by users, BDG had no role in selecting the Photographs or instigating their inclusion in the Article – indeed, such an allegation would be implausible.  Courts have regularly rejected infringement claims based on such passive conduct, and Plaintiff's claim should be rejected here as well.  *See*, *e.g.*, *Parker*, 242 F. App'x at 836-37 (affirming dismissal of infringement claim

against defendant that allegedly archived plaintiff's copyrighted work and made it "accessible to others," based on failure to allege "any volitional conduct"); *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 733 (9th Cir. 2019) (defendant did not violate display right based on infringing photos on website, where defendant did not "'exercise[ ] control' over these photos beyond the 'general operation of [its website].'" (citation omitted)); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995) ("Although copyright is a strict liability statute, there should still be some element of volition or causation which is lacking where a defendant's system is merely used to create a copy by a third party.").

Simply put, Plaintiff has not alleged, and cannot allege, any actionable conduct by BDG. Its copyright infringement claim against BDG must be dismissed.

### 2.     Plaintiff's Copyright Infringement Claim Is Untimely

Even were Plaintiff able to allege any volitional conduct on the part of BDG, its claims would nevertheless fail for a second, independent reason – they are wholly barred by the Copyright Act's statute of limitations.

The Copyright Act requires that any claim be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). As the Supreme Court has explained, "[a] copyright claim thus arises or 'accrue[s]' when an infringing act occurs." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 670 (2014). Again, the content located at the URLs listed in Plaintiff's Complaint demonstrates, on its face, that the Photographs were posted in March 2011. Mullins Decl., Ex. A; Compl., Ex. D. Plaintiff did not file this lawsuit, however, until March 2020—nine years later. Plaintiff's lawsuit was thus six years too late, and should be dismissed.

Plaintiff cannot resurrect its stale claim by contending that the Photographs were still

10

available in connection with the original article when BDG acquired Flavorwire in 2018.  It is well-settled that simply maintaining a website containing a previously published article does not give rise to a new copyright infringement claim.  *See Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 n.13 (C.D. Cal. 2016) (an "allegedly infringing document—published in 2010, outside the relevant three-year window—remain[ing] on defendant's website through 2014 does not give rise to a discrete claim accruing within the three-year window" (internal quotes and modifications omitted)); *see also Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) (copyright infringement claim accrued when photographs were first posted on website); *Alfa Laval Inc. v. Flowtrend, Inc.*, No. CV H-14-2597, 2016 WL 2625068, at *6 (S.D. Tex. May 9, 2016) (claim time-barred where "[t]here is no evidence that Defendants engaged in new acts of copyright infringement after it originally posted the Copyrighted Materials on its website, which occurred by 2009.").  The reason for this rule is clear.  "If every access of a copyrighted work on a website establishes a new claim for infringement, as Plaintiff contends, the statute of limitations becomes obsolete for the internet.  Merely checking to see if a photograph is still on a website would reset the clock and establish a new claim." *Chelko v. Does JF Rests., LLC*, No. 3:18-CV-00536-GCM, 2019 WL 3294201, at *5 (W.D.N.C. July 22, 2019).

It also does not matter that Flavorwire came under new ownership in 2018.  Merely obtaining ownership of a website does not violate any of the exclusive rights provided by Section 106 of the Copyright Act; that act of asset acquisition does not, in and of itself, result in any new reproduction, distribution, or display of the content available on the website.  Plaintiff has not alleged any new volitional conduct by BDG within the three years preceding this lawsuit, and the

11

purported continuing harm caused by the Photographs being posted to Flavorwire in 2011 cannot serve as a basis for never-ending liability against whoever might later come to own the website. *Cf. Wolf*, 167 F. Supp. 3d at 1099 ("the allegedly infringing document's continued presence on defendant's website through 2014 at best constitutes 'harm from [a] past violation[ ] that [was] continuing' through 2014, and not a 'new wrong' that gave rise to '[s]eparately accruing harm' within the limitations period." (quoting *Petrella*, 134 S. Ct. at 1969, n.6)).

As Plaintiff's copyright infringement claim accrued when the Photographs were posted in 2011, and because Plaintiff cannot identify any subsequent infringements by BDG, its claim is time-barred and should be dismissed.

**B.** **If This Case Proceeds, It Should Be Transferred To The Southern District Of New York**

As stated above, Plaintiff has no valid claim to pursue against BDG in any Court, and its Complaint should be dismissed entirely. Should any of Plaintiff's claims survive dismissal, however, this action should be transferred to the Southern District of New York.

Under 28 U.S.C. § 1404, a district court may transfer a case to "any other district or division where it might have been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Courts in the Third Circuit perform a two-step inquiry to evaluate whether transfer is warranted. First, the court must determine "whether the action could have been brought originally in the proposed transferee forum." *Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, No. 16-733-GMS, 2017 WL 1536394, at *1 (D. Del. Apr. 27, 2017). Second, the court evaluates "whether transfer would best serve the convenience of the parties and witnesses as well as the interests of justice." *Id.* This analysis clearly confirms that this action should be resolved in the Southern District of New York.

12

### 1.    Plaintiff Could Have Filed This Action In New York

There is no question that Plaintiff could have brought this action in the Southern District of New York.  The Southern District would be an appropriate (and, as explained below, far more convenient) venue, as BDG maintains its principal place of business and is subject to personal jurisdiction there.  See 28 U.S.C. § 1400(a) ("Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights … may be instituted in the district in which the defendant or his agent resides or may be found."); *Skidmore v. Led Zeppelin*, 106 F. Supp. 3d 581, 584 (E.D. Pa. 2015) ("A defendant in a copyright action 'may be found' wherever the defendant is subject to personal jurisdiction; thus, 'venue in a copyright action is proper in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state.'" (citation omitted)).  Additionally, the Southern District would have subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a).  Accordingly, Plaintiff surely could have filed this case in the Southern District of New York.

### 2.    Transfer Would Best Serve The Convenience Of The Parties And Witnesses And Is In The Interests Of Justice

Both the "private interest factors" and the "public interest factors" relevant to the transfer analysis confirm that transfer to the Southern District of New York would best serve the convenience of the parties and witnesses, as well as the interest of justice.

### a.    The Private Interest Factors Weigh in Favor of Transfer

The private interest factors relevant to transfer include (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) whether the events giving rise to the suit took place in the transferee court; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) whether the relevant evidence is located in the transferee court.  *See Jumara v. State Farm*

*Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  These factors weigh heavily in favor of transfer.

(i)      *Plaintiff's Choice of Forum is Entitled to Little Weight*

While a plaintiff's choice of forum is typically accorded substantial weight, "the

deference given to the plaintiff's choice is reduced when the chosen venue is not the plaintiff's

home forum." *MoneyCat Ltd v. PayPal Inc.*, No. CV 1:13-1358, 2014 WL 2042699, at *4 (D.

Del. May 15, 2014).  That is just the case here.  Plaintiff has no connection to Delaware.  It is

registered in Texas, and admits its principal place of business is located in Dallas, Texas.  *See*

Mullins Decl., Ex. C; Compl., ¶ 2.  The author of the Photographs, Tom Hussey, also resides in

Dallas, Texas.  *See* Compl., Ex. A.  Simply put, other than BDG's incorporation in Delaware,

Plaintiff's choice of forum has no connection to this case and should not defeat transfer.  *See*

*Joseph v. Buffalo News, Inc.*, No. CV 16-1325-RGA, 2017 WL 3314006, at *1 (D. Del. Aug. 3,

2017) (granting motion to transfer where "[t]he only connection to Delaware is the fact that

Defendant is incorporated in the State of Delaware."); *OpenTV, Inc. v. Netflix, Inc.*, No. 12-1733-

GMS, 2014 WL 1292790, at *1-2 (D. Del. Mar. 31, 2014) (plaintiff's choice of forum not

accorded substantial weight where neither party had a principal place of business in Delaware).

(ii)     *BDG Prefers the Southern District of New York*

For this litigation, BDG strongly prefers the Southern District of New York, the site of its

principal place of business and all of its relevant witnesses and evidence.  *See Contour IP Hldg.,*

*LLC v. GoPro, Inc.*, No. 15-1108-LPS-CJB, 2017 WL 3189005, at *9 (D. Del. July 6, 2017)

("As this Court has often held, the physical proximity of the proposed transferee district to a

defendant's principal place of business (and relatedly, to witnesses and evidence potentially at

issue in the case) is a clear, legitimate basis for seeking transfer."), *report and recommendation*

14

*adopted*, 2017 WL 3225983 (D. Del. July 31, 2017).  This factor thus weighs in favor of transfer.

(iii)    *Plaintiff's Claim Arose, if Anywhere, in New York*

Here, the Photographs were allegedly embedded into an Article posted to Flavorwire in 2011, and the then-owner of that website was located in New York.  Mullins Decl., Ex. I.  Moreover, BDG's website ownership – *i.e.*, the only conduct of BDG that Plaintiff has placed at issue in this lawsuit – took place out of New York.  *See supra*, pp. 4-5.  Thus, the conduct giving rise to Plaintiff's copyright infringement claim is centered in New York, and this factor favors transfer.  *See Joseph*, 2017 WL 3314006, at *1 (where "the publication at issue took place in Buffalo, New York," finding that "a substantial part of the events giving rise to the [copyright infringement] claim took place" in New York, and transfer was appropriate to New York); *cf. Memory Integrity, LLC v. Intel Corp.*, No. 13- 1804-GMS, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015) ("Infringement claims . . . have even deeper roots in the forum where the accused products were developed."); *OpenTV, Inc.*, 2014 WL 1292790, at *2 (factor favors transfer where defendant provided its "video streaming service nationwide" but the allegedly infringing products "were developed and designed in the Northern District of California").

(iv)    *The Convenience of the Parties Favors Transfer*

The Southern District of New York is far more convenient for the parties and the parties' employees.  Without transfer, all parties (and most of their lawyers) will need to spend time and money to travel to Delaware.  BDG's principal offices, and all witnesses with knowledge potentially relevant to this lawsuit, are located in the Southern District of York.  *See supra*, at pp. 4-5.  Accordingly, the Southern District of New York is significantly more convenient for BDG and its employee-witnesses. *See MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 226 (D.

15

Del. 2017) (factor favors transfer where "[t]he associated logistical and operational costs for Apple's employees to travel to Delaware would be complicated and more expensive than trial in the Northern District of California"). Neither Plaintiff, nor the photographer of the Photographs, have any connection to Delaware, and Plaintiff has previously availed itself of Courts in New York to litigate copyright infringement claims involving some of the same Photographs at issue here. *See* Mullins Decl., ¶ 10; *Fortinet, Inc. v. FireEye, Inc.*, 944 F. Supp. 2d 352, 355 (D. Del. 2013) (transfer granted where plaintiff "has availed itself of the jurisdiction of Northern California on at least five occasions."). As such, this factor also heavily favors transfer, because trial in New York would inconvenience BDG much less than trial in Delaware, and Plaintiff will be required to travel regardless of whether this action proceeds in Delaware or New York. *See MEC Res., LLC*, 269 F. Supp. 3d at 226 (factor weighs in favor of transfer "because the parties' physical locations are not convenient to Delaware and [Plaintiff's] litigation costs will likely remain the same because its two employees must travel even if we do not transfer venue"); *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11- 1050-GMS, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013) (plaintiff would be "forced to bear travel costs no matter the court's decision, but proceeding in California would likely spare the defendants significant expense").

### (v)     The Convenience of Witnesses Favors Transfer

It is not entirely clear to BDG what non-party witnesses might be relevant to this litigation, particularly in light of the fact that BDG did not obtain ownership of Flavorwire until 2018, long after the allegedly infringing Article was posted to that website. BDG's current knowledge, however, indicates that no known witnesses would be located in Delaware, and some may very well be located in New York. Most notably, the owner of Flavorwire at the time of the

initial posting, Flavorpill Media, is based in New York, and its former chief executive appears to reside in New York. *See* Mullins Decl., Exs. I, J. The author of the Article originally referencing the Photographs appears to currently reside in or around Cupertino, California. *Id.*, Ex. H. Hussey, the author of the Photographs, resides in Texas. Compl., Ex. A. Thus, what is clear is that there is not a single known, relevant non-party witness in Delaware, and there may very well be non-party witnesses located in New York. As noted above, the party witnesses are either in New York (for BDG) or Texas (for Plaintiff). Thus, this factor also favors transfer. *See Joseph*, 2017 WL 3314006, at *1 (granting transfer where "Defendant's witnesses reside in or near Buffalo, New York" and "no possible witnesses reside in Delaware").

> ### (vi)   The Location of Relevant Evidence Favors the Southern District of New York

BDG's documents and other evidence relating to the management and operation of Flavorwire are located and maintained at its offices in New York. Stukonis Decl., ¶ 9. BDG does not maintain any documents or evidence in Delaware, and presumably neither does Plaintiff. This factor also weighs in favor of transfer. *See Blackbird Tech LLC v. Cloudflare, Inc.*, No. 17-283, 2017 WL 4543783, at *10 (D. Del. Oct. 11, 2017) ("If most of the evidence resides in the proposed transferee forum and none resides in the transferor forum, it is error to not weigh this factor heavily in favor of transfer.").

> ### b.   The Relevant Public Interest Factors also Weigh in Favor of Transfer

Consideration of the public interest factors also favors transfer here. These factors include "practical considerations that could make the trial easy, expeditious, or inexpensive", "the relative administrative difficulty in the two fora resulting from court congestion", and "the local interest in deciding local controversies at home." *See Jumara*, 55 F.3d at 879-80. Each of

these factors weighs in favor of transfer.[3]

(i)      *Practical Considerations Favor Transfer*

As a practical matter, proceeding in the Southern District of New York would undeniably make trial easier and less expensive.  BDG's witnesses and evidence would not have to travel to Delaware for pre-trial and trial proceedings, and Plaintiff's travel commitments would largely remain the same.  Transfer would thus decrease the disruption and expense of this litigation.  *See MEC Res., LLC*, 269 F. Supp. 3d at 227 ("Because [defendant]'s principal places of business and the bulk of their employees are in the Northern District of California, we can fairly assume trial would be more inexpensive there."); *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 476 (D. Del. 2013) ("in consideration of the fact that neither party operates nor has facilities, offices, or employees in Delaware, the court finds that the practical considerations of efficiency, expense, and ease favor transfer.").  BDG would also be spared the expense of retaining Delaware local counsel, and Plaintiff could continue to be represented by the same law firm.[4]  *See Contour IP Hldg.*, 2017 WL 3189005, at *13 (factor favors transfer because "if trial proceeded in Delaware, this would require the additional cost of retaining Delaware counsel"); *MoneyCat*, 2014 WL 2042699, at *6 (trial near defendant's "headquarters is likely to present

---

[3] Courts occasionally consider other public interest factors, such as the enforceability of the judgment, the public policies of the fora, and familiarity with the applicable state law in diversity cases.  *See, e.g.*, *Jumara*, 55 F.3d at 879-80.  These factors are either neutral or irrelevant in this case, as a judgment would be equally enforceable from both fora, states do not have different public policies in application of federal law, and, because this is not a diversity case, state law does not apply.

[4] Plaintiff's law firm, Duane Morris, has an office in New York City, and has represented Plaintiff's principal in similar lawsuits throughout the country.  Mullins Decl., ¶ 17 & Ex. L. Plaintiff's lead counsel in this action is based in Boston, which is also closer to New York than it is to Delaware.

18

fewer complications than one across the country. Witnesses who live within a short distance of

the courthouse are likely to be more flexible as to when they are able to attend trial and testify,

making the management of the proofs simpler" and transfer "would relieve both parties of the

expense of local counsel").

(ii)    *The Southern District of New York has a Strong Interest in Resolving this Dispute*

BDG has its principal place of business in New York, and neither party has offices or

employees in Delaware.  Thus, "New York has a strong interest in the proper application of its

laws to persons doing business within its jurisdiction[,]" while Delaware's interest in this

litigation is minimal.  *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 503 (D.N.J.

1998).  New York's interest is particularly acute here, as Plaintiff is accusing BDG, a media

company, of copyright infringement based on an article posted to a website that BDG recently

acquired.  "Indeed, as the center of publishing in this country New York has a strong, widely

recognized interest in uniformly regulating media defendants whose speech originates in New

York."  *McClain v. Camouflage Assocs.*, No. CIV.A. 93-0994, 1994 WL 570874, at *2 (E.D. Pa.

Oct. 18, 1994).  Delaware has no comparable interest, as Plaintiff has no connection to Delaware,

and BDG's incorporation in Delaware is of little relevance to this litigation.  *See Wacoh Co. v.

Kionix Inc.*, 845 F. Supp. 2d 597, 604 (D. Del. 2012) (granting transfer where "the corporation

that has chosen Delaware is not a Delaware corporation, and the corporations that might want to

claim the benefits of being a Delaware corporation do not want to do so in this case").

(iii)    *Court Congestion is Neutral*

The relative congestion between this Court and the Southern District of New York is a

neutral factor.  As of December 31, 2019, the median time from filing to trial was 30.9 months in

19

Delaware, and 31.1 months in the Southern District.  Mullins Decl., Ex. K.  Thus, this factor has little weight in the transfer analysis.  *See Good Tech. Corp. v. MobileIron, Inc.*, No. CV 14-1308-LPS-CJB, 2015 WL 1458091, at *9 (D. Del. Mar. 27, 2015) (finding factor neutral and granting transfer where "statistics do not demonstrate a meaningful difference in court congestion").

> **3.     The Balance Of Relevant Factors Favors Transfer To The Southern District Of New York**

As set forth above, nearly every relevant transfer factor favors the Southern District of New York.  The only factor that even arguably weighs against transfer is Plaintiff's choice to file suit in Delaware, despite having no personal connections to this forum.  Simply put, "[t]he only connection to Delaware in this case is that it is plaintiff's choice of forum—which since plaintiff is a non-Delaware corporation with no connection of any kind to Delaware, is not entitled to 'paramount' consideration—and that the defendant[] [is a] Delaware corporation[], which is not a 'dispositive' factor."  *Wacoh Co.*, 845 F. Supp. 2d at 605.  In light of the overwhelming weight of the other factors, transfer of this action to the Southern District of New York is warranted.

## V.     CONCLUSION

For the foregoing reasons, BDG respectfully requests that Plaintiff's Complaint be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In the alternative, BDG respectfully requests that this case be transferred to the Southern District of New York.

RICHARDS, LAYTON & FINGER, P.A.

/s/ Chad M. Shandler

OF COUNSEL:                         Chad M. Shandler (#3796)
                                    Nicole K. Pedi (#6236)
Eleanor M. Lackman                  One Rodney Square
Bradley J. Mullins                  920 North King Street
MITCHELL SILBERBERG & KNUPP LLP     Wilmington, Delaware 19801
437 Madison Ave., 25th Floor        (302) 651-7836
New York, New York 10022            shandler@rlf.com
                                    pedi@rlf.com

                                    *Attorneys for Defendant*
                                    *BDG Media, Inc.*

DATED:  May 1, 2020

21