**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TOM HUSSEY PHOTOGRAPHY, LLC,

          Plaintiff,

    v.

BDG MEDIA, INC.,

          Defendant.

C.A. No. 1:20-cv-00404-MN

**PLAINTIFF TOM HUSSEY PHOTOGRAPHY, LLC'S
ANSWERING BRIEF IN OPPOSITION TO DEFENDANT BDG MEDIA, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE,
<u>TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK</u>**

**DUANE MORRIS LLP**

**OF COUNSEL:**

Steven M. Cowley
(Admitted Pro Hac Vice)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA  02110-1724
Tel.:  (857) 488-4261
smcowley@duanemorris.com

Mackenzie M. Wrobel (#6088)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Tel: (302) 657-4900
mmwrobel@duanemorris.com

*Attorneys for Plaintiff*
*Tom Hussey Photography, LLC*

Dated: May 22, 2020

## <u>TABLE OF CONTENTS</u>

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.    SUMMARY OF ARGUMENT ........................................................................................1

III.   FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT ....................................2

IV.   ARGUMENT ..................................................................................................................3

      A.    The Rule 12(b)(6) Standard .............................................................................. 3

      B.    Plaintiff Has Adequately Pled Defendant's Direct Infringement of Plaintiff's Exclusive Rights By Reproducing, Displaying And Distributing The Copyrighted Works ...................................................................................... 4

           1.    Defendant's Reproduction And Display Of The Copyrighted Works On Its Website Constitute Direct Acts Of Infringement......................................... 4

           2.    Defendant Distributed Copies Of The Copyrighted Works....................... 6

           3.    No Third Party Is Responsible For The Infringement ............................... 7

      C.    Plaintiff's Copyright Infringement Claims Against Defendant Are Timely .......... 8

           1.    Defendant's Infringement's Commenced In August 2018, Well Within The Three-Year Statute Of Limitations ...................................................... 8

           2.    Plaintiff's Infringement Claims Are Timely Under The Discovery Rule, Even If Infringements Began Pre-August 2018.......................................... 8

      D.    Defendant's Motion To Transfer Should Be Denied ............................................ 9

           1.    The Case Should Continue In Delaware Because Defendant Has Not Met Its Significant Burden To Establish That Transfer Is Appropriate ............ 9

           2.    The Balance Of Private Factors Do Not Strongly Support A Transfer .... 11

                 a.    Plaintiff's Forum Choice Is Entitled To "Significant Deference" And Weighs In Favor Of Maintaining The Case In Delaware ................................................................................11

                 b.    Defendant's Incorporation In Delaware Undermines Its Preference To Litigate In The Southern District Of New York ......................................................................................12

                 c.    Defendant's Broad Infringement is a Neutral Factor....................12

i

d.      Delaware is Equally Convenient for Both Parties ........................13

e.      Defendant Misapplies the Convenience to Witnesses
        Analysis, Which Does not Warrant Transfer in this Case .............14

f.      Modern Technology Moots the Significance of the
        Location of Defendant's Books and Records ................................15

3.    The Balance of Relevant Public do not Strongly Support a Transfer....... 15

a.      Practical Considerations Underscore the Duplicative and
        Unnecessary Costs Imposed by a Transfer ...................................15

b.      The Local Interests Factor is Neutral in Infringement Cases ........16

c.      Judicial Vacancies in New York Push the Administrative
        Factor in Favor of Maintaining the Action in Delaware...............16

4.    The Balance of the Relevant Private Factors Supports Maintaining this
      Case in Delaware ................................................................................. 17

V.    Conclusion ....................................................................................................17

**<u>TABLE OF AUTHORITIES</u>**

**Cases**

*ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565 (D. Del. 2001)..................................12, 15

*AIP Acquisition LLC v. iBasis, Inc.*, 2012 WL 5199118 (D. Del. Oct. 19, 2012)............. 12, 14-15

*APL Microscopic, LLC v. U.S.*, 144 Fed. Cl. 489 (Fed. Cl. 2019) ............................................. 6-9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................3

*C. R. Bard, Inc. v. Angiodynamics, Inc.*, 156 F. Supp. 3d 540 (D. Del. 2016) ......................11, 16

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL 1617186
    (D. Del. Nov. 28, 2001) ......................................................................................11, 13, 15

*Devicor Med. Products, Inc. v. Biopsy Scis., LLC*, 2013 WL 1628644 (D. Del.
    Apr. 15, 2013) .........................................................................................................12

*Goldman v. Breitbart News Agency, LLC*, 302 F.Supp.3d 585 (S.D.N.Y. 2018)...........................6

*Graphics Prop. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320
    (D. Del. 2013) ......................................................................................................16

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp.
    2d 627 (E.D. Pa. 2007).......................................................................................... 4-5

*Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118 (D. Del. 2016)......................*Passim*

*Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744 (D. Del. 2012)...... 10, 12, 14-15

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) ....................................................10, 14

*Kennedy v. Creditgo, LLC*, 2015 WL 7760181 (D.N.J. Dec. 2, 2015)..........................................5

*Live Face on Web, LLC v. Smart Move Search, Inc.*, 2017 WL 1064664 (D. N.J.
    March 21, 2017)................................................................................................... 6-7

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014)......................................................9

*PhishMe, Inc. v. Wombat Security Tech., Inc.*, 2017 WL 3821107 (D. Del.
    Aug. 31, 2017) ......................................................................................................3

*Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543 (N.D. Tex. 1997),
    *aff'd*, 168 F.3d 486 (5th Cir. 1999)......................................................................5

*Pro Spice Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336 (E.D. Pa. 2001).........................10

*Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970) ........................................................ 10-11

*Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718 (D. Del. 2012) ................. 10-12, 16

*Textron Innovations, Inc. v. Toro Co.*, 2005 WL 2620196 (D. Del. Oct. 14, 2005).... 12, 14, 16-17

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215 (D. Del. 1993) ................................................................................................. 11, 13-14, 17

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3d Cir. 2009) ................................................8

## Statutes and Rules

17 U.S.C. § 106 ...............................................................................................................................4

17 U.S.C. § 501 .............................................................................................................................5,9

28 U.S.C. § 1404(a) ................................................................................................................... 9-10

Fed. R. Civ. P. R. 12(b)(6) ...................................................................................................... 1-3, 15

## Other Authorities

3 *M. Nimmer & D. Nimmer*, Copyright § 12.05[B][1][b] (2013) ....................................................9

## I.     <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

Plaintiff, Tom Hussey Photography, LLC ("Plaintiff"), through his undersigned counsel, Duane Morris LLP, submits this Answering Brief In Opposition To Defendant BDG Media, Inc.'s Motion To Dismiss Plaintiff's Complaint Or, In The Alternative, To Transfer Venue To The Southern District Of New York.   Contemporaneous with this Answering Brief, Plaintiff also submits and relies upon the supporting Declaration of Steven M. Cowley ("Cowley Decl.").

## II.    <u>SUMMARY OF ARGUMENT</u>

This is a case of willful copyright infringement arising out of Defendant's acquisition of unauthorized copies of nine copyrighted images owned by Plaintiff (identified in the Complaint as the "Copyrighted Works") in August 2018, and its reproduction and display of those infringing copies on pages of its website—www.flavorwire.com ("Website")—resulting in hundreds of distributions the Copyrighted Works since that date.  Defendant ignores multiple paragraphs in the Complaint alleging that Defendant has directly reproduced, displayed and distributed Plaintiff's Copyrighted Works over the last two years, and instead argues that Plaintiff merely alleges an entity from which Defendant purchased infringing versions of the Copyrighted Works is the only party accused of committing acts of infringement, and all more than nine years ago.  Defendant's characterization of the Complaint is inaccurate and its disavowal of the alleged infringing acts it committed since August 208 in no way supports a motion to dismiss under Rule 12(b)(6).

If unsuccessful on its Rule 12(b)(6) arguments, Defendant requests a transfer from its state of incorporation to the Southern District of New York on the basis that New York is more convenient for the conglomerate digital media company.  It is undisputed that Delaware is an appropriate forum, and Defendant has not demonstrated that the interests of justice strongly favor a transfer.  Because only Defendant stands to benefit from a transfer by getting a second chance to persuade a new court that dismissal is appropriate, which it is not, transfer should be denied.

III.    <u>**FACTUAL ALLEGATIONS IN PLAINTIFF'S COMPLAINT**</u>

Plaintiff is a small (sole proprietorship) and highly acclaimed photography studio specializing in sophisticated advertising campaigns and lifestyle photographs. Compl. ¶ 3. The most popular and celebrated of Plaintiff's portfolio of creative advertising work is the "Reflections" series, which includes the nine Copyrighted Works infringed by the Defendant. *Id.*

Because Defendant's Rule 12(b)(6) motion is premised on the representation that Plaintiff's Complaint fails to allege any act of infringement by Defendant occurring in the last three years, Plaintiff sets out those allegations again here:

> 10. On or about August 15, 2018, Defendant acquired the Website from its previous owner. On information and belief, and based on the representation of Defendant's in-house counsel, that acquisition was accomplished by way of an asset purchase, not an acquisition of the corporate entity that formerly owned the Website itself.

> 11. Defendant has been directly operating and managing the Website since August 15, 2018, at the earliest. Accordingly, Defendant's first act of infringement with regard to the Copyrighted Works occurred on August 15, 2018, at the earliest.

> 12. On October 25, 2018, Plaintiff discovered for the first time that Defendant was infringing its exclusive copyright in the Copyrighted Works.

> 13. Specifically, Plaintiff discovered the Copyrighted Works were reproduced and being publicly displayed and distributed, without Plaintiff's authorization at the following website URL's:

> [Nine flavorwire.com URLs of pages displaying the Copyrighted Works and nine flavorwire.files.wordpress.com URLs of stand-alone versions of those Copyrighted Works are listed under paragraph 13.]

>                  …

> 15. Defendant's business model for the Website and the similar websites in its portfolio, is to create and/or copy content that it believes will interest its target audience in order to attract viewers to the Website, and its commercializes that viewership through a series of advertising and promotional agreements. Defendant used its nine

2

infringements of the Copyrighted Works for that commercial purpose.

…

18. Defendant was aware that Plaintiff's principal, Tom Hussey, created the Copyrighted Works. Nevertheless, Defendant never sought, and on information and belief Defendant was aware it did not possess, permission from Mr. Hussey, or the Plaintiff, to reproduce, display or distribute the Copyrighted Works.

…

23. As a result of Defendant's reproduction, distribution and public display of the Copyrighted Works and explicit reference to Mr. Hussey as the author of the Copyrighted Works, Defendant had access to the Plaintiff's publication of the Copyrighted Works prior to reproducing and/or displaying them on the Website.

24. By its actions set forth above, Defendant has infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501, reproducing the Copyrighted Works without permission and distributing and publicly displaying the Infringing Works.

## IV.   ARGUMENT

### A.   The Rule 12(b)(6) Standard

"When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis.  First, the court separates the factual and legal elements of a claim, accepting 'all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions.'  Second, the court determines 'whether the facts alleged in the complaint are sufficient to show' that the plaintiff has a 'plausible claim for relief.'"  *PhishMe, Inc. v. Wombat Security Tech., Inc.*, 2017 WL 3821107 (D. Del. Aug. 31, 2017) (citing *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009)).  Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**B.  Plaintiff Has Adequately Pled Defendant's Direct Infringement of Plaintiff's Exclusive Rights By Reproducing, Displaying And Distributing The Copyrighted Works**

Plaintiff's exclusive rights in the Copyrighted Work are set out in 17 U.S.C. § 106, and include the rights: "(1) to reproduce the copyrighted work ….; (3) to distribute copies … of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; … [and] (5) in the case of … pictorial … works, … to display the copyrighted work publicly …." A copyright holder must show two things to establish a claim of infringement: (1) ownership of a valid copyright, and (2) that the defendant has copied, displayed, or distributed protected elements of the copyrighted work.  *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 635 (E.D. Pa. 2007).

Despite Defendant's inexplicable representations to the contrary (D.I. 10 at 7–9, cited herein as "Opening Br."), the Complaint affirmatively alleges that Defendant directly infringed Plaintiff's exclusive rights to reproduce, distribute and display each of the nine Copyrighted Works.  Compl. ¶¶ 12–15, 18, 23–24.  And, despite Defendant's assertion that Plaintiff fails to allege that Defendant "had any direct role in the alleged infringement" (Opening Br. 7–8), Plaintiff expressly alleges that all actions on the Website beginning on August 15, 2018 were attributable to Defendant "directly operating and managing the Website."  Compl. ¶ 11.

**1.  Defendant's Reproduction And Display Of The Copyrighted Works On Its Website Constitute Direct Acts Of Infringement**

Plaintiff alleges that beginning on August 15, 2018, Defendant displayed each of the Copyrighted Works on Defendant's Website and further identifies the nine Website URL's on which the Copyrighted Works were found, as well as the nine stand-alone URL's storing the Copyrighted Works.  Compl. ¶ 13.  Defendant's Motion relies on the false pretense that the Complaint does not include those allegations.  Defendant pretends that Exhibit D to the Complaint,

which attaches only nine of the URL screenshots referenced in Paragraph 13, somehow negates the allegation that the Copyrighted Works were displayed on the nine URLs missing from Exhibit D.; *see* Cowley Decl., Ex. A (providing additional screenshots referenced in Paragraph 13, which illustrate reproductions and displays of the stand-alone copies of the Copyrighted Works on the Website).  Defendant's strained attempt to disavow the direct allegation that Defendant displayed each of the Copyrighted Works on its Website beginning on August 15, 2018 simply lacks merit.

Moreover, Defendant's argument that the Complaint fails to allege it was involved in making the first set of infringing copies of the Copyrighted Works in no way negates Plaintiff's allegations that Defendant purchased infringing copies of the Copyrighted Works then copied and displayed those images on Website pages it operated for the purpose of drawing in visitors in order to commercialize and profit from their visits to Defendant's Website.  Compl. ¶¶ 12–15, 18, 23–24.  Defendant's acts of displaying the Copyrighted Works on its Website without permission is sufficient to establish copyright infringement.  *Healthcare Advocates,* 497 F. Supp. 2d at 635 ("The concept of display is defined rather broadly under the statute. To display a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process.") (quotes and citations omitted)*; s*ee *also Kennedy v. Creditgo, LLC*, 2015 WL 7760181, at *2 (D.N.J. Dec. 2, 2015); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 552 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999) (defendant violated plaintiff's exclusive right to display images where "the image existed in digital form on [defendant's] servers" and subscribers could view by visiting defendant's website).

Indeed, Defendant's liability for reproducing and displaying the Copyrighted Works on its web pages does not depend on whether Defendant made the initial infringing copies of the works, or (as here) bought them from the party that did.  There is nothing in the Copyright Act to suggest

that only one party, or only the first infringer, can be liable for multiple acts of infringement using the same unauthorized copies while later infringers are immune. Instead, each party is liable for its own acts of infringement, and no one party has to commit all the acts of infringement with a copy in order to be liable. *See Live Face on Web, LLC v. Smart Move Search, Inc.*, 2017 WL 1064664 *3 (D. N.J. March 21, 2017) (individuals can be liable for their acts of infringement along with corporate parties who also are responsible). Each time a visitor to Defendant's Website viewed the Copyrighted Works since August 15, 2018, Defendant was responsible for a new infringement of Plaintiff's exclusive display rights:

> The Copyright Act unambiguously states that "[t]o 'display' a work means to show a copy of it, either directly or by means of a film, slide, television image, or any other device or process ...." 17 U.S.C. § 101. The definition's usage of the phrase "any other device or process" clearly brings showing a copy of a work through a computer within the statutory definition of "display." Thus, each unauthorized showing of a Work through a computer infringes on the owner's right of public display. Other courts that have considered this issue have reached similar conclusions.

*APL Microscopic, LLC v. U.S.*, 144 Fed. Cl. 489, 498 (Fed. Cl. 2019) (citations omitted). That is true regardless of who was responsible for the initial infringement.[1]

### 2.    Defendant Distributed Copies Of The Copyrighted Works

*APL Microscopic* recently addressed and rejected the contention relied on by Defendant in this case—that once an infringing copy of an image is posted on a website no further acts of infringement giving rise to new infringement claims. Specifically, the defendant in that case copied plaintiff's image and posted it to defendant's website fourteen years prior to plaintiff

---

[1] Notably, it would be true even if no one infringed Plaintiff's exclusive right to make reproductions at all. *See Goldman v. Breitbart News Agency, LLC*, 302 F.Supp.3d 585, 593 (S.D.N.Y. 2018) (holding defendants are liable for infringing the right of display even if no copy is made and the original image is merely embedded on the defendants' websites.)

commencing his lawsuit.  The court dismissed plaintiff's infringement claim based on the right of

reproduction as barred by the applicable three-year statute of limitations, *APL Microscopic*, 144

Fed. Cl. at 494–96, but denied defendant's motion to dismiss plaintiff's claim based on the right

of distribution (and the claim based on the right of display, as discussed above), because:

> According to [plaintiff], a public distribution occurs, and its rights
> are violated, "each and every time a computer user accesses the
> defendant's website displaying the protected work." [Plainitff]
> argues that "[t]his is because every time a computer user accesses
> the defendant's website displaying the protected work ... [t]he
> defendant sends information for the relevant page including the
> protected work to the computer user whose computer assembles the
> information for display on the user's computer."

*Id.* at 496.  The court held that "the act of transmitting the webpage—and the Work therein—to a

user would infringe on [the] right" of distribution, and denied the motion to dismiss based on the

allegation that such transmission to viewers of defendant's website occurred in the three years

prior to commencement of the lawsuit.  *Id.* at 498.

Here, we already know that Defendant distributed Plaintiff's Copyrighted Works to over

440 visitors to Defendant's Website since August 15, 2018 (D.I. 12, ¶ 11), each occurrence

constituting a separate act of infringement of Plaintiff's exclusive right to publicly distribute his

Copyrighted Works.  *Live Face on Web,* 2017 WL 1064664, at *1–2.

### 3.      No Third Party Is Responsible For The Infringement

Defendant purports to rely on a string of cases involving internet service providers or other

internet hosts being sued for infringement arising out of content owned, controlled and posted by

third parties.  As of August 15, 2018, Defendant purchased the infringing versions of the

Copyrighted Works from a third party, but from that moment on, it was Defendant's decision to

reproduce and display those images.  Neither the original infringer who sold the unauthorized

versions of the Copyrighted Works to Defendant, nor any other third party, exercised any control

over Defendant's infringing uses of the images for its own purposes.

### C.     Plaintiff's Copyright Infringement Claims Against Defendant Are Timely

The oddity of Defendant's statute of limitations defense is best illustrated by the fact that, if Defendant's theory is correct, and all of Plaintiff's claims for infringement of the Copyrighted Works accrued when the party from whom Defendant acquired the infringing copies (Flavorpill) first posted them to its own website in 2011, that means Defendant argues that Plaintiff should have sued Defendant for copyright infringement two years before Defendant was even formed as a company, and eight years before Defendant obtained the infringing copies and did <u>anything</u> with them.  No amount of spin can make this defense viable.  In reality, Defendant bought content from Flavorpill and decided, in 2018, which content it wished to copy to and display on its Website going forward.  Defendant directly owned the responsibility for its decisions and the liability associated with choosing to reproduce and display content for which it never sought, nor acquired, a license or other permission to use from the exclusive owner—Plaintiff.

#### 1.     Defendant's Infringement's Commenced In August 2018, Well Within The Three-Year Statute Of Limitations

The court's analysis in *APL Microscopic* of a statute of limitations defense applied separately to each of the three exclusive copyrights at issue—reproduction, display and distribution—which, as discussed above, is instructive here.  Given that each of Defendant's acts of infringement occurred <u>only</u> between August 2018 and the present, no infringing by Defendant occurred more than three years ago.  The statute of limitations has no application to these claims.

#### 2.     Plaintiff's Infringement Claims Are Timely Under The Discovery Rule, Even If Infringements Began Pre-August 2018

Even if the defendant named in this lawsuit were Flavorpill as opposed to Defendant, a statute of limitations argument would fail based on Plaintiff's allegation that it first discovered these infringements in October 2018.  Compl. ¶ 12; *William A. Graham Co. v. Haughey*, 568 F.3d

425, 437 (3d Cir. 2009) (the discovery rule governs accrual of claims under the Copyright Act).

Indeed, even if Flavorpill could establish that its only act of reproduction occurred in 2011 (unlike

this Defendant, whose first act of reproduction occurred in August 2018), each act of display and

distribution occurring through, at the earliest, October 2018, would give rise to a new claim of

infringement subject to a three-year statute of limitations under the separate accrual rule

established in *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663 (2014). *See APL

Microscopic,* 144 Fed. Cl. at 494, 496–99 (applying the separate accrual rule to various

infringements arising out of a single image posted to a website for over fourteen years); 3 *M.

Nimmer & D. Nimmer*, Copyright § 12.05[B][1][b] (2013) ("If infringement occurred within three

years prior to filing, the action will not be barred even if prior infringements by the same party as

to the same work are barred because they occurred more than three years previously.")

For these reasons, Defendant's motion to dismiss Plaintiff's timely and well plead

infringement claim must fail.

### D.   Defendant's Motion To Transfer Should Be Denied

#### 1.   The Case Should Continue In Delaware Because Defendant Has Not Met Its Significant Burden To Establish That Transfer Is Appropriate

Defendant's fallback request to transfer of this action from Delaware to its preferred venue

of the Southern District of New York is a transparent attempt to forum shop—if Defendant cannot

convince this Court to dismiss Plaintiff's claims, Defendant seeks a second bite at the apple before

another court.  A transfer, however, is neither more convenient for the parties or witness, nor suited

to serve the interests of justice.  *See* 28 U.S.C. § 1404(a); *Hologic, Inc. v. Minerva Surgical, Inc.*,

163 F. Supp. 3d 118, 120 (D. Del. 2016) ("A plaintiff . . . has the privilege of initiating its litigation

9

in the forum it chooses. . . . The purpose of § 1404(a) is not to usurp plaintiff's choice, but to give courts the discretion to transfer if the interests of justice so dictate.").[2]

Courts consider both private and public factors to determine whether a moving party has met its heavy burden of establishing that a transfer is appropriate. The private factors include:

> the plaintiff's choice of forum as manifested in the plaintiff's original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses — but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records.

*Pro Spice Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336, 340 (E.D. Pa. 2001); *accord Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Courts consider public factors such as: "practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora"; and "the local interests in deciding local controversies at home;[.]" *Pro Spice*, 173 F. Supp. 2d at 340; *accord Jumara*, 55 F.3d at 879–80.

"[T]he burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer … and unless the balance of convenience of the parties is *strongly* in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (emphasis added) (citations omitted). "It follows that '*transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.*'" *Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 751 (D. Del. 2012) (citation omitted) (emphasis added); *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 734 (D. Del. 2012). In this case, Defendant has not and cannot meet its heavy burden.

---

[2] Defendant does not dispute that Delaware is an appropriate forum, nor does Plaintiff dispute that it could have filed the Complaint in the Southern District of New York.

2.      **The Balance Of Private Factors Do Not Strongly Support A Transfer**

a.      *Plaintiff's Forum Choice Is Entitled To "Significant Deference" And Weighs In Favor Of Maintaining The Case In Delaware*

Plaintiff's choice of forum typically is "paramount" in the transfer analysis. *Shutte*, 431 F.2d at 25. Where, as here, the plaintiff chooses a forum for "rational and legitimate reasons[,]" despite the fact that the forum is neither its state of incorporation nor principle place of business, that choice is afforded "significant deference." *Smart Audio Techs.*, 910 F. Supp. 2d at 727, 729; *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) ("The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. . . . and the burden [to transfer] remains at all times on the defendants[.]") (quotes and citation omitted). Plaintiff chose to litigate in Delaware for two rational and legitimate reasons.

*First*, Defendant is a Delaware corporation and "[a] party's state of incorporation is a traditional and legitimate venue[.]" *C. R. Bard, Inc. v. Angiodynamics, Inc.*, 156 F. Supp. 3d 540, 545 (D. Del. 2016). Rather than file this matter in Texas—the most convenient forum for Plaintiff—Plaintiff brought the fight to the infringer's state of incorporation, which courts agree "has always been 'a predictable, legitimate venue for bringing suit' and [] 'a plaintiff, as the injured party, generally ha[s] been accorded [the] privilege of bringing an action where he chooses.'" *Id.* at 544 (citations omitted); *Hologic, Inc.*, 163 F. Supp. 3d at 120 ("A defendant's place of incorporation is always an appropriate forum in which to sue that defendant."); *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) (advising corporation's should expect "to respond to litigation *both at their principal place of business and in their state of incorporation*") (emphasis added).

11

*Second*, this Court is well equipped to handle and resolve copyright infringement disputes. *Cf. ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001) (discussing Delaware courts' experience and established practices for resolving typically arising issues as considerations making it an appropriate forum for handling patent infringement claims). The Delaware District Court is an established and preferred forum to resolve a wide range of intellectual property infringement disputes, not just patent cases. Plaintiff's rational choice of this appropriate forum supports maintaining this action in Delaware.

> **b.      *Defendant's Incorporation In Delaware Undermines Its Preference To Litigate In The Southern District Of New York***

In addition to being subservient to Plaintiff's forum choice, Defendant's preference to litigate in New York is overshadowed by its incorporation in Delaware. By incorporating in Delaware, Defendant has consented to jurisdiction in this venue. *AIP Acquisition LLC v. iBasis, Inc.*, 2012 WL 5199118, at *4 (D. Del. Oct. 19, 2012) (finding "it significant that [the defendant] is a Delaware corporation and has necessarily consented to suit in this jurisdiction"); *Intellectual Ventures*, 842 F. Supp. 2d at 756 (same); *Textron Innovations, Inc. v. Toro Co.*, 2005 WL 2620196, at *2 (D. Del. Oct. 14, 2005) ("[H]aving received the benefits of Delaware incorporation, [the defendant] cannot now complain that another corporation has chosen to sue it here."); *ADE Corp.*, 138 F. Supp. 2d at 573 ("[A]bsent some showing of a unique or unexpected burden, a company should not be successful in arguing that litigation in its state of incorporation is inconvenient."). Accordingly, this factor does not support a transfer and is neutral at most.

> **c.      *Defendant's Broad Infringement is a Neutral Factor***

When an "infringement action operates on a national or global level, this factor is typically neutral." *Smart Audio Techs.*, 910 F. Supp. 2d at 730; *see also Devicor Med. Products, Inc. v. Biopsy Scis., LLC*, 2013 WL 1628644, at *4 (D. Del. Apr. 15, 2013) ("This factor may be neutral

where the defendant in a patent infringement suit operates broadly, as the infringement can be viewed as occurring in many districts.").  Defendant concedes it has national and international offices and that any articles published on its Website are "*equally accessible from anywhere in the world*."  Opening Br. 5 (emphasis added).  Defendant further concedes "[i]t is unknown, and is difficult (if not impossible) to know" where in the world the 442 views of the Article since August 2018 occurred.  *Id.*  Thus, this factor is neutral.

### d.      *Delaware is Equally Convenient for Both Parties*

Defendant's "convenience" argument reflects the theme of its entire motion, which is based on the misguided premise that an infringer's litigation preferences takes precedence over all else. Indeed, to support its convenience argument, Defendant harps on its New York City location and unpersuasive complaints regarding the costs and burden of travel to Delaware.  Noticeably absent is any argument that some special inconvenience may result from litigating in Delaware— Defendant's place of incorporation.  *Cypress Semiconductor*, 2001 WL 1617186, at *3 (finding convenience to be "a somewhat archaic notion" in the modern era of travel and technology); *Wesley-Jessen Corp.*, 157 F.R.D. at 218 (rejecting convenience arguments where defendant was a "substantial corporation that operates in the national market place … [and] has not … identif[ied] any unique … burden that this litigation places on its business operations.").

Defendant's complaints of travel burden are a misnomer.  Defendant can defend itself almost entirely remotely—especially under current Covid-19 circumstances—and will only need to send a representative to Delaware for major hearings or trial.  Amtrak offers inexpensive train service between Manhattan and Wilmington, where the station is blocks from the federal courthouse.  Trips can be as short as 90 minutes.  Wireless internet is available on every train. Surely a conglomerate digital media company with national and international offices (*see* Opening Br. 14), that touts itself as "The Fastest-Growing Publisher In Modern Media" with 84 million

readers (Cowley Decl., Ex. B) can endure the costs of 90 minute train rides to its state of incorporation. *See Wesley-Jessen Corp.*, 157 F.R.D. at 218; *cf. Textron Innovations, Inc.*, 2005 WL 2620196, at *2 ("[A] flight to Delaware is not an onerous task warranting transfer").

Plaintiff, on the other hand, is a very small business entity more susceptible to the burden of travel costs. Cowley Decl. ¶ 2; *AIP Acquisition*, 2012 WL 5199118, at *4 (considering the "financial resources disparity between the parties" in analysis rejecting transfer). While Defendant can take a round-trip train ride to and from Delaware in a single day, Plaintiff will be required to fly from Texas and book multi-night stays in a hotel for major hearings and trial. It is reasonable for Plaintiff to expect to save time and money on flights between Texas and Philadelphia, Pennsylvania and on hotel rooms in Delaware compared to costs associated with trips to Manhattan—albeit current travel conditions and limitations make comparison of such costs very difficult. If nothing else, it is reasonable for Plaintiff to expect that travel will be safer from the perspective of the impact that Covid-19 has had on the two jurisdictions, as New York City has been more heavily affected than New Castle County. Cowley Decl. ¶¶ 6–7, Exs. D, E.

Finally, Defendant's concerns with the costs of Delaware counsel are not unique to Defendant and, in fact, are equally shared by Plaintiff in this matter. *See Hologic, Inc.*, 163 F. Supp. 3d at 121 (rejecting the significance of Delaware counsel costs as a basis to transfer).

Because Defendant fails to identify a single unique inconvenience associated with the case remaining in the consented jurisdiction of Delaware, this factor weighs against transfer.

### e.  *Defendant Misapplies the Convenience to Witnesses Analysis, Which Does not Warrant Transfer in this Case*

The operative piece of the convenience to witnesses' analysis is limited "to the extent that the witnesses may actually be unavailable for trial in one of the fora[.]" *Jumara*, 55 F.3d at 879; *Intellectual Ventures*, 842 F. Supp. 2d at 758 (explaining the touchstone is "ensuring that witnesses

come to Delaware to testify *at trial*") (emphasis in original). Defendant fails to identify a single witness it believes will resist appearing at trial, and even concedes it is unaware of any non-party witnesses required for trial. Opening Br. 16–17; *see also Cypress Semiconductor*, 2001 WL 1617186, at *4 (finding the defendant's arguments unpersuasive due to a lack of "any identifiable obstacle in obtaining personal jurisdiction over a third party witness"); *ADE Corp.*, 138 F. Supp. 2d at 570–71 (refusing to transfer a case by "starting with a presumption that witnesses may not appear"). With respect to party witnesses, Plaintiff has consented to jurisdiction in Delaware and Defendant is a Delaware corporation. This factor does not support a transfer.

> ### f.   *Modern Technology Moots the Significance of the Location of Defendant's Books and Records*

While it is true that much of the evidence for infringement cases comes from the accused infringer, Defendant fails to recognize that this factor is given little weight because with modern technology, "the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles." *Intellectual Ventures*, 842 F. Supp. 2d at 759 (quotes and citation omitted); *see also Hologic, Inc.*, 163 F. Supp. 3d at 120 & n.1 ("I have declined to transfer based on [this factor] as discovery is a local event."). Defendant's maintenance of certain information in New York does very little to push the needle in favor of a transfer.

> ### 3.   The Balance of Relevant Public do not Strongly Support a Transfer

> #### a.   *Practical Considerations Underscore the Duplicative and Unnecessary Costs Imposed by a Transfer*

"The 'practical considerations' factor demands an examination of the broader public costs of transfer" including the "costs to the judicial system as a whole." *AIP Acquisition*, 2012 WL 5199118, at *5. Defendant's argument does not contemplate a single public "cost." In fact, Defendant's "practical considerations" argument is quite presumptuous: Defendant asks this Court to expend its time and resources to first consider and decide Defendant's Rule 12(b)(6) arguments

and then, if the Court rejects the dismissal arguments, to transfer and impose this case on the docket of another court to give Defendant a second chance to succeed on its dismissal arguments before a new judge.  *See* Opening Br. 18–19; *Hologic, Inc.*, 163 F. Supp. 3d at 121 (declining to transfer on what was nothing more than a request "to elevate the convenience of one party over the other").

Upon its decision on the underlying motion, this Court will be familiar with the material facts and legal issues in this case.  If transferred, a second court will start at square one and expend duplicative judicial resources to decide Defendant's reattempt at a motion to dismiss.  *See Graphics Prop. Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013) (taking into account the transferee court's learning curve as part of decision denying transfer).  This factor weighs against transfer.

### b.      The Local Interests Factor is Neutral in Infringement Cases

Defendant's local interest argument is misguided.  Opening Br. 19.  Infringement litigation "implicates constitutionally protected property rights, is governed by federal law … and affects national (if not global) markets."  *C. R. Bard, Inc.*, 156 F. Supp. 3d at 547; *Smart Audio Techs.*, 910 F. Supp. 2d at 734 ("This is a lawsuit governed by federal law, brought against a multinational corporation, and concerning a product that is [accessible] nationwide. It is truly a national controversy and, as such, the court finds that this factor is neutral.").  This factor is neutral.

### c.      Judicial Vacancies in New York Push the Administrative Factor in Favor of Maintaining the Action in Delaware

Generally, "disparity in court congestion, to the extent there is any, will [not] be so great as to weigh strongly in favor of a transfer."  *Textron Innovations, Inc.*, 2005 WL 2620196, at *3. Although Defendant concedes there is but a nominal difference in the median length of time from filing to trial in the two forums (Opening Br. 19–20), Defendant ignores that the Southern District of New York currently is operating with three judicial vacancies (Cowley Decl., Ex. C), while

16

there are no vacancies in the District of Delaware. *Id.*; *see also Wesley-Jessen Corp.*, 157 F.R.D. at 219 (refusing transfer where the court was familiar with the matter and had resources to handle it, while transfer merely added to the docket of another court). Here, transfer only further burdens the Southern District of New York's docket. This factor weighs against transfer.

4. **The Balance of the Relevant Private Factors Supports Maintaining this Case in Delaware**

Five of the six private factors and all three of the relevant public factors are in favor of litigating this case in Delaware or are neutral. Plaintiff's choice to litigate in Delaware is entitled to deference and takes precedence. Defendant's complaints of travel costs are unpersuasive and Defendant fails to show any special inconvenience resulting from litigation in Delaware, while transfer would pose more challenges for Plaintiff. No witnesses are expected to resist appearing at trial, and technology mutes the import of Defendant's books and record argument. Transfer would result in a duplication of judicial resources and burden the docket of a court with three judicial vacancies. Defendant is the only party that stands to benefit from a transfer by getting a second chance to persuade a new court of its 12(b)(6) arguments should this Court reject them. Giving due credit to each factor, Defendant has failed to meet its burden that the interests of justice strongly favor a transfer.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff requests the Court deny Defendant's motion to dismiss and motion to transfer.

Dated: May 22, 2020

Respectfully Submitted

**DUANE MORRIS LLP**

  /s/ *Mackenzie M. Wrobel*
Mackenzie M. Wrobel (#6088)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Tel: (302) 657-4900
mmwrobel@duanemorris.com

– and –

Steven M. Cowley
(*admitted pro hac vice*)
100 High Street, Suite 2400
Boston, MA  02110-1724
Tel.:  (857) 488-4261
smcowley@duanemorris.com

*Attorneys for Plaintiff*
*Tom Hussey Photography, LLC*