# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TOM HUSSEY PHOTOGRAPHY, LLC,<br><br>       Plaintiff,<br>  v.<br><br>BDG MEDIA, INC.,<br><br>       Defendant. | C.A. No. 20-404-MN |

## DEFENDANT BDG MEDIA, INC.'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, TO <u>TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK</u>

OF COUNSEL:

Eleanor M. Lackman
Bradley J. Mullins
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022

Chad M. Shandler (#3796)
Nicole K. Pedi (#6236)
RICHARD LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7836
shandler@rlf.com
pedi@rlf.com

*Attorneys for Defendant
BDG Media, Inc.*

# **TABLE OF CONTENTS**

**Page**

I.    Plaintiff Fails To Allege Any Claim For Direct Infringement Against BDG ..................... 1

II.    Plaintiff's Infringement Claim is Untimely ....................................................................... 5

III.    Transfer To The Southern District Of New York Is Warranted ........................................ 6

      A.    Plaintiff's Choice of a Foreign Forum is not Determinative ................................. 6

      B.    The Remaining Private and Public Interest Factors Favor Transfer ....................... 7

Conclusion ....................................................................................................................................... 10

i

# **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*AIP Acquisition LLC v. iBasis, Inc.*,
    No. CIV.A. 12-616 GMS, 2012 WL 5199118 (D. Del. Oct. 19, 2012)...................10

*Allen v. DeBello*,
    861 F.3d 433 (3d Cir. 2017).............................................................................1

*APL Microscopic, LLC v. U.S.*,
    144 Fed. Cl. 489 (Fed. Cl. 2019) ..............................................................2, 4, 5

*Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*,
    No. 12-CV-139 (GMS), 2013 WL 3293611 (D. Del. June 28, 2013) ......................9

*BWP Media USA, Inc. v. T & S Software Assocs., Inc.*,
    852 F.3d 436 (5th Cir. 2017) ............................................................................3

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
    536 F.3d 121 (2d Cir. 2008)..............................................................................3

*Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*,
    836 F.2d 173 (3d Cir. 1988).............................................................................4

*Daggett v. Waterfront Comm'n of New York Harbor*,
    774 F. App'x 761 (3d Cir. 2019) ......................................................................4

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
    482 F.3d 247 (3d Cir. 2007).............................................................................5

*Gen. Instrument Corp. v. Mostek Corp.*,
    417 F. Supp. 821 (D. Del. 1976).......................................................................7

*Genetic Techs. Ltd. v. Natera, Inc.*,
    No. CV 12-1737-LPS, 2014 WL 1466471 (D. Del. Apr. 15, 2014).........................8

*Goldman v. Breitbart News Network, LLC*,
    302 F. Supp. 3d 585 (S.D.N.Y. 2018)................................................................2

*Graphics Properties Holdings Inc. v. Asus Computer Int'l, Inc.*,
    964 F. Supp. 2d 320 (D. Del. 2013).................................................................10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*,
   497 F. Supp. 2d 627 (E.D. Pa. 2007) ....................................................................................4

*Hologic, Inc. v. Minerva Surgical, Inc.*,
   163 F. Supp. 3d 118 (D. Del. 2016) .....................................................................................10

*In re Marshall*,
   No. CV 15-MC-01-LPS, 2015 WL 849302 (D. Del. Feb. 25, 2015) ..................................6, 7

*Joseph v. Buffalo News, Inc.*,
   No. CV 16-1325-RGA, 2017 WL 3314006 (D. Del. Aug. 3, 2017) ........................................7

*Kennedy v. Creditgo, LLC*,
   No. 15-1790, 2015 WL 7760181 (D.N.J. Dec. 2, 2015) ..........................................................4

*Kirschner Bros. Oil, Inc. v. Pannill*,
   697 F. Supp. 804 (D. Del. 1988) .............................................................................................7

*Krist v. Scholastic, Inc.*,
   415 F. Supp. 3d 514 (E.D. Pa. 2019) ......................................................................................6

*Lanard Toys Ltd. v. Toys R US-Delaware, Inc.*,
   No. CIV.A. 2:14-1939-SDW, 2015 WL 3794595 (D.N.J. June 16, 2015) ............................10

*Leonard v. Stemtech Health Scis., Inc.*,
   No. CV 08-67-LPS-CJB, 2013 WL 5288266 (D. Del. Sept. 19, 2013) ...................................3

*Live Face on Web, LLC v. Smart Move Search, Inc.*,
   2017 WL 1064664 (D.N.J. Mar. 21, 2017) .............................................................................4

*MEC Res., LLC v. Apple, Inc.*,
   269 F. Supp. 3d 218 (D. Del. 2017) ........................................................................................8

*Microsoft Corp. v. Softicle.com*,
   No. CV 16-2762, 2017 WL 5517379 (D.N.J. Sept. 29, 2017) ................................................2

*Minden Pictures, Inc. v. BuzzFeed, Inc.*,
   390 F. Supp. 3d 461 (S.D.N.Y. 2019) .....................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nalco Co. v. AP Tech Grp. Inc.*,
    No. CV 13-1063-LPS, 2014 WL 3909114 (D. Del. Aug. 8, 2014) ..........................................8

*Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*,
    126 F. Supp. 3d 430 (D. Del. 2015) ....................................................................................8, 9

*Parker v. Google*,
    242 F. App'x 833 (3d Cir. 2007) .............................................................................................2

*Perfect 10, Inc. v. Amazon.com, Inc.*,
    508 F.3d 1146 (9th Cir. 2007) .................................................................................................2

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) ...................................................................................................3

*Playboy Enterprises, Inc. v. Webbworld, Inc.*,
    991 F. Supp. 543 (N.D. Tex. 1997) .........................................................................................4

*Rappoport v. Steven Spielberg, Inc.*,
    16 F. Supp. 2d 481 (D.N.J. 1998) .........................................................................................10

*Smart Audio Techs., LLC v. Apple, Inc.*,
    910 F. Supp. 2d 718 (D. Del. 2012) ....................................................................................7, 8

*Smith v. BarnesandNoble.com, LLC*,
    143 F. Supp. 3d 115 (S.D.N.Y. 2015), *aff'd on other grounds*, 839 F.3d 163
    (2d Cir. 2016) ...........................................................................................................................3

*Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*,
    676 F. Supp. 2d 321 (D. Del. 2009) .........................................................................................9

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ...................................................................................................3

Plaintiff concedes it is attempting to sue BDG over an Article posted to Flavorwire in 2011 that allegedly embedded the Photographs, despite the fact that BDG did not even exist in 2011 and did not acquire Flavorwire until 2018.[1]  Plaintiff's Complaint thus must be dismissed, because it fails to allege any direct act of infringement by BDG, or do so in a timely manner. Plaintiff's Opposition notably does not even acknowledge the volitional conduct requirement, much less claim to have sufficiently alleged it.  Instead, Plaintiff asks the Court to ignore settled precedent and hold that the purchaser of an existing website commits a new act of copyright infringement every time a third party (or potential plaintiff) accesses embedded images on a nearly-decade-old webpage, regardless of whether the new owner had anything to do with embedding those links in the first place.  The Court should decline Plaintiff's invitation.

Plaintiff also presents no reason why this action (if it proceeds) should not be transferred to New York.  This action has no connection to Delaware, other than BDG's incorporation here. The majority of party and non-party witnesses are in New York, and the conduct at issue (purchasing a website) occurred in New York.  The relevant factors thus strongly favor transfer.

I.   **Plaintiff Fails To Allege Any Claim For Direct Infringement Against BDG**

Plaintiff cannot satisfy its burden of alleging a copyright infringement claim merely by repeating that BDG "displayed," "reproduce[ed]," or "distributed" the Photographs.  These "rote recitals of the elements of a cause of action" must be disregarded.  *Allen v. DeBello*, 861 F.3d 433, 437–38 (3d Cir. 2017).  Instead, Plaintiff must allege ***facts*** establishing BDG's supposed "display," "reproduction" or "distribution" of the Photographs.[2]  Plaintiff does not do so.

---

[1] The defined terms used herein are to be given the same meaning as in BDG's Opening Brief.

[2] Plaintiff also fails to acknowledge that, according to a Complaint filed in January 2020, it does

1

Here, Plaintiff concedes the Complaint's only allegation of direct conduct by BDG is that it "directly operat[ed] and manag[ed]" Flavorwire as of 2018. D.I. 14 ("Opp.") at 4 (quoting D.I. 1 ("Compl." ¶ 11.). Plaintiff also concedes that the "stand-alone" Photographs were contained on Wordpress (a separate website that is not alleged to have been acquired by BDG), and does not dispute that the Flavorwire Article only embedded code linking to those Photographs. Opp. at 2, 4-5. Thus, at most, Plaintiff alleges only that BDG acquired a preexisting website (Flavorwire) that contained seven-year-old embedded code that links to allegedly infringing Photographs stored on a separate website (Wordpress). However, "[p]roviding a link to a website containing infringing material does not, as a matter of law, constitute direct copyright infringement." *Microsoft Corp. v. Softicle.com*, No. CV 16-2762, 2017 WL 5517379, at *2 (D.N.J. Sept. 29, 2017), *accord Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1161 (9th Cir. 2007). Plaintiff's heavy reliance on *APL Microscopic, LLC v. U.S.*, 144 Fed. Cl. 489, 495 (Fed. Cl. 2019), is thus misplaced, as that defendant—unlike BDG—had allegedly "uploaded the [infringing photograph]" to its own server, and directly "posted the photograph on its webpage." *Id.* at 492, 495.[3]

Plaintiff also does not seriously dispute the ample case law holding that merely operating a website containing infringing content does not constitute direct copyright infringement. OB at 7-8 (collecting cases). More remarkably, Plaintiff simply ignores the requirement that it allege

---

not even own the Photographs. D.I. 10 ("OB") at 3 n.2.

[3] *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 594 (S.D.N.Y. 2018), is also wholly distinguishable because there, "each and every defendant itself took active steps to put a process in place that resulted in a transmission of the photos so that they could be visibly shown." Plaintiff does not allege that BDG took any active steps to embed the Photographs in the Article; nor could it, given that the Article was posted in 2011, long before BDG existed.

"volitional conduct" by BDG. *Parker v. Google*, 242 F. App'x 833, 836 (3d Cir. 2007); *accord Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008).[4] Again, "to demonstrate volitional conduct, … [Plaintiff] must provide some 'evidence showing [BDG] exercised control (***other than by general operation of [its website]***); selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution' of its photos." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (emphasis added). Plaintiff does not allege any of this. At most, Plaintiff contends only that BDG generally controlled or profited from Flavorwire after its acquisition in 2018. Opp. at 5. But BDG's theoretical ability to remove embedded images from a pre-existing webpage, or abstractly profit from its mere existence, "is of little significance in the direct infringement inquiry; what matters is whether it can be said that *volitional conduct* on the part of [BDG] *caused* the infringement." *Leonard*, 2013 WL 5288266, at *8; *see also Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 669 (9th Cir. 2017) ("s[elling] access" to server with infringing images not volitional conduct). Plaintiff's failure to address this volitional conduct requirement, much less allege any such conduct by BDG, is fatal. *See BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 442 (5th Cir. 2017) (no liability where "[defendant] hosts the forum on which infringing content was posted, but its connection to the infringement ends there."); *Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 123 (S.D.N.Y. 2015) (no liability where website hosted sample of electronic book after termination of license, even though user later

---

[4] Plaintiff weakly attempts to distinguish an unidentified "string of cases" because they involved content "owned, controlled and posted by third parties." Opp. at 7. However, Plaintiff concedes that here, too, the allegedly infringing Article was posted by Flavorpill (*i.e.*, a third party). *Id.* at 8. And in the absence of volitional conduct, simply "owning, hosting, and directly profiting from a website" does not constitute direct infringement. *Leonard v. Stemtech Health Scis., Inc.*, No. CV 08-67-LPS-CJB, 2013 WL 5288266, at *5 (D. Del. Sept. 19, 2013).

accessed and downloaded copies), *aff'd on other grounds*, 839 F.3d 163 (2d Cir. 2016).

Plaintiff's authorities all concern circumstances not present here, with defendants alleged to have taken direct acts resulting in the alleged use of the works at issue. Most therefore had no reason to even address the volitional conduct requirement.[5] Plaintiff's emphasis on *APL* is particularly misguided, as Plaintiff admits that "the defendant in that case"—unlike BDG here— "copied plaintiff's image and posted it to defendant's website[.]" Opp. at 6. What is most remarkable is that Plaintiff cannot cite a single authority from any jurisdiction holding a website owner liable for direct copyright infringement based on content posted years earlier by someone else, without any active involvement by the defendant. This Court should not be the first.[6]

Finally, Plaintiff cannot improperly re-write its Complaint to contend that BDG "purchased infringing copies of the [Photographs] then copied and displayed those images on Website pages it operated … ." Opp. at 5. While the shift is telling, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," and the existing Complaint alleges no such thing. *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). To the contrary, the only alleged "purchase" is BDG's acquisition

---

[5] *See Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 636 (E.D. Pa. 2007) (defendant accessed archived images from plaintiff's website and printed paper copies); *Kennedy v. Creditgo, LLC*, No. 15-1790, 2015 WL 7760181, at *1 (D.N.J. Dec. 2, 2015) (defendant used image on defendant's website and intentionally omitted identifying watermark); *Live Face on Web, LLC v. Smart Move Search, Inc.*, 2017 WL 1064664, at *1 (D.N.J. Mar. 21, 2017) (defendant's website used plaintiff's software to enable video spokesperson functionality); *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 552 (N.D. Tex. 1997) (defendant "selected the particular adult-oriented newsgroups to be downloaded" and "pre-package[d] (by deleting text and creating thumbnails) and [sold] images it obtained").

[6] Plaintiff fails to dispute, and thus concedes, that BDG cannot be held liable under a successor-liability theory. *See Daggett v. Waterfront Comm'n of New York Harbor*, 774 F. App'x 761, 764 n.7 (3d Cir. 2019) (argument waived by "fail[ure] to address it in [an] opposition brief").

of the entire Flavorwire website. Compl., ¶ 10. And the only "Website pages" identified relate to the Article posted seven years before BDG's acquisition of Flavorwire, or to Wordpress pages containing "stand-alone versions" of the Photographs that were last modified in 2013 and that have no alleged connection to BDG. *See* D.I. 14, Ex. A; Compl., Ex. D. Nor could Plaintiff plausibly allege that BDG purchased the Photographs themselves in 2018, or copied them to a new webpage at that time. Plaintiff's screenshots contradict any such claim. Regardless, Plaintiff has not "properly requested leave to amend"; the Complaint's dismissal should be final. *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007).

## II. Plaintiff's Infringement Claim is Untimely

Even if Plaintiff could allege direct infringement by BDG, which it cannot, it cannot justify its decision to assert an untimely claim regarding a nine-year-old Article. In that regard, BDG does not argue Plaintiff should have sued it "two years before [BDG] was even formed as company[.]" Opp. at 8. BDG argues—rightly—that Plaintiff should not have sued BDG at all.

The Court should reject Plaintiff's unreasonable contention that the "statute of limitations has no application" to an online infringement claim. Opp. at 8. The great weight of relevant authority (all ignored by Plaintiff) has determined that infringement claims based on the presence of content on a website accrue *once*, when the content is initially posted. *See* OB at 10-12 (collecting cases). Even *APL* recognizes this as true, at least as to the reproduction right.[7] 144

---

[7] *APL*'s display and distribution rights discussion is unpersuasive, and contrary to the many other courts to have applied the statute of limitations in the context of online infringement. *APL* also did not address volitional conduct, and noted that any "display" during the limitations period was caused by "a user view[ing] [the] webpage," not conduct by the defendant. 144 Fed. Cl. at 499. Even Plaintiff seems to know that an entity does not continuously and repeatedly "display" a photograph just by embedding it once in a website; otherwise it would have tried to assert a claim against Flavorpill, rather than using BDG's asset purchase as an excuse to revive a stale claim.

Fed. Cl. at 496 ("no additional reproductions" after initial upload to server). Plaintiff also ignores the well-reasoned policy behind these decisions – holding otherwise would render the statute of limitations meaningless for claims of online infringement, as a potential plaintiff could cause an entirely new claim to accrue simply by accessing the content itself.[8]

Plaintiff also cannot avail itself of the discovery rule. Opp. at 8-9. Plaintiff does ***not*** allege it first discovered the Photographs on Flavorwire in October 2018; it only alleges it discovered ***BDG's*** supposed infringement at that time. Plaintiff cites no authority holding that a mere change of ownership results in the resurrection of stale claims under a fresh statute of limitations (and such a rule would potentially subject any company considering an asset purchase to a flood of already-stale claims). Thus, for Plaintiff to rely on the discovery rule, it must establish it did not "discover[], or with due diligence should [not] have discovered, the injury that forms the basis for the claim"—*i.e.*, the existence of the Article—within three years of filing suit. *Krist v. Scholastic, Inc.*, 415 F. Supp. 3d 514, 528 (E.D. Pa. 2019). Plaintiff cannot do so.[9]

### III.    Transfer To The Southern District Of New York Is Warranted

####    A.    Plaintiff's Choice of a Foreign Forum is not Determinative

Plaintiff admittedly has no connection to Delaware. Plaintiff thus cannot dispute that "the deference to be given to [its] choice is reduced because Delaware is not [its] home." *In re*

---

[8] Under Plaintiff's outlandish theory, Plaintiff did just this simply by accessing the Article to create screenshots. *See* Opp. at 9. Frankly, this raises the question of whether any of the supposed "infringements" occurring after August 2018 were ***not*** attributable to Plaintiff.

[9] Nor could it, given its extensive history of litigating over the Photographs, its "most popular and celebrated" work. Opp. at 2; OB at 4; *Minden Pictures, Inc. v. BuzzFeed, Inc.*, 390 F. Supp. 3d 461, 467 (S.D.N.Y. 2019) ("a reasonable copyright holder" and "seasoned litigator that has filed 36 lawsuits to protect its copyrights" "should have discovered, with the exercise of due diligence, that its copyright was being infringed within the statutory time period.").

6

*Marshall*, No. CV 15-MC-01-LPS, 2015 WL 849302, at *2 (D. Del. Feb. 25, 2015). Still, Plaintiff contends its forum choice should be accorded "significant deference" because BDG's Delaware incorporation supposedly gives it a legitimate reason for filing here.[10] Plaintiff is wrong. Delaware courts routinely transfer cases involving defendants incorporated in Delaware, because a defendant's Delaware incorporation "is of little consequence." *Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 807 (D. Del. 1988); *In re Marshall*, 2015 WL 849302, at *2 (similar). Any, albeit reduced, weight that can be accorded to Plaintiff's decision to file here certainly does not outweigh the heavy balance of all other relevant factors.[11] *See Joseph v. Buffalo News, Inc.*, No. CV 16-1325-RGA, 2017 WL 3314006, at *1 (D. Del. Aug. 3, 2017) (transferring copyright suit against Delaware corporation: "[o]ther than Plaintiff's choice of forum, there is no factor favoring keeping the case here."); *Gen. Instrument Corp. v. Mostek Corp.*, 417 F. Supp. 821, 824 n.6 (D. Del. 1976) ("mere fact that Delaware is the plaintiffs' choice of forum and the defendant's state of incorporation will not, standing alone, prevent" transfer).

  **B.**  <u>**The Remaining Private and Public Interest Factors Favor Transfer**</u>

Plaintiff's attempts to minimize the remaining transfer factors, which overwhelmingly favor transfer to the Southern District of New York, are unavailing.

---

[10] Plaintiff misinterprets *Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718 (D. Del. 2012), which actually held that while "the presence of rational and legitimate reasons for choosing to litigate in Delaware entitles a plaintiff's forum preference to something more than minimal weight, the court cannot say that such reasons merit 'substantial deference' . . . ." *Id.* at 729.

[11] Citing a *patent* case, Plaintiff claims this Court is "well equipped to handle … copyright infringement disputes," but does not explain how this favors litigating here over New York.

7

<u>BDG's Preference Favors Transfer</u>. Contrary to Plaintiff's incorrect assertions (Opp. at 12), Delaware courts routinely recognize that a defendant's preference to litigate in the forum where it maintains its principal place of business (here, New York) favors transfer, even if the defendant is incorporated in Delaware. *See*, *e.g.*, *Nalco Co. v. AP Tech Grp. Inc.*, No. CV 13-1063-LPS, 2014 WL 3909114, at *1 (D. Del. Aug. 8, 2014) (Delaware corporation's preference for Ohio, its principal place of business, favored transfer); *Genetic Techs. Ltd. v. Natera, Inc.*, No. CV 12-1737-LPS, 2014 WL 1466471, at *1 (D. Del. Apr. 15, 2014) (similar); *see also Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp. 3d 430, 439 (D. Del. 2015) ("This Court has often held, the physical proximity of the proposed transferee district to a defendant's principal … place of business … is a clear, legitimate basis for seeking transfer.").

<u>Where The Claims Arose Favors Transfer</u>. Even if Flavorwire was accessible nationwide, BDG's operation of Flavorwire indisputably occurred in New York. Plaintiff's own authority holds that where "the development of the accused product took place only in the [transferee district]," this factor weighs at least "slightly in favor of transfer." *Smart Audio Tech.*, 910 F. Supp. 2d at 730-31; *see also MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (location of product design, rather than sale, relevant to factor).

<u>Convenience Of The Parties Favors Transfer</u>. It is undeniable that BDG and its employees will be more inconvenienced by having to litigate in Delaware rather than New York (regardless of Plaintiff's subjective assessment of the ease of travel between those jurisdictions). It is also undeniable that Plaintiff must travel a great distance regardless of whether this action proceeds in Delaware or New York (and Plaintiff admits that making a "comparison" of its costs between the two venues is "very difficult"). This factor favors transfer. *See MEC Res.*, 269 F.

Supp. 3d at 226 (finding that "this factor weighs in favor of transfer because the parties' physical locations are not convenient to Delaware and [plaintiff's] litigation costs will likely remain the same because its two employees must travel even if we do not transfer venue.").[12]

        Convenience Of The Witnesses Favors Transfer. Plaintiff cannot dispute that BDG identified potential third-party witnesses in New York (*e.g.*, Flavorpill). Plaintiff cannot negate this fact by speculating that such witnesses might appear voluntarily for trial. Courts recognize that while witnesses "may voluntarily appear in Delaware for trial, [that] is not the same as them being subject to compulsory subpoena power." *Teleconference Sys. v. Proctor & Gamble Pharm., Inc.*, 676 F. Supp. 2d 321, 333 (D. Del. 2009). Thus, this factor factors transfer.

        Location of Evidence Favors Transfer. Plaintiff concedes this factor favors transfer, even if it is not accorded much weight. Opp. at 15.

        Practical Considerations Favor Transfer. Plaintiff also concedes certain practical considerations favor transfer, such as the additional expense both parties will incur by having to continue to retain Delaware local counsel. Opp. at 14; *Pabst*, 126 F. Supp.3d at 444 ("added cost" of Delaware local counsel "should render this factor in favor of transfer"). Plaintiff also cannot dispute that some expense would be spared by litigating in New York, where BDG maintains its primary offices, rather than Delaware, where not a single party, witness, or piece of evidence is located. *See Audatex N. Am., Inc. v. Mitchell Int'l, Inc.*, No. 12-CV-139 (GMS), 2013 WL 3293611, at *7 (D. Del. June 28, 2013) ("trial in the [transferee district] would prove less expensive than proceeding with trial in the District of Delaware, where neither of the parties

---

[12] The Court should also ignore Plaintiff's audacious suggestion that travel to Delaware will "be safer from the perspective of the impact that Covid-19 has had on the two jurisdictions," given it was Plaintiff that filed suit regarding a nine-year-old Article in the very midst of that pandemic.

have employees or maintain offices, facilities, or records"). Without citing any relevant authority,[13] Plaintiff nonetheless argues that the balance should somehow shift because BDG has also moved to dismiss. Again, Plaintiff seems most concerned that it would somehow be able to assert claims here that would be rejected by a Court in New York. Either way, however, the Court would be transferring this action before an Answer had even been filed; Plaintiff's hyperbolic claims of "expend[ing] duplicative judicial resources" do not alter the analysis.

      Local Interests Favor Transfer. Unlike Plaintiff's patent authorities, courts in copyright cases recognize that the local interest factor favors transfer to the place where the development of the allegedly infringing product occurred (here, New York). *See*, *e.g.*, *Lanard Toys Ltd. v. Toys R US-Delaware, Inc.*, No. CIV.A. 2:14-1939-SDW, 2015 WL 3794595, at *4 (D.N.J. June 16, 2015); *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 503 (D.N.J. 1998).

      Court Congestion Is Neutral. In a desperate attempt to make at least one other factor favor transfer, Plaintiff misguidedly asks the Court to ignore actual statistics demonstrating that there is "nominal difference" in the relative court congestion of this Court and the Southern District of New York, and instead focus on the Southern District's three current judicial vacancies (as compared to the Southern District's 41 active judges). This factor remains neutral.

## Conclusion

      Plaintiff's failure to any direct infringement claim against BDG necessitates dismissal of its Complaint. And if any claim proceed, the heavy balance of relevant factors warrants transfer.

---

[13] Plaintiff's limited authorities are inapposite. *See AIP Acquisition LLC v. iBasis*, *Inc.*, No. CIV.A. 12-616 GMS, 2012 WL 5199118, at *5 (D. Del. Oct. 19, 2012) (considering separate pending case in Delaware involving same patents); *Graphics Properties Holdings Inc. v. Asus Computer Int'l, Inc.*, 964 F. Supp. 2d 320, 330 (D. Del. 2013) (same); *Hologic, Inc. v. Minerva Surgical, Inc.*, 163 F. Supp. 3d 118, 121 (D. Del. 2016) (not addressing practical considerations).

|  |  |
|---|---|
| | RICHARDS, LAYTON & FINGER, P.A. |
| | |
| | /s/ Chad M. Shandler |
| OF COUNSEL: | Chad M. Shandler (#3796) |
| | Nicole K. Pedi (#6236) |
| Eleanor M. Lackman | One Rodney Square |
| Bradley J. Mullins | 920 North King Street |
| MITCHELL SILBERBERG & KNUPP LLP | Wilmington, Delaware 19801 |
| 437 Madison Ave., 25th Floor | (302) 651-7836 |
| New York, New York 10022 | shandler@rlf.com |
| | pedi@rlf.com |
| | |
| | *Attorneys for Defendant* |
| | *BDG Media, Inc.* |
| DATED: June 5, 2020 | |

11