## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TOM HUSSEY PHOTOGRAPHY, LLC,

        Plaintiff,

        v.

BDG MEDIA, INC.,

        Defendant.

**C.A. ~~NO~~NO. 20-404-MN**

### AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Tom Hussey Photography, LLC ("Plaintiff"), by ~~his~~its undersigned attorneys, Duane Morris LLP, brings this suit against Defendant, BDG Media, Inc. ("Defendant"), and for its Amended Complaint alleges as follows:

### SUBSTANCE OF THE ACTION

1.      This is a case of willful copyright infringement in violation of 17 U.S.C. §§ 106(1), 501, and 1202.  Plaintiff seeks compensatory and statutory damages in an amount to be established at trial.

### PARTIES

2.      Plaintiff is the successor by assignment from its principal, Tom Hussey (the original author of the images), of all copyrights in the nine images at issue in this lawsuit.  A true and accurate copy of the assignment agreement is attached hereto as **Exhibit A**.  Plaintiff's principal place of business is located in Dallas, Texas.

3.      Tom Hussey is an award-winning photographer specializing in commercial advertising and lifestyle photography.  In the course of a diverse and award winning 20-year

DM2\13568584.3

career in commercial advertising photography, Mr. Hussey and his photography studio, the Plaintiff in this action, have received industry-wide recognition for his creative style and lighting techniques.  Mr. Hussey has worked on numerous local, national and international advertising campaigns for a variety of Fortune 500 companies, the most popular and highly recognized of which is the "Reflections" series created in connection with pharmaceutical company, which has attracted a number of awards.

4.      Defendant is a media holding company using the trade name "Bustle Digital Group," that describes itself out as "the largest premium publisher reaching millennial women." Defendant owns and operates numerous digital media websites, including the website known as "Flavorwire" located at the URL www.flavorwire.com (the "Website").  Defendant is organized and incorporated under Delaware law, with a principal place of business in New York City, New York.

## JURISDICTION AND VENUE

5.      This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, and therefore this Court has jurisdiction under 17 U.S.C. § 101 *et seq.*; 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1338)(a) (jurisdiction over copyright actions).

6.      Personal jurisdiction over Defendant is proper.  Defendant is organized and incorporated in, and conducts business in, this District, and Defendant has committed torts in this District, including without limitation Defendant's copyright infringement, which causes harm in this state and judicial district.

7.      Pursuant to 28 U.S.C. § 1391, venue properly lies in this Court because a substantial part of the events giving rise to the claims herein occurred in this judicial district.

DM2\12293307.1

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

**A.      Plaintiff's Business**

8.      Plaintiff's principal and predecessor-in-interest concerning the copyrights at issue in this lawsuit, Tom Hussey, is noted for commercial advertising and lifestyle photography. Among the many stylized and valuable photographic images he has created and assigned to ~~the~~ Plaintiff, Mr. Hussey is the original author of a series of images known as the Reflections Series, which includes the nine images attached hereto as **Exhibit B** (the "Copyrighted Works").

9.      The Copyrighted Works have been registered with the United States Copyright Office, pursuant to Certificates of Registration VAu 990-319 and VA 2-168-199.  Specifically, the first eight Copyrighted Works depicted in **Exhibit B** are registered under Certificate of Registration VAu 990-319, with an effective date of June 8, 2009.  The ninth Copyrighted Work depicted in **Exhibit B** is registered under Certificate of Registration VA 2-168-199, with an effective date of June 19, 2019.  Copies of Certificates of Registration VAu 990-319 and VA 2-168-199 received from the United States Copyright Office are attached hereto as **Exhibit C.**

**B.                      Defendant's Unlawful Activities**

10.      On or about August 15, 2018, Defendant acquired ~~the Website from its previous owner~~assets from the entity known as Flavorpill Media, Inc. ("Flavorpill").  On information and belief, and based on the representation of Defendant's in-house counsel, that acquisition was accomplished by way of an asset purchase, not an acquisition of ~~the corporate entity that formerly owned~~Flavorpill.  On information and belief, the assets Defendant acquired include content, trademarks such as Flavorwire, and the Website ~~itself~~domain name and URL.

DM2\12293307.1

11.      Defendant has been directly operating and managing the Website since August 15, 2018, at the earliest.  ~~Accordingly, Defendant's first act of infringement with regard to the Copyrighted Works occurred on~~ ~~August 15, 2018, at the earliest.~~

12.      Although the Website remains named "Flavorwire" under Defendant's ownership, Defendant has owned and / or controlled the content displayed on the Website since August 15, 2018, and Defendant has been solely responsible for the decisions concerning what content to display on the Website, how to display that content, for how long to display that content, what content to remove from the Website, and when to remove that content.

13.      Among other content Defendant added to its Website after August 15, 2018, is a link on each page to a Privacy Policy, a copy of which is attached hereto as **Exhibit D** (the "BDG Website Privacy Policy").  Among other things, the BDG Website Privacy Policy provides notice to visitors to the Website under its ownership of various information about those visitors that Defendant will collect and the various ways it will use their information for Defendant's commercial benefit.  The BDG Website Privacy Policy applies on its face to data concerning visitors to all pages of the Website as owned by Defendant, without exception for pages containing content purchased from Flavorpill.

14.      Among other content Defendant added to its Website after August 15, 2018, is a link on each page to a Copyright Policy, a copy of which is attached hereto as **Exhibit E** (the "BDG Copyright Privacy Policy").  Among other things, the BDG Copyright Privacy Policy purports to set forth procedures for anyone who "believe[s] content or material residing on or accessible through" the Website owned by BDG to follow if such person claims such content or material infringes a copyright.  The BDG Copyright Privacy Policy applies on its face to content

4

and material displayed on all pages of the Website as owned by Defendant, without exception for content or material purchased from Flavorpill.

15.   Among other content Defendant added to its Website after August 15, 2018, is a link on each page to Terms of Service, a copy of which is attached hereto as **Exhibit F** (the "BDG Website Terms").  Among other things, the BDG Website Terms purports to constitute the "legally binding terms and conditions" that is self-declares to be accepted by anyone "visiting or browsing" the Website owned by BDG.

16.   Among other terms applicable to all visitors and browsers of the Website as owned by BDG, the BDG Website Terms purport to grant each user of the Website (and other Defendant owned applications and affiliated publications in addition to the Website, which are defined broadly as "Services") the following "Use License":

> Subject to these Terms of Service, we grant each user of the Services a worldwide, non-exclusive, non-sublicensable and non-transferable license to use (i.e., to download and display locally) Content, to the extent we hold such rights, solely for purposes of using the Services. Use, reproduction, modification, distribution or storage of any Content for other than purposes of using the Services is expressly prohibited without prior written permission from us. You shall not sell, license, rent, or otherwise use or exploit any Content for commercial use or in any way that violates any third party right.

17.   The "Content" encompassed in the Use License is defined by the BDG Website Terms to include "information, data, text, photographs, videos, audio clips, written posts, articles, comments, software, scripts, graphics, and interactive features generated, provided, or otherwise made accessible on or through the Services."  The Use License provided in the BDG Website Terms does not include an exception for Content purchased from Flavorpill.

18.   On information and belief, after purchasing the Website, content and other assets from Flavorpill, Defendant made the decision to stop displaying terms of service and similar

5

content that had been posted on the Website by Flavorpill, and instead to post the BDG Website Privacy Policy, BDG Copyright Privacy Policy, and BDG Website Terms and link them to all pages of the Website.

19.    12.    On October 25, 2018, Plaintiff discoveredwas informed for the first time that Defendant was infringing its exclusive copyrightcopyrights in the Copyrighted Works.

20.    13.    SpecificallySubsequently, Plaintiff discoveredconfirmed that the Copyrighted Works were reproduced and being publicly displayed and distributed, without Plaintiff's authorization at the following website URL'sURLs (along with an additional copy of each being stored at another URL linked to the Website):

- http://flavorwire.com/164201/photo-gallery-reflection-of-time;

- http://flavorwire.com/164201/photo-gallery-reflection-of-time/2;

- http://flavorwire.com/164201/photo-gallery-reflection-of-time/3;

- http://flavorwire.com/164201/photo-gallery-reflection-of-time/4;

- http://flavorwire.com/164201/photo-gallery-reflection-of-time/5;

- http://flavorwire.com/164201/photo-gallery-reflection-of-time/6;

- http://flavorwire.com/164201/photo-gallery-reflection-of-time/7;

- http://flavorwire.com/164201/photo-gallery-reflection-of-time/8

- http://flavorwire.com/164201/photo-gallery-reflection-of-time/9

- http://flavorwire.files.wordpress.com/2011/03/20110225_9641612559751011.jpg;

- http://flavorwire.files.wordpress.com/2011/03/20110225_9641612559751091.jpg ?w=1920;

- http://flavorwire.files.wordpress.com/2011/03/20110225_964161255975123.jpg;

- http://flavorwire.files.wordpress.com/2011/03/20110225_964161255975083.jpg;

- http://flavorwire.files.wordpress.com/2011/03/e_tom_hussey_274.jpg;

6

- http://flavorwire.files.wordpress.com/2011/03/20110225_964161255975057.jpg;

- http://flavorwire.files.wordpress.com/2011/03/20110225_964161255975076.jpg;

- http://flavorwire.files.wordpress.com/2011/03/20110225_964161255975088.jpghttp://flavorwire.com/164201/photo-gallery-reflection-of-time/8; and

- http://flavorwire.files.wordpress.com/2011/03/f_tom_hussey_n-46-welder-4.jpg.http://flavorwire.com/164201/photo-gallery-reflection-of-time/9 (along with the eight prior URLs, the "BDG Display Pages")

21.    14.       Copies of screenshots of the BDG Display Pages evidencing the Defendant's infringing reproductions, distributions and public displays of the Copyrighted Works are attached hereto as **Exhibit DG**.

22.    After purchasing assets from Flavorpill on August 15, 2018, Defendant chose content acquired from Flavorpill to remove from display on the Website, and content purchased from Flavorpill to continue displaying on the Website.  The decision to display the Copyrighted Works on the Website after August 15, 2018 was made by Defendant, not Flavorpill.

23.    In addition, after purchasing the Website and other assets from Flavorpill, Defendant created, or caused to be created, new content to display on the Website.  In particular, the BDG Display Pages contain content that Defendant created, and/or caused to be created based on Defendant's advertising contracts.

24.    For example, Defendant added "Recent Posts" to the BDG Display Pages in which Defendant created links to content created by Defendant and posted elsewhere on the Website, after Defendant purchased the Website from Flavorpill.  See **Exhibit G, pp. 2-9.**

25.    The content titled "Book Expert: A New Perspective on a Classic in 'Marilla of Green Gables'" is content credited to one of Defendant's employees and dated October 24, 2018, a copy of which is attached as **Exhibit H.**

7

26.     The content titled "The 6 Best Scary Movies to Buy or Stream This Week" is content credited to one of Defendant's employees and dated October 23, 2018, a copy of which is attached as **Exhibit I**.

27.     The content titled "11 Movies To See From This Year's Tallgrass Film Festival" is content credited to one of Defendant's employees and dated October 22, 2018, a copy of which is attached as **Exhibit J**.

28.     The content titled "Clever Art Inspired By Pop Culture Fictional Products" is content credited to the "Flavorwire Staff" and dated October 22, 2018, a copy of which is attached as **Exhibit I** (collectively, **Exhibits H–K** referred to as the "BDG Recent Posts").

29.     The BDG Recent Posts could not have been linked to, or displayed on, the Website pages displaying the Copyrighted Works when owned by Flavorpill, because that content was only created by Defendant after acquiring the Website.

30.     Additionally, Defendant added, or caused to be added based on its advertising contracts, advertising content to the BDG Display Pages after Defendant purchased the Website from Flavorpill.  See **Exhibit G, p. 1.**

31.     On information and belief, in order for Defendant's employee(s) to add, or cause to be added, the BDG Recent Posts content, advertising content and link to subscribe to Defendant's Newsletter, to the BDG Display Pages, Defendant's employee(s) would have to have accessed the BDG Display Pages from his/her/their computer(s) in order to add the necessary content and links to those pages.  In doing so, Defendant's employee(s) necessarily would have created a copy of the BDG Display Pages, including the Copyrighted Works, on his/her/their computer(s).  Those copies of the Copyrighted Works were created in connection

8

with Defendant's efforts to create or modify the BDG Display Pages in order to sell BDG's other Services, increase viewership of Defendant's other content, and increase advertising revenue.

32.   ~~15.~~   Defendant's business model for the Website and the similar websites in its portfolio, is to create ~~and/~~, acquire or copy content ~~that~~ it believes will interest its target audience in order to attract viewers to the Website, and its commercializes that viewership through a series of advertising and promotional agreements with third parties, as well as by selling its own subscription or fee-based services to those viewers.   Defendant used its nine ~~infringements~~infringing copies of the Copyrighted Works for that commercial purpose.

33.   After creating or modifying the BDG Display Pages to fill them with revenue generating content, BDG displayed those pages on its Website.

34.   Defendant did not passively permit the Copyrighted Works to be displayed on the Website however they were displayed (if at all) by Flavorpill when that company owned the Website, because the web pages as displayed by Flavorpill were not created with content designed to generate revenue for Defendant.  Instead, Defendant created and added content for its commercial benefit, and displayed the Copyrighted Works with that content in the BDG Display Pages that were new and materially different pages following BDG's acquisition of Flavorpill assets on August, 15, 2018.

35.   In addition, on information and belief, after purchasing the Website, content and other assets from Flavorpill, Defendant employed search engine optimization strategies designed to have older content displayed on the Website treated by search engines as if it were newer content and, as a result, more likely to come up earlier in search results.  Attached as **Exhibit L** is a screenshot of a sitemap file on the Website revealing that Defendant added machine readable

DM2\12293307.1

code to the Website instructing search engines that the BDG Display Pages were last modified on August 12, 2019.

36.    On information and belief, Defendant's search engine optimization tactics, including without limitation the code displayed in **Exhibit L**, made it far more likely that the Copyrighted Works as displayed on the BDG Display Pages would be viewed by visitors after Defendant purchased the Website than they would have been had Flavorpill continued to own the Website after August 15, 2018, or had Defendant passively displayed the Copyrighted Works as they had been displayed prior to Defendant acquiring assets from Flavorpill.

37.    Each person who viewed the BDG Display Pages on the Website received a copy of each of the Copyrighted Works viewed in his or her browser on his or her own computer or mobile device.  In this way, Defendant distributed copies of the Copyrighted Works to visitors of its Website following its creation and display of the BDG Display Pages.

38.    Defendant's first act of infringement with regard to the Copyrighted Works occurred on or after August 15, 2018 and continued through, at a minimum, the date when Defendant removed the Copyrighted Works from display on the BDG Display Pages.  To date, Defendant has refused to disclose when, if at all, it ceased any and all display or other use of the Copyrighted Works on the Website.

39.    Defendant currently displays and uses at least two of the Copyrighted Works on Pinterest posts created and maintained to drive visitors to its Website.  Screenshots of Defendant's Pinterest posts are attached at **Exhibit M** ("Pinterest Posts").  By clicking on the Copyrighted Work Defendant uses in each of those Pinterest Posts, a visitor is taken by link to the BDG Display Pages.  By clicking on the Flavorwire logos next to the Copyrighted Work, a

10

visitor is taken by link to the main Pinterest page Defendant maintains in the name of its Flavorwire Website.

40.   ~~16.~~   Defendant intended to and on information and belief Defendant has, profited from its infringements of the Copyrighted Works, with the intention of not paying ~~the~~ Plaintiff for a license or other permission to reproduce, display, distribute or otherwise use ~~his~~its Copyrighted Works.

41.   ~~17.~~   On information and belief, because ~~the~~ Defendant is the owner and operator of numerous commercial websites that specialize in displaying and promoting media content such as photographs, images, videos and text in order to obtain advertising revenue from the viewership that content creates, Defendant has a sophisticated knowledge of U.S. copyright laws and protections.

42.   ~~18.~~   Defendant was aware that Plaintiff's principal, Tom Hussey, created the Copyrighted Works.  Nevertheless, Defendant never sought, and on information and belief Defendant was aware it did not possess, permission from Mr. Hussey, or ~~the~~ Plaintiff, to reproduce, display or distribute the Copyrighted Works.

43.   ~~19.~~   On January 9, 2020, Plaintiff, through counsel, sent a demand letter to ~~the~~ Defendant concerning its infringement of the Copyrighted Works.  Among other things, Plaintiff demanded that Defendant "certify that [it] has ceased all infringing reproduction, distribution and display of the Copyrighted Works and that it will make no further use of the Copyrighted Works, or any of [Plaintiff]'s other copyrighted works, again in the future."  Despite that demand, and repeated requests that Defendant confirm it has taken action to cease displaying the Copyrighted Works, Defendant has refused to respond to those requests, instead taking the incomprehensible

11

position that it is irrelevant information.  Defendant never disclosed its ongoing use of at least two of the Copyrighted Works in the Pinterest Posts to generate new visitors to its Website.

44.    20.    Because of Defendant's repeated refusals to confirm that it has ceased displaying or otherwise using the Copyrighted Works, orits further refusal to agree not to do so again in the future, and its ongoing use of at least two of the Copyrighted Works to promote its Website on Pinterest, Plaintiff will not be able to protect its exclusive copyrights in the Copyrighted Works without obtaining an injunction against the Defendant's furtherfuture infringement of those worksthe Copyrighted Works, copies of which presumably remain in Defendant's possession, custody or control.

**FIRST CLAIM FOR RELIEF**
**DIRECT COPYRIGHT INFRINGEMENT**
**(17 U.S.C. § 101 *et seq*.)**

45.    21.    Plaintiff realleges paragraphs 1 through 2044 above and incorporates them by reference as if fully set forth herein.

46.    22.    The Copyrighted Works are original works of authorship, embodying copyrightable subject matter, subject to the full protection of the United States copyright laws. Plaintiff owns the sole and exclusive copyrights in the Copyrighted Works, including without limitation the right to sue for infringement.

47.    23.    As a result of Defendant's reproduction, distribution and public display of the Copyrighted Works and explicit reference to Mr. Hussey as the author of the Copyrighted Works, Defendant had access to the Plaintiff's publication of the Copyrighted Works prior to reproducing and/orat the time it made copies for the purpose of displaying them on thethe Copyrighted Works on the BDG Display Pages and distributing them to visitors of the Website.

48.    24.    By its actions set forth above, Defendant has directly infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. §501, by reproducing the

DM2\12293307.1

Copyrighted Works without permission ~~and distributing and~~for the purposes of creating the BDG Display Pages, then publicly displaying the ~~Infringing~~Copyrighted Works on its Website and Pinterest, and distributing copies to visitors of the BDG Display Pages and the Pinterest Posts displaying at least two of the Copyrighted Works.

49.   ~~25.~~   Upon information and belief, Defendant's ~~infringement~~direct infringements of Plaintiff's copyrights has been willful and deliberate and Defendant has profited at the expense of Plaintiff.   At a minimum, Defendant acted in reckless disregard of Plaintiff's exclusive copyrights by knowingly including the Copyrighted Works in Defendant's BDG Display Pages without ever receiving a license or other authorization from Plaintiff, or its principal Tom Hussey, who Defendant knew created the Copyrighted Works, whether indirectly from Flavorpill, or directly from Plaintiff or Mr. Hussey, and Defendant has refused to cease all infringing public displays and distributions of all copies of the Copyrighted Works under its control, despite notice and demand.

50.   ~~26.~~   As a direct and proximate result of Defendant's ~~infringement~~direct infringements of Plaintiff's exclusive rights in the Copyrighted Works, Plaintiff is entitled to recover ~~his~~its actual damages resulting from Defendant's unauthorized and uncompensated uses of the Copyrighted Works, and in addition, Plaintiff is entitled to recover damages based on a disgorgement of Defendant's profits connected to its uses of the ~~Infringing~~Copyrighted Works, pursuant to 17 U.S.C. § 504(b).

51.   In the alternative, and at Plaintiff's election, as to each of the first eight Copyrighted Works depicted in **Exhibit B**, Plaintiff is entitled to an award of statutory damages, up to a maximum amount of $150,000, as a result of Defendant's willful infringement of the

13

DM2\12293307.1

Copyrighted Works, or up to a maximum amount of $30,000 if Defendant's infringement is determined not to have been willful, pursuant to 17 U.S.C. § 504(c).

52.     Plaintiff is entitled to an award of its costs, including reasonable attorneys' fees, for pursuing its claims relating to the first eight Copyrighted Works depicted in **Exhibit B**, pursuant to 17 U.S.C. § 505.

53.     Defendant's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiffs unless enjoined by this Court.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive copyrights in the Copyrighted Works.

**SECOND CLAIM FOR RELIEF**
**INDIRECT COPYRIGHT INFRINGEMENT**
**(17 U.S.C. § 101 *et seq*.)**

54.     Plaintiff realleges paragraphs 1 through 53 above and incorporates them by reference as if fully set forth herein.

55.     Beginning on August 15, 2018 and continuing thereafter, Defendant had and exercised complete authority and control over the content of the BDG Display Pages, the Website, and the Pinterest Posts.

56.     Defendant knew, or should have known, that it did not possess any license, authorization or other permission from Plaintiff permitting the reproduction, display or distribution of the Copyrighted Works on the BDG Display Pages, the Website, and the Pinterest Posts, on or after August 15, 2018.

57.     Defendant's actions set forth above, including without limitation creating or modifying the BDG Display Pages to fill them with revenue generating content, employing search engine optimization strategies and content, and creating or maintaining the Pinterest

14

DM2\12293307.1

Posts, Defendant intentionally has induced and / or encouraged the ongoing infringement of Plaintiff's Copyrighted Works.

58.     By and through its advertising contracts and the revenue generating products and services promoted on the Website and other internet properties Defendant links to its Website, Defendant has generated revenues and profits through the ongoing infringement of Plaintiff's Copyrighted Works described above.

59.     Because of the profits generated, Defendant chose not to exercise its control and authority over the BDG Landing Pages, the Website and the Pinterest Posts in order to cease the infringements of Plaintiff's Copyrighted Works.   Instead, Defendant undertook the actions identified above in an effort to enhance and expand consumers' access to and viewership of the infringing displays of the Copyrighted Work, in order to increase its profits.

60.     Defendant's conduct constitutes contributory infringement of Plaintiff's exclusive copyrights in the Copyrighted Works.

61.     Defendant's conduct constitutes vicarious infringement of Plaintiff's exclusive copyrights in the Copyrighted Works.

62.     Upon information and belief, Defendant's indirect infringements of Plaintiff's copyrights has been willful and deliberate and Defendant has profited at the expense of Plaintiff. At a minimum, Defendant acted in reckless disregard of Plaintiff's exclusive copyrights by knowingly including the Copyrighted Works in Defendant's BDG Display Pages without ever receiving a license or other authorization from Plaintiff, or its principal Tom Hussey, who Defendant knew created the Copyrighted Works, whether indirectly from Flavorpill, or directly from Plaintiff or Mr. Hussey, and Defendant has refused to cease all infringing public displays

DM2\12293307.1

and distributions of all copies of the Copyrighted Works under its control, despite notice and demand.

63.    As a direct and proximate result of Defendant's indirect infringements of Plaintiff's exclusive rights in the Copyrighted Works, Plaintiff is entitled to recover its actual damages resulting from Defendant's unauthorized and uncompensated uses of the Copyrighted Works, and in addition, Plaintiff is entitled to recover damages based on a disgorgement of Defendant's profits connected to its uses of the Copyrighted Works, pursuant to 17 U.S.C. § 504(b).

64.    27.    In the alternative, and at Plaintiff's election, as to each of the first eight Copyrighted Works depicted in **Exhibit B**, Plaintiff is entitled to an award of statutory damages, up to a maximum amount of $150,000, as a result of Defendant's willful infringement of the Copyrighted Works, or up to a maximum amount of $30,000 if Defendant's infringement is determined not to have been willful, pursuant to 17 U.S.C. § 504(c).

65.    28.    Plaintiff is entitled to an award of hisits costs, including reasonable attorneys' fees, for pursuing hisits claims relating to the first eight Copyrighted Works depicted in **Exhibit B**, pursuant to 17 U.S.C. § 505.

66.    29.    Defendant's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiffs unless enjoined by this Court.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright lawcopyrights in the Copyrighted Works.

16

WHEREFORE, Plaintiff demands judgment as follows:

1.      A declaration that Defendant ~~has infringed~~<u>is primarily liable for directly infringing</u> Plaintiff's copyrights in the Copyrighted Works in violation of the Copyright Act;

2.      <u>A declaration that Defendant is secondarily liable for indirectly infringing Plaintiff's copyrights in the Copyrighted Works in violation of the Copyright Act;</u>

3.      ~~2.~~ A declaration that such ~~infringement has~~<u>infringements have</u> been willful;

4.      ~~3.~~ An award <u>on Counts I and II</u> of Plaintiff's actual damages and a disgorgement of Defendant's profits, under 17 U.S.C. § 504(b), as shall be determined at trial for ~~each~~<u>any one or all</u> of the ~~first eight~~<u>nine</u> Copyrighted Works depicted in **Exhibit B**, or, at Plaintiff's election, an award of statutory damages in an amount determined at trial, pursuant to 17 U.S.C. §§ 504(c)<u>, for each of the first eight Copyrighted Works depicted in **Exhibit B**</u>;

5.      ~~4.~~ ~~Awarding~~<u>An award</u> to Plaintiff ~~his~~<u>of its</u> costs and expenses incurred in this action, including ~~his~~<u>its</u> reasonable attorneys' fees, as provided in 17 U.S.C. §§ 505;

6.      ~~5.~~ ~~Awarding~~<u>An award in favor of</u> Plaintiff <u>of</u> interest, including pre-judgment interest, on the foregoing sums<u> awarded</u>;

7.      ~~6.~~ ~~Permanently enjoining~~<u>A permanent injunction prohibiting</u> Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, from:

(a)      directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop or manufacture any works derived or copied from ~~the~~ Plaintiff's Copyrighted Works or to participate or assist in any such activity; and

17

18

(b)     directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of the Copyrighted Works ~~or Infringing Works~~.

8.      ~~7.~~ For such other and further relief as the Court may deem just and proper.

18

DM2\12293307.1

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated:              March ~~20~~3, ~~2020~~2021

Respectfully Submitted

**DUANE MORRIS LLP**

  */s/ Mackenzie M. Wrobel*
Mackenzie M. Wrobel (#6088)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Tel: (302) 657-4900
mmwrobel@duanemorris.com

– and –

Steven M. Cowley
(*admitted pro hac vice*)
100 High Street, Suite 2400
Boston, MA  02110-1724
Tel.:  (857) 488-4261
smcowley@duanemorris.com

~~*Attorney*~~*Attorneys* for Plaintiff
*Tom Hussey Photography, LLC*

19

DM2\12293307.1

| Summary report:<br>Litera® Change-Pro for Word 10.8.2.11 Document comparison done on<br>3/3/2021 3:41:29 PM | |
|---|---|
| **Style name:** DM - Double Underline Strikethrough | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://DM/DM2/12293307/1 | |
| **Modified DMS:** iw://DM/DM2/13568584/3 | |
| **Changes:** | |
| Add | 176 |
| Delete | 112 |
| Move From | 1 |
| Move To | 1 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 290 |