## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TOM HUSSEY PHOTOGRAPHY, LLC,

          Plaintiff,

    v.

BDG MEDIA, INC.,

          Defendant.

C.A. No. 20-404-MN

---

## DEFENDANT BDG MEDIA, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK

OF COUNSEL:

Eleanor M. Lackman
Bradley J. Mullins
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022

Chad M. Shandler (#3796)
Nicole K. Pedi (#6236)
RICHARD LAYTON & FINGER
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7836
shandler@rlf.com
pedi@rlf.com

*Attorneys for Defendant*
*BDG Media, Inc.*

## TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF THE PROCEEDINGS ......................................................... 1

II.     SUMMARY OF ARGUMENT ..................................................................................... 1

III.    STATEMENT OF FACTS ............................................................................................ 3

        A.      THP's Initial Allegations ................................................................................. 3

        B.      The Court's December 18 Order Dismissing the Original Complaint .................. 3

        C.      THP's Amended Allegations ........................................................................... 4

        D.      The Parties' Lack Of Any Relevant Connections To This District ...................... 5

                1.      THP Is A Texas Company With No Connection To Delaware ................. 5

                2.      BDG (And Its Witnesses And Evidence) Are Located in New York ......... 5

IV.     ARGUMENT ............................................................................................................... 6

        A.      THP's Claims Should Be Dismissed Pursuant To Rule 12(b)(6) ......................... 6

                1.      THP Still Fails To Allege Any Direct Infringement By BDG ................... 7

                2.      THP Does Not Sufficiently Allege its Secondary Liability Claim ........... 11

                3.      THP's Copyright Infringement Claims Are Untimely ............................. 14

        B.      This Case Should Be Transferred To The Southern District Of New York ......... 15

                1.      THP Could Have Filed This Action In New York ................................... 15

                2.      Transfer Would Best Serve The Convenience Of The Parties And
                        Witnesses And Is In The Interests Of Justice ........................................ 15

V.      CONCLUSION .......................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................6

*Berkery v. Verizon Commc'ns Inc.*,
658 F. App'x 172 (3d Cir. 2016) ...........................................................7

*Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*,
No. 16-733-GMS, 2017 WL 1536394 (D. Del. Apr. 27, 2017) ......................................15, 18

*ChriMar Sys., Inc. v. Cisco Sys., Inc.*,
No. 11- 1050-GMS, 2013 WL 828220 (D. Del. Mar. 6, 2013) ...............................17

*Contour IP Holding, LLC v. GoPro, Inc.*,
No. 15-1108-LPS-CJB, 2017 WL 3189005 (D. Del. July 6, 2017)...............................16, 19

*Fortinet, Inc. v. FireEye, Inc.*,
944 F. Supp. 2d 352 (D. Del. May 16, 2013) ........................................17

*Good Tech. Corp. v. MobileIron, Inc.*,
No. CV 14-1308-LPS-CJB, 2015 WL 1458091 (D. Del. Mar. 27, 2015) ..............................20

*In re Delmarva Sec. Litig.*,
794 F. Supp. 1293 (D. Del. 1992)...........................................................7

*Joseph v. Buffalo News, Inc.*,
No. CV 16-1325-RGA, 2017 WL 3314006 (D. Del. Aug. 3, 2017)..........................16, 17, 18

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. 1995)...........................................................16, 19

*Leonard v. Stemtech Health Scis., Inc.*,
No. CV 08-67-LPS-CJB, 2013 WL 5288266 (D. Del. Sept. 19, 2013)..........................7, 8, 12

*Live Face on Web, LLC v. The Control Grp. Media Co., Inc.*,
150 F. Supp. 3d 489 (E.D. Pa. 2015) ......................................................13

*McClain v. Camouflage Assocs.*,
No. CIV.A. 93-0994, 1994 WL 570874 (E.D. Pa. Oct. 18, 1994)..........................20

*MEC Res., LLC v. Apple, Inc.*,
269 F. Supp. 3d 218 (D. Del. 2017)...........................................................17, 19

## TABLE OF AUTHORITIES
<u>(continued)</u>

**<u>Page(s)</u>**

*Microsoft Corp. v. Softicle.com*,
No. CV 16-2762, 2017 WL 5517379 (D.N.J. Sept. 29, 2017) ...............................................10

*Mitel Networks Corp. v. Facebook, Inc.*,
943 F. Supp. 2d 463 (D. Del. 2013) ......................................................................................19

*MoneyCat Ltd v. PayPal Inc.*,
No. CV 1:13-1358, 2014 WL 2042699 (D. Del. May 15, 2014).......................................16, 19

*New Jersey Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*,
760 F.3d 297 (3d Cir. 2014)...................................................................................................7

*O'Boyle v. Braverman*,
337 F. App'x 162 (3d Cir. 2009) .............................................................................................7

*Oneida Motor Freight, Inc. v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988)...................................................................................................7

*OpenTV, Inc. v. Netflix, Inc.*,
No. 12-1733-GMS, 2014 WL 1292790 (D. Del. Mar. 31, 2014) .....................................16, 17

*Parker v. Google, Inc.*,
242 F. App'x 833 (3d Cir. 2007) ...................................................................................9, 12, 13

*Parker v. Google, Inc.*,
422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) ...........12, 13, 14

*Parker v. Paypal, Inc.*,
No. CV 16-4786, 2017 WL 3508759 (E.D. Pa. Aug. 16, 2017).........................................8, 11

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ..............................................................................................10

*Perfect 10, Inc. v. Giganews, Inc.*,
No. CV11-07098 AHM SHX, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013),
*aff'd*, 847 F.3d 657 (9th Cir. 2017).......................................................................................8, 9

*Rappoport v. Steven Spielberg, Inc.*,
16 F. Supp. 2d 481 (D.N.J. 1998) ..........................................................................................19

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
907 F. Supp. 1361 (N.D. Cal. 1995) ......................................................................................10

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Tanksley v. Daniels*,
  902 F.3d 165 (3d Cir. 2018)......................................................................................7

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*,
  473 F.3d 506 (3d Cir. 2007).....................................................................................11

*UAB "Planner 5D" v. Facebook, Inc.*,
  No. 19-CV-03132-WHO, 2019 WL 6219223 (N.D. Cal. Nov. 21, 2019) ................5

*Ventura Content, Ltd. v. Motherless, Inc.*,
  885 F.3d 597 (9th Cir. 2018) ..................................................................................14

*Wacoh Co. v. Kionix Inc.*,
  845 F. Supp. 2d 597 (D. Del. 2012).........................................................................20

*Wolf v. Travolta*,
  167 F. Supp. 3d 1077 (C.D. Cal. 2016) ...................................................................14

### STATUTES

17 U.S.C. § 507(b) ...............................................................................................................14

28 U.S.C.
  § 1331...................................................................................................................15
  § 1338(a) ..............................................................................................................15
  § 1400(a) ..............................................................................................................15
  § 1404(a) ..............................................................................................................15

Copyright Act Section 106..................................................................................2, 4, 14

Federal Rule of Civil Procedure 12(b)(6) ............................................................1, 3, 6

### OTHER AUTHORITIES

3 Nimmer on Copyright § 12.04(A)(2)(a) (2005).........................................................12

## I.   <u>**NATURE AND STAGE OF THE PROCEEDINGS**</u>

BDG Media, Inc. ("BDG") respectfully moves to dismiss the Amended Complaint of Plaintiff Tom Hussey Photography, LLC ("THP") pursuant to Federal Rule of Civil Procedure 12(b)(6), based on THP's failure to plausibly allege actionable conduct by BDG within the applicable statute of limitations (or at any time) sufficient to state a claim for direct copyright infringement, as well as its failure to allege facts that could support a claim for vicarious or contributory infringement.  The Court rightly dismissed THP's original Complaint (which only contained a claim for direct infringement), and its Amended Complaint fails to cure the deficiencies set forth in the Court's Order dismissing the Complaint (*see* D.I. 18, the "Order"). THP's new indirect infringement claims are similarly unviable.

Pursuant to this Court's Oral Order (D.I. 25), BDG also renews its motion to transfer this action to the Southern District of New York.  Despite the Court's recognition that the grounds for transfer set forth in BDG's prior motion were "particularly compelling," Order at 6-7, n.3, THP filed its Amended Complaint in this forum.  D.I. 26.

## II.   <u>**SUMMARY OF ARGUMENT**</u>

The Court's Order dismissing THP's Complaint was well-reasoned: "BDG's acqui[sition] and [] manage[ment] [of] Flavorwire, which host[ed] a 2011 article displaying THP's copyrighted work[,]" is not a "volitional act of copyright infringement."  Order at 3-5. THP's Amended Complaint changes nothing.

Rather than remedy the defects already identified by the Court (which it cannot do), THP's Amended Complaint contains more irrelevant allegations regarding BDG's *general maintenance and management* of its websites – *e.g.*, site-wide updates (*over seven years* after the photographs were embedded) to Flavorwire's Privacy Policy, Copyright Policy, Terms of Service, and sitemap (D.I. 26, "Am. Compl." ¶¶ 12-18, 35-37), or the use of display advertising

that updates without any intervention from BDG (*id.* ¶¶ 23-33).  These allegations are unrelated to the purported infringements of the photographs at issue, and cannot conceivably constitute "volitional conduct" for the reasons already detailed by the Court.  At best, these allegations only underscore that BDG did not engage in any acts giving rise to a violation of 17 U.S.C. § 106.

Nor can THP resuscitate its defective infringement claim by inserting new references to the use of the photographs on a separate website Pinterest (which is not alleged to be owned or controlled by BDG), which THP claims are still being "currently" displayed.  Am. Compl. ¶¶ 38, 39.  These demonstrably false and conclusory allegations cannot remedy THP's faulty claims, as they still fail to support any claim for direct infringement by BDG.

Because THP knows its direct infringement claims are doomed, it goes beyond the scope of permitted amendment (*compare* D.I. 21-1, *with* D.I. 26) and haphazardly attempts to assert new claims for vicarious and contributory liability against BDG based on the same general allegations from its original Complaint, *i.e.*, that BDG maintains and manages its website.  But THP's efforts to fit a square peg into a round hole fail, as THP does not plead allegations sufficient to support required elements of such claims, including identifying infringement by third parties, or alleging knowledge by BDG of such infringement.  These shortcomings are fatal.

Finally, after being explicitly cautioned by the Court to consider its choice of forum, THP has opted to re-file in Delaware – where neither party has any relevant connections.  BDG still maintains its principal place of business in New York, and still expects that all of its relevant witnesses and evidence, along with potential third-party witnesses, would be located there.  THP is still based in Texas, and still has no apparent connection to Delaware.  Transfer remains warranted.

Despite being given the opportunity to amend (and being put on specific notice of the fatal deficiencies in its claims), THP's Amended Complaint fails to correct the deficiencies in its new, threadbare theories. THP's Amended Complaint should therefore be dismissed with prejudice. And if any of THP's claims proceed, they should do so in New York.

## III.   STATEMENT OF FACTS

### A.   THP's Initial Allegations[1]

THP alleged it is the assignee of the copyrights in nine images originally owned by its principal, Hussey. D.I. 1, ¶ 2. Hussey claims to be an "award-winning photographer" specializing in commercial advertising and lifestyle photography, and the original author of the photographs at issue (the "Photographs"). *Id.*, ¶¶ 3, 8. THP alleged that the Photographs were reproduced at a series of website URLs associated with third-party site Wordpress.com, all of which relate to a single article posted to flavorwire.com ("Flavorwire") on March 23, 2011 (the "Article"). *Id.*, ¶ 13, Ex. D.[2] THP further alleged that BDG, which was incorporated two years after the date of the Article, acquired Flavorwire from its previous owner (Flavorpill) on or about August 15, 2018, and that BDG has been "directly operating and managing" Flavorwire since then. D.I. 1, ¶¶ 10-11; D.I. 11, Ex. B. Based on that general operation of Flavorwire, THP asserted a single cause of action against BDG for direct copyright infringement. D.I. 1, ¶¶ 21-29.

### B.   The Court's December 18 Order Dismissing the Original Complaint

BDG moved to dismiss THP's Complaint, or, in the alternative, to transfer. D.I. 9. On December 18, 2020, this Court dismissed the Complaint on the basis that BDG did not engage in

---

[1] The allegations in Sections III.A and III.C are taken from THP's original and Amended Complaints. To the extent they plead plausible facts, they are presumed true for the purposes of this motion. BDG reserves the right to challenge these allegations if this lawsuit proceeds.

[2] All references to WordPress, where THP alleged the Photographs were posted, are omitted from the Amended Complaint, without explanation. *Compare* D.I. 1, ¶ 13, *with* D.I. 26, ¶ 20.

volitional conduct that would violate one or more of the exclusive rights under Section 106 of the Copyright Act (Order, at 4-5), and warned that "Plaintiff [should] carefully consider its choice of forum should it decide to amend its pleading." *Id.* at 6, n.3.  THP thereafter moved to amend the Order to permit THP to file an amended pleading, and submitted a proposed amended pleading at the Court's request.  D.I. 21, Ex. 1.  THP then filed an Amended Complaint on March 3, 2021, which was materially different than the proposed amended complaint previously submitted to the Court. *Compare id.*, *with* D.I. 26.

### C.    THP's Amended Allegations

THP's Amended Complaint, adds a series of allegations, all of which pertain to BDG's management and maintenance of Flavorwire after its acquisition:  (i) BDG updated the Privacy Policy, Copyright Policy, and Terms of Service applicable to the entire Flavorwire platform to, among other things, indicate its ownership of Flavorwire (D.I. 26, ¶¶ 13-18); (ii) like almost every functioning website, BDG incorporated display advertising, which appears in the form of relevant, timely advertisements on each page within the website, regardless of an article's age (*id.*, ¶¶ 23-31, Exs. G-K); and (iii) utilized search engine optimization strategies, such as updating the sitemap of Flavorwire to indicate that webpages had been recently updated (*id.*, ¶¶ 36-37).[3]  THP further alleges that links to the Article were included in posts made to a third-party website, Pinterest, without alleging who posted those links, or when.[4]  D.I. 26, ¶ 39, Ex. M.  THP

---

[3] To be clear, any updates to the sitemap of Flavorwire had nothing to do with the Photographs, which never resided on BDG's servers.  D.I. 1, ¶ 13, Ex. D (conceding that the Photographs were reproduced on Wordpress, a third-party site, and not on Flavorwire).

[4] The Pinterest posts were uploaded by Flavorpill, presumably when the original article was posted, and contain the same text and images as the original article.  *See* D.I. 26, ¶ 39, Ex. M. THP's allegations that the Pinterest posts are "currently" displayed is false, as they were removed immediately upon notice by THP in or around January of 2021.  THP further alleges that BDG has "refused to cease all infringing public displays and distributions of all copies of the Copyrighted Works."  D.I. 26, ¶ 62. As THP knows, this is demonstrably false, as the uses on the

also purports to assert an additional cause of action, for indirect infringement. *Id.* ¶¶ 54-66.

### D. The Parties' Lack Of Any Relevant Connections To This District

#### 1. THP Is A Texas Company With No Connection To Delaware

THP is a limited liability company that is incorporated in Texas, and that maintains its principal place of business in Dallas, Texas. D.I. 26, ¶ 2; Decl. of Bradley Mullins ("Mullins Decl."), Ex. C. Hussey, the original author of the photographs and THP's principal, also resides in Dallas. D.I. 26, ¶ 2, Ex. A. Starting in 2016, THP (or Hussey himself) has filed suits throughout the country, the majority of which were based on some of the photographs at issue here. Mullins Decl., ¶ 6-9 & Exs. D-F. THP appears not to have previously sued in, or had any other relevant contacts with, Delaware.

#### 2. BDG (And Its Witnesses And Evidence) Are Located in New York

BDG is a digital media company that operates a number of websites, including, as relevant in this case, Flavorwire. Decl. of Jessica Stukonis ("Stukonis Decl."), ¶ 2. BDG is incorporated in Delaware, but its primary place of business is in New York City. *Id.*, ¶ 3. BDG has approximately 283 full-time employees in New York City, including writers, editors, and all of BDG's executives. *Id.* BDG has no employees or any other presence in Delaware, other than the presence of certain corporate documents in the state.

All of the BDG witnesses and documents potentially relevant to this dispute are located in New York City. The Flavorwire website is not currently operational, and has not been operational since December 2019. *Id.*, ¶ 6. Any current BDG employee that would have

---

Flavorwire Website were eliminated well before the original Complaint was filed, and the Pinterest posts were removed upon first notice of such posts. Stukonis Decl., ¶ 16, Ex. 2. *See UAB "Planner 5D" v. Facebook, Inc.*, No. 19-CV-03132-WHO, 2019 WL 6219223, at *2 (N.D. Cal. Nov. 21, 2019) (at motion to dismiss stage, taking judicial notice of screenshots of a website taken by a party) (citing *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)).

knowledge of Flavorwire's operation prior to December 2019 would be located in New York City. *Id.* BDG's internal servers are also located in New York City. *Id.*, ¶ 9. Decisions regarding content on BDG-owned websites and regarding general policies and procedures for postings, including protocols for use of photographic content, are all made at BDG's headquarters. *Id.*, ¶ 8. Any documents related to such matters also are located at BDG's headquarters. *Id.*, ¶ 9. BDG employees who could testify as to how traffic to Flavorwire is measured or how revenue is attributed to any given article are all located in New York City, as are any related documents. *Id.*, ¶ 8. Most members of BDG's legal department are located at BDG's headquarters. *Id.*, ¶ 13. Having to travel to Delaware for trial, hearings, depositions, conferences and mediation would be time-consuming and disruptive for BDG's legal team, as well as employees who might serve as witnesses. *Id.*, ¶¶ 13, 15.

The Article has no connection to Delaware. The writer of the Article, Caroline Stanley, is not and has never been an employee of BDG. Mullins Decl., Exs. A, G. The prior owner of Flavorwire, Flavorpill Productions LLC d/b/a Flavorpill Media, is based in New York City. Mullins Decl., Ex. I. Any articles published on Flavorwire are equally accessible from anywhere in the world. Stukonis Decl., ¶ 10. The Article received a total of 482 unique page views since BDG's 2018 agreement to acquire Flavorwire in 2018. *Id.*, ¶ 11. It is unknown, and is difficult (if not impossible) to know whether any views originated in Delaware. *Id.*, ¶ 12.

## IV.  ARGUMENT

### A.  THP's Claims Should Be Dismissed Pursuant To Rule 12(b)(6)

Under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept all allegations in the complaint as true and draw all reasonable inferences in favor of the

plaintiff." *New Jersey Carpenters & Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014). A limitations defense may provide a basis for dismissal where the time bar is apparent "on the face of the complaint," or from judicially noticeable documents. *Berkery v. Verizon Commc'ns Inc*., 658 F. App'x 172, 174 (3d Cir. 2016); *O'Boyle v. Braverman*, 337 F. App'x 162, 164 (3d Cir. 2009). "[I]n evaluating a motion to dismiss, courts are not limited to the four corners of the complaint, but may also consider evidence 'integral to or explicitly relied upon' therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (citation omitted). In a copyright infringement action, these documents include the "allegedly infringing works." *Id.* The Court may also take judicial notice of the record of a prior proceeding, and other matters of public record. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988); *In re Delmarva Sec. Litig.*, 794 F. Supp. 1293, 1299 (D. Del. 1992).

### 1.     THP Still Fails To Allege Any Direct Infringement By BDG

This Court correctly recognized that "[t]o allege direct copyright infringement, 'a plaintiff must allege volitional conduct on the part of the defendant.'" D.I. 18 at 3 (quoting *Parker v. Google, Inc.*, 242 F. App'x 833, 836 (3d Cir. 2007)); *see also Leonard v. Stemtech Health Scis., Inc.*, No. CV 08-67-LPS-CJB, 2013 WL 5288266, at *5 (D. Del. Sept. 19, 2013) ("a finding of direct copyright infringement requires deliberate, direct action or participation on the part of the defendant (*i.e.*, volitional conduct)"), *report and recommendation adopted*, D.I. 217 (D. Del. Oct. 4, 2013) (docket entry only). The allegations in THP's Amended Complaint, however, still fail to satisfy this volitional conduct requirement.

At their essence, THP's factual allegations still allege only that BDG (i) acquired Flavorwire in August 2018 by way of an asset purchase, and (ii) that BDG has been operating and managing the website since that time. *See* D.I. 26, ¶¶ 10-11; 13-37. When it comes to actual use of the Photographs in the Article (posted years before BDG purchased Flavorwire), however,

THP still does not allege that BDG played any part in deciding to post the Photographs to the URLs listed in the initial Complaint (locations that have been omitted for purposes of the Amended Complaint). Thus, THP's allegations are not substantively different from those in its initial Complaint, and fail to state a claim for the same reasons the Court previously recognized.

At most and as before, THP alleges only that BDG now operates a website that embedded allegedly infringing content posted by someone else seven years before BDG was involved with that website (and two years before BDG even existed). *See* D.I. 26, ¶ 11; Mullins Decl., Ex. B. But the law is clear that "merely hosting infringing content does not constitute direct copyright infringement." *Parker v. Paypal, Inc.*, No. CV 16-4786, 2017 WL 3508759, at *4 (E.D. Pa. Aug. 16, 2017); *see also Leonard*, 2013 WL 5288266, at *8 (rejecting argument that "owning, hosting, and directly profiting from a website equates to direct liability for infringement, even in the absence of direct participation in causing the infringement to occur"); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 AHM SHX, 2013 WL 2109963, at *8 (C.D. Cal. Mar. 8, 2013), *aff'd*, 847 F.3d 657 (9th Cir. 2017) ("An allegation that Defendants control the content on their servers, without a good-faith allegation specifying how Defendants exercised that control to directly create copies, cannot alone create an inference that Defendants engaged in a volitional act directly causing infringement.").[5]

THP's newly added allegations merely pertain to BDG's management of the overall Flavorwire website; they do nothing to support any volitional conduct with respect to any infringement of the Photographs. The vast majority of THP's new allegations simply reflect the unremarkable fact that BDG – like any website operator – regularly updates the overall code of

---

[5] BDG preserves its successor liability, lack of standing, and ownership arguments, all made in its initial motion to dismiss. *See* D.I. 10 at p. 3, n.2, 9.

its website, by, *inter alia*, updating its terms of service, incorporating display advertising, or adding continuously updated links to other website content.[6]  But it is not Flavorwire's terms of service, or any advertising displayed on that website, that THP claims is infringing.  It is the use of the Photographs in the Article that is alleged to have been infringing, and THP has alleged no volitional conduct by BDG with respect to that act or any other act that would violate one of the exclusive rights under copyright law.  In other words, the new allegations in THP's Amended Complaint amount to nothing more than BDG's "general operation" of its website – its updating of the electronic frame that surrounds all of the content on Flavorwire.  This is just the sort of conduct that Courts, like this one before, find insufficient to state a claim for direct copyright infringement.  *Perfect 10, Inc.*, 847 F.3d at 670; *see also Parker*, 242 F. App'x at 836-37 (affirming dismissal of infringement claim against defendant that allegedly archived plaintiff's copyrighted work and made it "accessible to others," based on failure to allege "any volitional conduct").[7]

Nor can THP salvage its direct infringement claim by making conclusory allegations (in passive voice) that individuals that viewed the Article "received" a copy of the Photographs, which THP alleges resulted in BDG having "distributed" copies of the Photographs.  D.I. 26, ¶

---

[6] THP's allegation, on "information and belief," that BDG employees "necessarily" created copies of the webpages containing the embedded Photographs in order to add display advertising or perform other general updates is entirely implausible, and reflects a gross misunderstanding of how websites operate – not to mention that it conflicts with the prior allegations that the Photographs were hosted on WordPress.com and embedded into Flavorwire.  D.I. 1, ¶ 13. Such updates are conducted through alterations to the website's underlying code, not by creating copies of individual webpages and manually adding specific advertisements or content.

[7] Indeed, holding otherwise would largely eviscerate the volitional conduct requirement in the context of online infringement, as a website operator could be found to have a committed a volitional act with respect to every piece of content on its website whenever it updated its overall website code, regardless of any intentional act with respect to any specific content included on those pages.

37.  This, however, is just the sort of passive conduct that courts have also long recognized fails to satisfy the volitional conduct requirement.  *See*, *e.g.*, D.I. 18 at 6 n.2 ("the Court disagrees that a passive act of 'distribution' satisfies the volitional conduct requirement for infringement liability"); *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1368-69 (N.D. Cal. 1995) ("the mere fact that Netcom's system incidentally makes temporary copies of plaintiffs' works does not mean Netcom has caused the copying").  Similarly unavailing is THP's allegation that BDG "chose content acquired from Flavorpill to remove from display on [Flavorwire], and content purchased from Flavorpill to continue displaying on [Flavorwire]."  D.I. 26, ¶ 22.  This allegation – which again mentions nothing specific to the Photographs – is, at best, an allegation that BDG failed to remove the allegedly infringing Photographs when it purchased Flavorwire.  This Court has already recognized, however, that "this omission is neither volitional conduct nor infringing conduct as contemplated by the Copyright Act."  D.I. 18 at 4 (citing *Leonard*, 2013 WL 5288266, at *8).  THP's direct infringement claim also cannot be salvaged based on its vague allegation that BDG somehow "displays and uses" two of the Photographs via posts made to Pinterest, a separate website not alleged to be controlled by BDG.  While Plaintiff does not allege when or by whom these supposed "Pinterest Posts" were created,[8] THP does allege that the Pinterest Posts merely constitute links to the Article.  D.I. 26, ¶ 39.  But "[p]roviding a link to a website containing infringing material does not, as a matter of law, constitute direct copyright infringement."  *Microsoft Corp. v. Softicle.com*, No. CV 16-2762, 2017 WL 5517379, at *2 (D.N.J. Sept. 29, 2017), *accord Perfect 10, Inc. v. Amazon.com, Inc*., 508 F.3d 1146, 1161 (9th Cir. 2007).

Simply put, THP has not alleged, and cannot allege, any actionable conduct *by BDG*.  Its

---

[8] It is implausible that such posts would be created years after the Article's publication date.

direct copyright infringement claim against BDG must be dismissed with prejudice.

### 2. THP Does Not Sufficiently Allege its Secondary Liability Claim

Effectively acknowledging that BDG cannot be held liable for direct copyright infringement, THP now attempts to assert a separate cause of action for "indirect liability," arguing that BDG is contributorily or vicariously liable for the purported infringement. Of course, THP was not granted leave to assert new claims, and the Court can reject this indirect liability cause of action on that basis alone. *See U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 524 (3d Cir. 2007) ("The rejection of an unapproved amended complaint is not an abuse of discretion.").[9] In any event, THP's threadbare allegations regarding BDG's general operation and management of a website that may have embedded infringing content posted by someone else seven years before BDG was involved, is insufficient to give rise to secondary liability under the Copyright Act. This was expressly set forth in cases cited by the Court in its Order, which the Court already noted THP "ignor[ed]" and "overlook[ed]" in its initial briefing on BDG's motion to dismiss. *See* Order at 5, n.1 (collecting cases). In *Parker v. Paypal, Inc.*, for example (cited by the Court in its Order), the secondary liability claims were dismissed as "conclusory and entirely unsupported by any factual allegations showing that [the defendants] acted in concert with the alleged infringers" and because the "[d]efendants' conduct was entirely passive." *See* 2017 WL 3508759, at *5. The same outcome is warranted here.

Tellingly, THP's "indirect liability" claim is a hybrid of two causes of action, each missing key factual elements. To allege contributory copyright infringement, a plaintiff must allege: "(1) direct infringement by a third-party; (2) knowledge by the defendant that the third-

---

[9] Indeed, THP's proposed Amended Complaint (D.I. 21, Ex. 1) is materially different than the Amended Complaint it actually filed. *See* D.I. 26.

party was directly infringing; and (3) material contribution to the infringement." *Parker v. Google*, 242 F. App'x at 837 (citation omitted). Here, THP's Amended Complaint does not identify a third-party infringer,[10] and does not sufficiently allege that BDG had knowledge – constructive or otherwise – that a third party's conduct (engaged in prior to BDG's acquisition of Flavorwire) was infringing. *See Parker v. Google.*, 422 F. Supp. 2d 492, 499 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) (dismissing contributory copyright infringement claim because plaintiff failed to allege knowledge of the infringement, noting that a plaintiff must allege that its "copyrights [] were infringed by a third party . . . that [the defendant] authorized or assisted that third party[,] . . . [the] 'authorization or assistance must bear some direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer.'") (citing 3–12 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.04(A)(2)(a)(2005)).[11]

Further, THP fails to plead plausibly the element that BDG *materially contributed* to the alleged infringement of its copyrights, *i.e.*, that BDG "authorized or assisted th[e] third party [infringer]." *Parker*, 422 F. Supp. 2d at 499. The authorization or assistance "'must bear some

---

[10] Indeed, THP exclusively identifies BDG as the allegedly infringing party. *See*, *e.g.,* D.I. 26, ¶ 19 ("On October 25, 2018, THP was informed for the first time that [BDG] was infringing its exclusive copyrights"). None of the allegations in the Amended Complaint expressly mention any independent distributors, nor otherwise pin responsibility for infringement on anyone other than BDG itself. It is well-settled that in order to state a cause of action for contributory infringement or vicarious infringement, a plaintiff must identify *another party* who was responsible for the direct infringement (to which the defendant contributed in some way). *See Leonard*, 2013 WL 5288266, at *10. Both secondary liability claims fail for this reason alone.

[11] Even if BDG did have constructive knowledge "that it did not possess any license, authorization or other permission" to use the Photograph – which BDG does not concede – such allegations (*see* D.I. 26, ¶ 56) are irrelevant in the context of *contributory* liability, and instead speak to a theory of direct infringement, which is not viable for the reasons already discussed. Furthermore, any implication by THP that BDG failed to heed notice of the purported infringement is false, as THP cannot dispute that at the time BDG received notice, the Photographs were not even still available on the site. Stukonis Decl. ¶ 16, Ex. 2.

direct relationship to the infringing acts, and the person rendering such assistance or giving such authorization must be acting in concert with the infringer.'" *Id.* (citation omitted).  Here, there is no allegation that BDG acted in concert with any third party with respect to any infringing act, much less that it materially contributed to some third party's infringement (which is alleged to have occurred well before BDG even existed).  *See also Live Face on Web, LLC v. The Control Grp. Media Co., Inc.*, 150 F. Supp. 3d 489, 499 (E.D. Pa. 2015) (dismissing contributory copyright infringement claim where the "necessary element of volition [wa]s missing" sufficient to show that the defendant "materially contributed" to the infringement).

To allege vicarious copyright infringement, THP must plead sufficient facts to show that BDG "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Parker v. Google*, 242 F. App'x at 837.  "Financial benefit exists where the availability of infringing material acts as a *draw* for customers." *Id.* (emphasis added) (citations omitted).  THP's vague references to "profits" (*see*, *e.g.*, D.I. 26, ¶ 58) earned by BDG do not sufficiently allege a direct financial interest in the purported infringing activity, *i.e.*, the use of the Photographs in the Article.  *See*, *e.g.*, *Parker v. Google,* 422 F. Supp. 2d at 499-500 (vicarious infringement claim dismissed based on failure to allege defendant had a direct financial interest in the allegedly infringing activity).  THP does not allege any plausible facts demonstrating customers are drawn to BDG's websites due to the availability of a nearly-decade old Article.  At most, THP alleges that BDG generally promotes Flavorwire and includes advertising on the website; it does not allege that the Photographs themselves act as any draw, or directly financially benefit BDG.  Thus, BDG does not have an "obvious and direct financial interest in the exploitation of copyrighted materials," such that it could be found vicariously liable.  *See id.* at 500; *see also Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597, 613 (9th

13

Cir. 2018) (despite receiving advertising revenue, defendant did not directly benefit from work at issue).

### 3. THP's Copyright Infringement Claims Are Untimely

Even if THP were able to allege any conduct giving rise to liability on the part of BDG, its claims would nevertheless fail for a second, independent reason – they are wholly barred by the Copyright Act's statute of limitations. The Copyright Act requires that any claim be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). As BDG previously argued, the content located at the URLs listed in THP's Amended Complaint demonstrates, on its face, that the Photographs were posted in March 2011 by an entity other than BDG (Mullins Decl., Ex. A; Am. Compl., Ex. G), and THP's Amended Complaint says nothing to excuse the fact that its lawsuit was thus six years too late, and against an entity that had nothing to do with the infringement. *See Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1099 n.13 (C.D. Cal. 2016) ("the allegedly infringing document's continued presence on defendant's website through 2014 at best constitutes 'harm from [a] past violation[ ] that [was] continuing' through 2014, and not a 'new wrong' that gave rise to '[s]eparately accruing harm' within the limitations period." (quoting *Petrella v. Metro Goldwyn Mayer, Inc.*, 134 S. Ct. 1969, 1969 n. 6 (2014))).[12] As THP's copyright infringement claim accrued when the Photographs were posted by Flavorpill in 2011, and because THP cannot identify any subsequent infringements by BDG, its claim is time-barred and should be dismissed.

---

[12] It also does not matter that Flavorwire came under new ownership in 2018. Merely obtaining ownership of a website does not violate any of the exclusive rights provided by Section 106 of the Copyright Act; that act of asset acquisition does not, in and of itself, result in any new reproduction, distribution, or display of the content available on the website. THP has not alleged any new volitional conduct by BDG relating to the purported infringement within the three years preceding this lawsuit.

**B.      This Case Should Be Transferred To The Southern District Of New York**

As stated above, the Amended Complaint should be dismissed.  Should any of THP's

claims survive, however, this action should be transferred to the Southern District of New York.

A district court may transfer a case to "any other district or division where it might have

been brought" if the transfer is "[f]or the convenience of parties and witnesses, in the interest of

justice." 28 U.S.C. § 1404(a).  An analysis under the two-step inquiry used to evaluate whether

transfer is warranted, *see Blackbird Tech LLC v. TuffStuff Fitness, Int'l, Inc.*, No. 16-733-GMS,

2017 WL 1536394, at *1 (D. Del. Apr. 27, 2017), confirms this action (if it survives) should be

resolved in the Southern District of New York.

### 1.      THP Could Have Filed This Action In New York

There is no question that THP could have brought this action in the Southern District of

New York.  The Southern District would be an appropriate (and, as explained below, far more

convenient) venue, as BDG maintains its principal place of business and is subject to personal

jurisdiction there.  *See* 28 U.S.C. § 1400(a).  Additionally, the Southern District would have

subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a).

### 2.      Transfer Would Best Serve The Convenience Of The Parties And Witnesses And Is In The Interests Of Justice

Both the "private" and "public" interest transfer factors confirm that transfer to New

York would best serve the convenience of the parties and witnesses, and the interest of justice.

#### a)      The Private Interest Factors Weigh in Favor of Transfer

The private interest factors relevant to transfer include (1) the plaintiff's choice of forum;

(2) the defendant's choice of forum; (3) whether the events giving rise to the suit took place in

the transferee court; (4) the convenience of the parties; (5) the convenience of the witnesses; and

(6) whether the relevant evidence is located in the transferee court.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  These factors weigh heavily in favor of transfer.

      <u>THP's Choice of Forum is Entitled to Little Weight</u>:  The typical "deference given to the plaintiff's choice is reduced when the chosen venue is not the plaintiff's home forum." *MoneyCat Ltd v. PayPal Inc.*, No. CV 1:13-1358, 2014 WL 2042699, at *4 (D. Del. May 15, 2014).  THP has no connection to Delaware.  It is registered in Texas, and its principal place of business is there.  *See* Mullins Decl., Ex. C; Am. Compl., ¶ 2.  The Photographs' author, Hussey, also resides in Texas.  *See* Am. Compl., Ex. A.  Simply put, other than BDG's incorporation in Delaware, THP's choice of forum has no connection to this case.  *See Joseph v. Buffalo News, Inc.*, No. CV 16-1325-RGA, 2017 WL 3314006, at *1 (D. Del. Aug. 3, 2017) (granting transfer); *OpenTV, Inc. v. Netflix, Inc.*, No. 12-1733-GMS, 2014 WL 1292790, at *1-2 (D. Del. Mar. 31, 2014) (granting transfer where neither party had a principal place of business in Delaware).

      <u>BDG Prefers the Southern District of New York</u>:  BDG strongly prefers the Southern District of New York, the site of its principal place of business and its relevant witnesses and evidence.  *See Contour IP Holding, LLC v. GoPro, Inc.*, No. 15-1108-LPS-CJB, 2017 WL 3189005, at *9 (D. Del. July 6, 2017), *report and recommendation adopted*, 2017 WL 3225983 (D. Del. Jul. 31, 2017).  This factor favors transfer.

      <u>THP's Claim Arose, if Anywhere, in New York</u>:  The Photographs were allegedly embedded into an Article posted to Flavorwire in 2011, and that website's then-owner was located in New York.  Mullins Decl., Ex. H.  Moreover, BDG's website ownership and management – *i.e.*, the conduct that THP complains of – took place out of New York.  *See supra*, pp. 5-7.  Thus, the conduct giving rise to THP's copyright claim is centered in New York, and this factor favors transfer.  *See Joseph*, 2017 WL 3314006, at *1 (where "the publication at issue

took place in Buffalo, New York," finding that "a substantial part of the events giving rise to the [copyright infringement] claim took place" in New York, and transfer was appropriate to New York); *cf. OpenTV, Inc.*, 2014 WL 1292790, at *2 (factor favors transfer where defendant provided its "video streaming service nationwide" but the allegedly infringing products "were developed and designed in the Northern District of California").

<u>The Convenience of the Parties Favors Transfer</u>:  The Southern District of New York is far more convenient for the parties and the parties' employees.  Without transfer, all parties (and most of their lawyers) will need to spend time and money to travel to Delaware.  BDG's principal offices, and all witnesses with knowledge potentially relevant to this lawsuit, are located in New York, and the Southern District of New York is significantly more convenient for BDG and its employee-witnesses. *See supra*, at pp. 5; *MEC Res., LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225-26 (D. Del. 2017).  Neither THP nor Hussey have any connection to Delaware, and THP has previously availed itself of Courts in New York to litigate copyright claims involving some of the Photographs.  *See* Mullins Decl., ¶ 10; *Fortinet, Inc. v. FireEye, Inc.*, 944 F. Supp. 2d 352, 355 (D. Del. 2013) (transfer granted where plaintiff "has availed itself of the jurisdiction of Northern California on at least five occasions.").  As such, this factor heavily favors transfer, because trial in New York would inconvenience BDG much less than trial in Delaware, and THP will be required to travel regardless of the forum.  *See MEC Res., LLC*, 269 F. Supp. 3d at 226 (factor favors transfer "because the parties' physical locations are not convenient to Delaware and [THP's] litigation costs will likely remain the same because its two employees must travel even if we do not transfer venue"); *ChriMar Sys., Inc. v. Cisco Sys., Inc.*, No. 11- 1050-GMS, 2013 WL 828220, at *5 (D. Del. Mar. 6, 2013) (plaintiff would be "forced to bear travel costs no matter the court's decision" but "proceeding in California would

17

likely spare the defendants significant expense").

The Convenience of Witnesses Favors Transfer:  While it is not clear to BDG what non-party witnesses might be relevant to this litigation (particularly given that BDG did not obtain ownership of Flavorwire until 2018), BDG's current knowledge indicates that no known witnesses would be located in Delaware, and some may very well be located in New York. Flavorwire's prior owner is based in New York.  *See* Mullins Decl., Ex. I.  The author of the Article appears to reside in Cupertino, California.  *Id.*, Ex. G.  Hussey, the author of the Photographs, resides in Texas.  D.I. 26, Ex. A.  Thus, there is not a single known, relevant non-party witness in Delaware, and there may very well be non-party witnesses located in New York. The party witnesses are either in New York (for BDG) or Texas (for THP).  *See Joseph*, 2017 WL 3314006, at *1 (granting transfer where "no possible witnesses reside in Delaware").

The Location of Relevant Evidence Favors Transfer:  BDG's documents and evidence relating to the management and operation of Flavorwire are located in New York.  Stukonis Decl., ¶ 9.  BDG does not maintain any relevant evidence in Delaware, and presumably neither does THP.  This factor also favors transfer.  *See Blackbird Tech LLC*, 2017 WL 4543783, at *10 ("If most of the evidence resides in the proposed transferee forum and none resides in the transferor forum, it is error to not weigh this factor heavily in favor of transfer.").

b)      The Relevant Public Interest Factors also Favor Transfer

The public interest factors – including "practical considerations that could make the trial easy, expeditious, or inexpensive", "the relative administrative difficulty in the two fora resulting

from court congestion", and "the local interest in deciding local controversies at home" – also weigh in favor of transfer.[13]  *See Jumara*, 55 F.3d at 879-80.

Practical Considerations Favor Transfer:  Proceeding in the Southern District of New York would undeniably make trial easier, less expensive, and less disruptive.  BDG's witnesses and evidence would not have to travel to Delaware for pre-trial and trial proceedings, and THP's travel commitments would largely remain the same. *See MEC Res., LLC*, 269 F. Supp. 3d at 227 ("Because [defendant]'s principal places of business and the bulk of their employees are in [California], we can fairly assume trial would be more inexpensive there."); *MoneyCat*, 2014 WL 2042699, at *6 (similar); *Mitel Networks Corp. v. Facebook, Inc.*, 943 F. Supp. 2d 463, 476 (D. Del. 2013) (finding practical considerations favor transfer where "neither party operates nor has facilities, offices, or employees in Delaware").  BDG would also be spared the expense of retaining Delaware counsel, and THP could continue to be represented by the same firm.[14]  *See Contour IP Holding*, 2017 WL 3189005, at *13 ("if trial proceeded in Delaware, this would require the additional cost of retaining Delaware counsel").

New York has a Strong Interest in Resolving this Dispute:  BDG's principal place of business is in New York, and neither party has offices or employees in Delaware.  Thus, "New York has a strong interest in the proper application of its laws to persons doing business within its jurisdiction[,]" while Delaware's interest is minimal.  *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 503 (D.N.J. 1998).  New York's interest is particularly acute here:  "Indeed, as

---

[13] Courts occasionally consider other public interest factors, such as the enforceability of the judgment, the public policies of the fora, and familiarity with the applicable state law in diversity cases.  *See, e.g.*, *Jumara*, 55 F.3d at 879-80.  These factors are either neutral or irrelevant here.

[14] THP's law firm has an office in New York City, and has represented THP's principal in similar lawsuits throughout the country.  Mullins Decl., ¶ 16 & Ex. K.  THP's lead counsel in this action is based in Boston, which is also closer to New York than it is to Delaware.

the center of publishing in this country New York has a strong, widely recognized interest in uniformly regulating media defendants [like BDG] whose speech originates in New York." *McClain v. Camouflage Assocs.*, No. CIV.A. 93-0994, 1994 WL 570874, at *2 (E.D. Pa. Oct. 18, 1994). Delaware has no comparable interest, as THP has no connection to Delaware, and BDG's incorporation in Delaware is of little relevance. *See Wacoh Co. v. Kionix Inc.*, 845 F. Supp. 2d 597, 604 (D. Del. 2012) ("the corporation that has chosen Delaware is not a Delaware corporation, and the corporations that might want to claim the benefits of being a Delaware corporation do not want to do so in this case").

Court Congestion is Neutral: The relative congestion between this Court and the Southern District of New York is a neutral factor. As of September 30, 2020, the median time from filing to trial was 28.4 months in Delaware, and 31.4 months in the Southern District. Mullins Decl., Ex. J. Thus, this factor carries little weight. *See Good Tech. Corp. v. MobileIron, Inc.*, No. CV 14-1308-LPS-CJB, 2015 WL 1458091, at *9 (D. Del. Mar. 27, 2015) (granting transfer; "statistics do not demonstrate a meaningful difference in court congestion").

*        *        *

Nearly every relevant transfer factor favors the Southern District of New York. THP's choice of forum and BDG's corporate registration in Delaware do not make venue proper here. *Wacoh Co.*, 845 F. Supp. 2d at 605. In light of the overwhelming weight of the other factors, transfer of this action is warranted.

V.    **CONCLUSION**

For the foregoing reasons, BDG respectfully requests that THP's Amended Complaint be dismissed, in its entirety, with prejudice. In the alternative, BDG respectfully requests that this case be transferred to the Southern District of New York.

OF COUNSEL:

Eleanor M. Lackman
Bradley J. Mullins
Lindsay R. Edelstein
MITCHELL SILBERBERG & KNUPP LLP
437 Madison Ave., 25th Floor
New York, New York 10022

/s/ Chad M. Shandler
Chad M. Shandler (#3796)
Nicole K. Pedi (#6236)
RICHARDS LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7836
shandler@rlf.com
pedi@rlf.com

*Attorneys for Defendant*
*BDG Media, Inc.*

DATED:  March 17, 2021