**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

TOM HUSSEY PHOTOGRAPHY, LLC,

        Plaintiff,

v.

BDG MEDIA, INC.,

        Defendant.

C.A. No. 1:20-cv-00404-MN

**PLAINTIFF TOM HUSSEY PHOTOGRAPHY, LLC'S
ANSWERING BRIEF IN OPPOSITION TO DEFENDANT BDG MEDIA, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE,
<u>TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK</u>**

**OF COUNSEL:**

Steven M. Cowley
(Admitted Pro Hac Vice)
DUANE MORRIS LLP
100 High Street, Suite 2400
Boston, MA  02110-1724
Tel.:  (857) 488-4261
smcowley@duanemorris.com

**DUANE MORRIS LLP**

Mackenzie M. Wrobel (#6088)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801-1659
Tel: (302) 657-4900
mmwrobel@duanemorris.com

*Attorneys for Plaintiff
Tom Hussey Photography, LLC*

Dated:  April 5, 2021

# TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.    SUMMARY OF ARGUMENT ...................................................................................2

III.   FACTUAL ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT ..................3

IV.    ARGUMENT ...........................................................................................................6

     A.    Defendant's Motion To Transfer Should Be Allowed Pursuant To
            Plaintiff's Assent And The Entire Case Transferred To The Southern
            District Of New York For Resolution, Or The Motion To Transfer Should
            Be Denied................................................................................................... 6

     B.    The Rule 12(b)(6) Standard ......................................................................... 9

     C.    Plaintiff Has Adequately Pled Defendant's Direct Infringement of
            Plaintiff's Exclusive Rights By Reproducing, Publicly Displaying,
            Distributing, And Granting Licenses To The Copyrighted Works, Without
            Authorization ............................................................................................. 9

     D.    The Amended Complaint Makes Out A Viable Claim of Indirect
            Infringement.............................................................................................. 15

          1.    Defendant's Attempt To Avoid The Indirect Infringement Court Is
                 Misplaced ....................................................................................... 15

          2.    Plaintiff's amended Complaint Satisfies Both Standards For Indirect
                 Infringement Liability ..................................................................... 15

V.     CONCLUSION.......................................................................................................17

## **TABLE OF AUTHORITIES**

**Cases**

*ABC, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014) ...........................................................................1

*APL Microscopic, LLC v. U.S.*, 144 Fed. Cl. 489 (Fed. Cl. 2019) ................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................9

*In re EMC Corp.*, 501 F. App'x 973 (Fed. Cir. 2013) .....................................................................8

*Erickson Productions, Inc. v. Kast,* 962 F.3d 822 (9th Cir. 2019) ...............................................16

*Gilman & Bedijian, LLC v. Sackett*, 2020 WL 5338995 (D.Md. Sept. 4, 2020) ..........................15

*Goldman v. Breitbart News Agency, LLC*, 302 F.Supp.3d 585 (S.D.N.Y. 2018).........................13

*Hall v. Kittay*, 396 F. Supp. 261 (D. Del. 1975) .............................................................................7

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp.
2d 627 (E.D. Pa. 2007).........................................................................................................10

*Live Face on Web, LLC v. Smart Move Search, Inc.*, 2017 WL 1064664 (D. N.J.
March 21, 2017)................................................................................................................ 13-14

*McDonnell Douglas Corporation. v. Polin*, 429 F.2d 30, 30 (3d Cir. 1970).................................7

*Newsome v. Lawson*, 2016 WL 11480210, at *1 (D. Del. Apr. 27, 2016) ...................................15

*In re Nintendo Co., Ltd.*, 544 Fed. Appx. 934 (Fed. Cir. 2013).....................................................7

*Ocimum Biosolutions (India) Ltd. v. LG Corp*, 2021 WL 931094 (D. Del. Mar. 11,
2021) .....................................................................................................................................15

*PhishMe, Inc. v. Wombat Security Tech., Inc.*, 2017 WL 3821107 (D. Del. Aug.
31, 2017) .................................................................................................................................9

*Religious Technology Ctr. v. Netcom On-Line Comm. Servs., Inc.*, 907 F. Supp.
1361 (N.D. Cal. 1995)...........................................................................................................11

*VMT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723 (9th Cir.), *cert. den.*, 140 S.Ct. 122
(2019) ....................................................................................................................................12

*Williams-Sonoma, Inc. v. Amazon.com, Inc.,* Case No. 18-cv-07548-AGT (N.D.
Cal. August 17, 2020) ...........................................................................................................12

**Statutes and Oter Authorities**

17 U.S.C. § 106 ..................................................................................................................9

*4 Nimmer on Copyright* § 12B.06 (2021) ......................................................................12

Rule 12(b)(6) ............................................................................................................*Passim*

Rule 15 ................................................................................................................... 1-2, 15

Rule 59 ......................................................................................................................1, 15

I.      **NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff, Tom Hussey Photography, LLC ("Plaintiff"), through his undersigned counsel, Duane Morris LLP, submits this Answering Brief In Opposition To Defendant BDG Media, Inc.'s Motion To Dismiss Plaintiff's Complaint Or, In The Alternative, To Transfer Venue To The Southern District Of New York.  Despite the title of Defendant's Motion, the operative pleading is Plaintiff's Amended Complaint (DI 26) ("Am. Compl."), not the original Complaint (DI 1).

Plaintiff filed its original Complaint on March 20, 2020, claiming Defendant BDG Media, Inc. ("BDG") is liable for infringing Plaintiff's exclusive copyrights in nine of its Reflections series images (defined as the "Copyrighted Works" and included as Exh. A).  On December 18, 2020, the Court issued its Memorandum Opinion (DI 18) and Order (DI 19) granting Defendant's Motion to Dismiss the Complaint for failure to adequately allege BDG's volitional conduct giving rise to the infringements (DI 18).  On January 15, 2021, Plaintiff filed a Motion Pursuant to Rule 59(e) to Alter and/or Amend the Judgment of Dismissal (DI 20), seeking to modify that Judgment to permit Plaintiff to file an amended pleading.  Plaintiff separately wrote to the Court on January 19, 2021, seeking leave to file an Amended Complaint pursuant to Rule 15 (DI 21).  Defendant opposed Plaintiff's Rule 59(a) submission (DI 20), as well as Plaintiff's subsequent Rule 15 submission (DI 23).

On March 1, 2021, the Court entered an Oral Order (DI 25) granting Plaintiff's Rule 59(e) Motion, stating in part:  "Plaintiff's motion pursuant to Rule 59(e) to alter or amend the judgment of dismissal is GRANTED to the extent it seeks permission to file an amended pleading.  The Court previously dismissed Plaintiff's complaint without prejudice.  Plaintiff shall file[] **any** amended complaint on or before March 3, 2021."  (DI 25) (emphasis added).  The Court did not address or rule on Plaintiff's Rule 15 Motion, or the specific language to be included in any amended pleading to be filed.  *Id.*

1

Plaintiff filed its Amended Complaint on March 23, 2020 (DI 26), again claiming Defendant is liable for infringing Plaintiff's nine Copyrighted Works and adding numerous allegations identifying Defendant's specific, affirmative conduct giving rise to those infringements. Plaintiff's Amended Complaint separates the legal theories supporting Plaintiff's infringement claims, with Count I alleging the amended factual allegations give rise to direct liability for infringements of the nine Copyrighted Works and Count II alleging that those factual allegations give rise to indirect liability for the infringement of those works.

## II.   <u>SUMMARY OF ARGUMENT</u>

Defendant's insistence that its motion to transfer only be addressed should the Court deny its motion to dismiss is contrary to established Third Circuit procedural policy for handling such motions. Plaintiff assents to transfer should the Court address that request first. If Defendant's insistence that its motion to dismiss be addressed first results in the Court addressing the merits before considering transfer, Plaintiff objects to transfer based on principals of judicial efficiency.

On the merits of Defendant's Rule 12(b)(6) motion, Plaintiff's Amended Complaint includes numerous specific allegations of actions by Defendant causing infringement of Plaintiff's nine Copyrighted Works. Defendant's claim to be immune from liability for infringement on and through its website by way of an expansive interpretation of a "volitional act" requirement is contrary to and preempted by the limited immunity established by Congress for internet service providers under the Digital Millennium Copyright Act. Even still, the Amended Complaint satisfies the volitional act analysis Defendant purports to rely upon, and Plaintiff makes out a claim for indirect infringement under both accepted theories of such liability. Finally, since <u>all</u> of Defendant's actions causing infringement of the Copyrighted Work took place <u>only</u> since August 18, 2018, there is no credible defense under the Copyright Act's three-year statute of limitations.

III.    **FACTUAL ALLEGATIONS IN PLAINTIFF'S AMENDED COMPLAINT**

Plaintiff is a small (sole proprietorship) and highly acclaimed photography studio specializing in sophisticated advertising campaigns and lifestyle photographs.  DI 26, ¶¶ 3, 8.  The most popular and celebrated of Plaintiff's portfolio of creative advertising works are the "Reflections" series of images, which include the nine Copyrighted Works at issue here.  *Id.* ¶ 3.

Defendant is a media holding company using the trade name "Bustle Digital Group," that describes itself out as "the largest premium publisher reaching millennial women."  *Id.* ¶ 4.  Defendant owns and operates numerous digital media websites, including the website known as "Flavorwire" located at the URL www.flavorwire.com (the "Website").  *Id.*  On or about August 15, 2018, BDG acquired assets from an entity known as Flavorpill Media, Inc. ("Flavorpill"), including content, trademarks such as Flavorwire, and the Website domain name and URL.  *Id.* ¶ 10.  Because BDG's acquisition of those assets was through an asset purchase, as opposed to an acquisition of that company, Defendant has been directly operating and managing the Website since August 15, 2018, at the earliest, and all actions by Defendant giving rise to the copyright infringement liability claimed in the Amended Complaint occurred on or after August 15, 2018.  *Id.* ¶¶ 10, 11.  Plaintiff's Amended Complaint alleges generally:

> Although the Website remains named "Flavorwire" under Defendant's ownership, Defendant has owned and / or controlled the content displayed on the Website since August 15, 2018, and Defendant has been solely responsible for the decisions concerning what content to display on the Website, how to display that content, for how long to display that content, what content to remove from the Website, and when to remove that content.  (*Id.* ¶ 12).

The Amended Complaint goes on to detail the specific, affirmative actions BDG took concerning the BDG Display Pages, which are defined as the URL pages on the Website where Defendant displayed infringing copies of the Copyrighted Works (*id.* ¶ 20) incorporated into other content that Defendant created.  *Id.* at Exh. G.  For example, the Amended Complaint alleges that

3

BDG removed terms on the BDG Display Pages that appeared when it purchased assets from Flavorpill and added its own Website Privacy Policy, Copyright Policy and BDG Website Terms to the BDG Display Pages, establishing, among other things, that all visitors to the BDG Display Pages entered a binding contract with BDG.  *Id.* ¶¶ 13–18 and Exhs. D–F.  Importantly, BDG's new Website Terms added to the BDG Display Pages established a Use License, whereby all visitors to those pages were granted the following license from BDG to use the Copyrighted Works:

> Subject to these Terms of Service, we grant each user of the Services a worldwide, non-exclusive, non-sublicensable and non-transferable license to use (i.e., to download and display locally) Content, to the extent we hold such rights, solely for purposes of using the Services. Use, reproduction, modification, distribution or storage of any Content for other than purposes of using the Services is expressly prohibited without prior written permission from us. You shall not sell, license, rent, or otherwise use or exploit any Content for commercial use or in any way that violates any third party right. (*Id.* ¶ 16 and Exh. F).

The Amended Complaint goes on to allege that BDG modified the BDG Display Pages after purchasing Flavorpill's assets, to surround the Copyrighted Works with its own content either created by BDG or by advertisers to whom BDG sold space on the BDG Display Pages in order to profit from visitors' who viewed the Copyrighted Works.  *Id.* ¶¶ 22–30 and Exhs. G-K.  Because of BDG's affirmative changes to the content on BDG Display Pages, the Amended Complaint alleges:

> Defendant did not passively permit the Copyrighted Works to be displayed on the Website however they were displayed (if at all) by Flavorpill when that company owned the Website, because the web pages as displayed by Flavorpill were not created with content designed to generate revenue for Defendant.  Instead, Defendant created and added content for its commercial benefit, and displayed the Copyrighted Works with that content in the BDG Display Pages that were new and materially different pages following BDG's acquisition of Flavorpill assets on August 15, 2018.  (*Id.* ¶ 34).

In addition to the visible content of the BDG Display Pages containing the Copyrighted Works, the Amended Complaint alleges that BDG affirmatively "added machine readable code to the Website instructing search engines that the BDG Display Pages were last modified on August 12, 2019" (*id.* ¶ 35) with the effect that:

> it [became] far more likely that the Copyrighted Works as displayed on the BDG Display Pages would be viewed by visitors after Defendant purchased the Website than they would have been had Flavorpill continued to own the Website after August 15, 2018, or had Defendant passively displayed the Copyrighted Works as they had been displayed prior to Defendant acquiring assets from Flavorpill. (*Id.* ¶ 36).

Without obtaining discovery from BDG, Plaintiff cannot know, and the Amended Complaint does not allege, when the URL pages containing the Copyrighted Works were last coded for public display when owned by Flavorpill—if at all (*id.* ¶ 34)—but the Amended Complaint can and does allege that BDG made many modifications to both the visible content and the background content of the BDG Display Pages after acquiring assets from Flavorpill in August 2018, and Plaintiff was informed of and then confirmed the display of the Copyrighted Works on the BDG Display Pages for the first time in October 2018. *Id.* ¶¶ 19–20. There is no allegation in the Amended Complaint, or any document on which those allegations rely, that would permit the conclusion that the Copyrighted Works were publicly displayed and capable of being found on the Website as owned by Flavorpill prior to BDG's asset acquisition and modifications to the BDG Display Pages beginning in August 2018.

The Amended Complaint alleges that in order to make its many modifications to the BDG Display Pages, BDG employees necessarily made copies of the Copyrighted Works on whatever computer servers they used to effect those changes. *Id.* ¶ 31.

The Amended Complaint alleges that BDG's combined the Copyrighted Works with revenue generating content, including third-party advertising and promotions for BDG's own

revenue producing products and services, and displayed the new combined content on the BDG Display Pages in order to earn profits from revenue generated by visitors to those Pages.  *Id.* ¶¶ 32–33.

Finally, the Amended Complaint identified newly discovered infringing displays by BDG of two of the Copyrighted Works outside the Website—identified in the Amended Complaint as the "Pinterest Posts."  *Id.* ¶ 39 and Exh. M.  The Amended Complaint alleges that BDG uses those infringing Pinterest Posts to link both to the BDG Display Pages and the main Flavorwire Pinterest page on which BDG promotes and links to various other BDG content.[1]  *Id.*

## IV.   **ARGUMENT**

### A.   **Defendant's Motion To Transfer Should Be Allowed Pursuant To Plaintiff's Assent And The Entire Case Transferred To The Southern District Of New York For Resolution, Or The Motion To Transfer Should Be Denied**

Notwithstanding that Delaware is an appropriate venue for this action, Plaintiff has repeatedly expressed its willingness to assent to Defendant's request to transfer to its preferred venue of the Southern District of New York, where the transferee court can hear Defendant's motion to dismiss.  DI 31, pp. 1–5 (summarizing Plaintiff's previous offers to assent to a transfer). Defendant has refused Plaintiff's offers to assent, explaining in correspondence that "Defendant will only request to transfer the case to another jurisdiction as alternative relief should the

---

[1]  It its brief, BDG recharacterizes this allegation as merely identifying a link posted by BDG on another website.  Plaintiff does not complain that a link to the BDG Display Pages constitutes an act of infringement.   Plaintiff complains that BDG distributed and displayed two of the Copyrighted Works on Pinterest to promote its commercial interests.  Who is responsible for the distribution and display of those two infringing versions of Copyrighted Works is a factual dispute that cannot be addressed without the benefit of discovery.  Plaintiff's allegation does not rely on, or incorporate, any document outside the Amended Complaint.  Should BDG deny responsibility for the Pinterest Posts, no document alone will resolve the dispute, since a link can be created and remain active for years, while the content displayed on page linked can be altered in innumerable ways and times.  If BDG's witnesses deny posting or modifying the infringing Pinterest Posts, they will be cross-examined.  At this stage, BDG's contention that it will dispute the factual allegation does not constitute a viable argument in support of a Rule 12(b)(6) motion.

Delaware Court not grant [Defendant's] motion to dismiss with prejudice."  DI 31-2, p. 2; *see also*

DI 31, pp. 2–3; D.I 31-3, p. 3 (reiterating Defendant's intent to seek transfer only as an alternative

form of relief).  Defendant's insistence that this Court first undertake full analysis of the claims on

the merits to resolve the motion to dismiss and only then, as a fallback in the event it loses, take

up the request to transfer is a transparent attempt to forum shop—if Defendant cannot convince

this Court to dismiss Plaintiff's claims, Defendant wants a second bite at that apple before another

court.

      Plaintiff reiterates that it does not contest, and affirmatively assents to, the transfer of this

action to Defendant's preferred venue so long as the entire case, including the pending motion to

dismiss, is then addressed by the transferee court.  Should Defendant's continued refusal to accept

Plaintiff's assent to transfer result in the Court investing its time and resources to analyze the merits

of Plaintiff's claims and Defendant's defenses on the merits, Plaintiff requests that the motion to

transfer be denied on grounds of efficient judicial administration.

      Plaintiff's position is entirely consistent with the applicable law.  Indeed, it would be

improper for this Court to follow Defendant's preferred ordering of the motions because, as the

Third Circuit explained in *McDonnell Douglas Corporation. v. Polin*:

> To undertake a consideration of the merits of the action is to assume, even temporarily, that there will be no transfer before the transfer issue is decided. ***Judicial economy requires that another district court should not burden itself with the merits of the action until it is decided that a transfer should be effected*** and such consideration additionally requires that the court which ultimately decides the merits of the action should also decide the various questions which arise during the pendency of the suit instead of considering it in two courts.

429 F.2d 30, 30 (3d Cir. 1970) (emphasis added); *see also Hall v. Kittay*, 396 F. Supp. 261, 265

n.3 (D. Del. 1975) (deciding first a motion to transfer and advising other pending motions "should

be addressed to the transferee court"); *In re Nintendo Co., Ltd.*, 544 Fed. Appx. 934, 941 (Fed. Cir.

2013) (citing, *inter alia*, Third Circuit decisional law to support its holding that "a trial court must first address whether it is a proper and convenient venue before addressing any substantive portion of the case").  Federal courts recognize that addressing a motion to transfer first is important from a judicial administration perspective and movants should not be permitted to manipulate the procedural process for their own benefit at the expense of the court and the nonmoving parties. *See, e.g.*, *In re EMC Corp.*, 501 F. App'x 973, 975–76 (Fed. Cir. 2013) (discussing the "importance of addressing motions to transfer at the outset of litigation").

Plaintiff first offered to assent to a transfer of this case before filing its Amended Complaint and before Defendant filed and briefed its motion to dismiss and motion to transfer.  DI 31, pp. 2–3.  Defendant rejected the offers, insisting the parties brief its intended motions here.  *Id.*, p. 3. Plaintiff again offered to assent to a transfer after Defendant filed its motions.  *Id.*, pp. 3–4. Defendant again rejected the offer.  *Id.*, p. 5.  Defendant's course of conduct demonstrates its efforts to manipulate this Court's procedural process for its own purposes, and it is disingenuous for Defendant to suggests that the Court should set aside the issue of a transfer and first consider its motion to dismiss simply because Defendant has "already briefed the matter" for this Court. DI 32, p. 2.  However, as noted, Plaintiff notified Defendant of its assent to a request to transfer prior to the Amended Complaint and Defendant's motion to dismiss being filed.  Defendant refused to accept that assent and insisted on filing its motion to dismiss in this Court with full knowledge that transfer was not disputed.  Defendant's insistence on filing the motion to dismiss here, while having already achieved an agreement to transfer, was always inconsistent with the procedural policy of the Third Circuit and cannot justify a manufactured exception to that policy based on a refusal to accept "yes" as an answer.

Accordingly, this Court should accept Plaintiff's assent to a transfer and direct Defendant to take up its motion to dismiss with the transferee court, insuring that the merits arguments will be addressed one time only, by the Court that will have responsibility for the case for all purposes. In the event the Court addresses the Defendant's motion to dismiss first, Plaintiff believes that the interests of judicial efficiency and the prevention of manipulative forum shopping require the rejection of Defendant's motion to transfer.

**B.     The Rule 12(b)(6) Standard**

"When presented with a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court conducts a two-part analysis.  First, the court separates the factual and legal elements of a claim, accepting 'all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions.'  Second, the court determines 'whether the facts alleged in the complaint are sufficient to show' that the plaintiff has a 'plausible claim for relief.'"  *PhishMe, Inc. v. Wombat Security Tech., Inc.*, 2017 WL 3821107 (D. Del. Aug. 31, 2017) (quoting *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009)).  Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

**C.     Plaintiff Has Adequately Pled Defendant's Direct Infringement of Plaintiff's Exclusive Rights By Reproducing, Publicly Displaying, Distributing, And Granting Licenses To The Copyrighted Works, Without Authorization**

Plaintiff's exclusive rights in the Copyrighted Works are set out in 17 U.S.C. § 106, and include the rights: "(1) to reproduce the copyrighted work ….; (3) to distribute copies … of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; … [and] (5) in the case of … pictorial … works, … to display the copyrighted work publicly …." A copyright owner must show two things to establish a claim of infringement: (1) ownership of a valid copyright, and (2) that the defendant has copied, displayed, or distributed protected elements

of the copyrighted work. *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 635 (E.D. Pa. 2007). As set forth above, Plaintiff's Amended Complaint alleges multiple actions by Defendant resulting in the copying, display and distribution of Plaintiff's nine Copyrighted Works.

Defendant does not, and cannot at this stage, deny that the Copyrighted Works were copied, displayed and distributed on and by the Website Defendant has owned and controlled since August 2018. Instead, Defendant premises its Rule 12(b)(6) motion on the argument that Plaintiff has failed to allege that the infringements occurred because of a volitional act by the Defendant. That simply is not true, given the allegations set forth in the Amended Complaint. Moreover, Defendant fundamentally misapplies the so-called "volitional act" aspect of a copyright infringement—a doctrine that has been singularly applied to service providers who make their internet platforms available to third parties to post and display content of the third parties' choosing. The Defendant does not cite any case, and Plaintiff has not located any case, holding that **a defendant's decision to display and distribute content that the defendant itself owns to a website the defendant itself controls**, fails to allege a volitional act by the defendant should that content infringing.

As the leading commentator on copyright law has explained, the effort to extend immunity to a website owner who displays infringing works and does not fall within the safe harbor protections Congress extended to internet service providers and website hosts who meet certain obligations in the Digital Millennium Copyright Act, 17 U.S.C. §512 (the "DMCA"), is contrary to that controlling law.[2]

---

[2]   This section of the DMCA is referred to as the Online Copyright Infringement Liability Limitation Act.

Netcom's[3] requirement for 'some element of volition' should not be viewed as a free-standing feature of copyright law.  Rather, it should be followed to the extent that Congress deliberately embodied it into the law, and not followed in the other instances for which Congress chose not to codify it.  *4 Nimmer on Copyright* § 12B.06  [B][2][c][i][4](2021).

Defendant does not, and cannot, claim that it falls within the safe harbor provisions of the DMCA.  Accordingly, any attempt to claim immunity for its reproduction, display and distribution of the Copyrighted Works is foreclosed by Congress's decision not to extend immunity for such conduct to website owners such as the Defendant when it created 17 U.S.C. §512.

Further, Defendant's Rule 12(b)(6) motion ignores the specific allegations in the Amended Complaint of affirmative acts by Defendant.   Specifically, Plaintiff alleges that Defendant purchased the content including the infringing versions of the Copyrighted Works, then wholly revised the pages of the Website to involve BDG revenue generating content, displayed the Copyrighted Works in those newly authored pages and added behind-the-scenes code to make the new BDG Display Pages appear in search results and be displayed to visitors who would not likely see those Pages but for Defendants affirmative revisions.  DI 26, ¶¶ 10–37.

Defendant's argument appears to be premised on the implicit argument that a website owner only commits a volitional act if it makes and posts the original infringing copies to its website.  That is a false premise.  Actions by website owners designed to make infringing images posted by third parties more likely to be viewed by website visitors to constitute volitional acts

---

[3] *Religious Technology Ctr. v. Netcom On-Line Comm. Servs., Inc.*, 907 F. Supp. 1361 (N.D. Cal. 1995) (a case relied on by Defendant, *see* DI 28, p. 10).

[4] Nimmer goes on to explain that the Supreme Court's decision in *ABC, Inc. v. Aereo, Inc*., 134 S. Ct. 2498, 2504 (2014) rejected the expansive view of a "volitional act" promoted by Defendant: "Although the Supreme Court majority did not explicitly address volition, it is crystal clear that it held defendant *Aereo* culpable for copyright infringement notwithstanding the Second Circuit's exoneration of that party based on its purported lack of volition." *4 Nimmer on Copyright* § 12B.06 (2021).

subjecting the website owner to liability.  *See*, *e.g.*, *VMT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 737 (9th Cir.), *cert. den.*, 140 S.Ct. 122 (2019).  (Zillow's employing moderators to review, select, and tag a subset of user-uploaded photos to make them searchable on the Zillow platform were held by a jury and upheld by the district court to amount to volitional conduct by Zillow sufficient for direct liability).  Contrary to the assumption underlying Defendant's motion to dismiss, the Northern District of California has explained:

> Importantly, the photos that Zillow 'curated, selected, and tagged for searchable functionality' were already loaded to Zillow's website by users; nothing about Zillow's moderation efforts further reproduced them. Zillow's tagging allowed users to access the photos through Zillow's search function and thus increased the potential for public display in response to user requests. The Ninth Circuit approvingly cited the district court's reasoning 'that Zillow's moderation efforts, which rendered those images searchable, proximately caused the [infringement].'

*Williams-Sonoma, Inc. v. Amazon.com, Inc.,* Case No. 18-cv-07548-AGT, (N.D. Cal.  August 17, 2020) Order Denying Defendant's Motion To Dismiss Second Amended And Supplemental Complaint, p. 11 (internal citations omitted).  Following Zillow's low threshold for volitional acts subjecting a website owner to copyright infringement liability for infringing copies posted by third-party users, the *Williams-Sonoma* court held Amazon's algorithm to choose among multiple product images copied and posted to its server for display with a product promotion was sufficient volitional conduct to subject Amazon to liability for the display of infringing images.  Here, more than an automated algorithm making a selection, Plaintiff alleges Defendant affirmatively decided what content purchased from Flavorpill to discard and choose to display Plaintiff's Copyrighted Works along with new BDG revenue producing content on the BDG Display Pages, then added content to make those Pages more visible to visitors. DI 26, ¶¶ 10–37.

There is nothing in the Copyright Act to suggest that only one party, or only the first infringer, can be liable for multiple acts of infringement using the same unauthorized copies while

later infringers are immune.  Instead, each party is liable for its own acts of infringement, and no

one party has to commit all the acts of infringement with a copy in order to be liable.  *See Live*

*Face on Web, LLC v. Smart Move Search, Inc.*, 2017 WL 1064664, at \*3 (D.N.J. March 21, 2017)

(individuals can be liable for their acts of infringement along with corporate parties who also are

responsible).  Each time a visitor to Defendant's Website viewed the Copyrighted Works since

August 15, 2018, Defendant was responsible for a new infringement of Plaintiff's exclusive

display rights:

> The Copyright Act unambiguously states that "[t]o 'display' a work
> means to show a copy of it, either directly or by means of a film,
> slide, television image, or any other device or process ...."  The
> definition's usage of the phrase "any other device or process" clearly
> brings showing a copy of a work through a computer within the
> statutory definition of "display." Thus, each unauthorized showing
> of a Work through a computer infringes on the owner's right of
> public display. Other courts that have considered this issue have
> reached similar conclusions.

*APL Microscopic, LLC v. U.S.*, 144 Fed. Cl. 489, 498 (Fed. Cl. 2019) (citations omitted).  That is

true regardless of who was responsible for the initial infringement.[5]

The *APL Microscopic* Court addressed and rejected the contention relied on by Defendant

in this case—that once an infringing copy of an image is posted on a website no further acts of

infringement giving rise to new infringement claims.  Specifically, the defendant in that case

copied the plaintiff's image and posted it to the defendant's website fourteen years prior to plaintiff

commencing his lawsuit.  The court dismissed the plaintiff's infringement claim based on the right

of reproduction as barred by the applicable three-year statute of limitations (*APL Microscopic*, 144

---

[5] Notably, it would be true even if no one infringed Plaintiff's exclusive right to make
reproductions at all.  *See Goldman v. Breitbart News Agency, LLC*, 302 F.Supp.3d 585, 593
(S.D.N.Y. 2018) (holding defendants are liable for infringing the right of display even if no copy
is made and the original image is merely embedded on the defendants' websites).

Fed. Cl. at 494–96), but denied the defendant's motion to dismiss the plaintiff's claim based on the right of distribution (and the claim based on the right of display, as discussed above), because:

> According to [plaintiff], a public distribution occurs, and its rights are violated, "each and every time a computer user accesses the defendant's website displaying the protected work." [Plaintiff] argues that "[t]his is because every time a computer user accesses the defendant's website displaying the protected work ... [t]he defendant sends information for the relevant page including the protected work to the computer user whose computer assembles the information for display on the user's computer."

*Id.* at 496. The court held that "the act of transmitting the webpage—and the Work therein—to a user would infringe on [the] right" of distribution, and denied the motion to dismiss based on the allegation that such transmission to viewers of defendant's website occurred in the three years prior to commencement of the lawsuit. *Id.* at 498.

Here, we already know that Defendant distributed Plaintiff's Copyrighted Works to over 440 visitors to Defendant's Website since August 15, 2018 (DI 12, ¶ 11), each occurrence constituting a separate act of infringement of Plaintiff's exclusive right to publicly distribute his Copyrighted Works. *Live Face on Web,* 2017 WL 1064664, at *1-2.

In addition to the distribution to a new generation of visitors that no longer would have found the Copyrighted Works on the Website previously owned by Flavorpill (by adding code designed to optimize search results not present before), Defendant affirmatively added terms to the BDG Display Pages granting those visitors a license in the Copyrighted Works.

Moreover, the Amended Complaint adds newly discovered evidence of Defendant's direct infringement of two of the Copyrighted Works on Pinterest Posts. DI 26, ¶ 39 and Exh. M. In all, the Amended Complaint includes numerous allegations of Defendant's direct, affirmative acts causing infringement of the Copyrighted Works.

14

**D.      The Amended Complaint Makes Out A Viable Claim of Indirect Infringement**

**1.      Defendant's Attempt To Avoid The Indirect Infringement Court Is Misplaced**

Defendant attempts to avoid Count II of the Amended Complaint asserting a claim for Indirect Copyright Infringement, arguing that the Count was not included in the version attached to the Rule 15 Motion.  But the Court took no action on Plaintiff's Rule 15 Motion, ruling instead on Plaintiff's Rule 59 Motion that Plaintiff may file any amended complaint by March 3, 2021. DI 25.

Moreover, Defendant's argument ignores the applicable procedural rules which permit Plaintiff to amend as of right, pursuant to Rule 15(a)(1), an amended complaint filed <u>after</u> leave being granted under Rule 15(a)(2).  *See Gilman & Bedijian, LLC v. Sackett*, 2020 WL 5338995 (D.Md. Sept. 4, 2020) (citing cases).  Importantly, "[t]he Third Circuit has adopted a policy of 'strong liberality' in the amendment of pleadings" which is "ensures that a particular claim will be decided on the merits rather than on technicalities."  *Newsome v. Lawson*, 2016 WL 11480210, at *1 (D. Del. Apr. 27, 2016) (internal quotes and citations omitted); *see also Ocimum Biosolutions (India) Ltd. v. LG Corp*, 2021 WL 931094, at *8 (D. Del. Mar. 11, 2021) (following "the Third Circuit's liberal approach to amendment of pleadings").

In short, even if the Court had granted Plaintiff's specific Rule 15(a)(2) Motion to Amend, Plaintiff's immediate further amendment was as of right, pursuant to Rule 15(a)(1), and Count II is part of the operable complaint.

**2.      Plaintiff's amended Complaint Satisfies Both Standards For Indirect Infringement Liability**

Defendant's motion to dismiss inexplicably suggests that Plaintiff has failed to plead any direct infringement by any party, sufficient to sustain an indirect infringement claim against

Defendants. Given that Defendant's entire defense is premised on the contention that Flavorpill is responsible for copying and saving the Copyrighted Works on the Website server acquired by Defendant, the pretense that Defendant believes there is no way to identify a direct infringer if its arguments are accepted is disingenuous.

Contrary to Defendant's description of the applicable standard, there are two theories supporting a finding of indirect copyright infringement: (1) vicarious liability; and (2) contributory liability. The allegations in Plaintiff's Amended Complaint satisfy both.

As to the first theory: "To prevail on a vicarious liability claim, [plaintiff] must prove [defendant] has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Erickson Productions, Inc. v. Kast*, 962 F.3d 822, 829 (9th Cir. 2019) (quoting *VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) and citing *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017)). The Amended Complaint alleges that Defendant had the complete right and ability to supervise and control whether the Copyrighted Works would be displayed on and distributed through the Website, having purchased the infringing versions of the images and the Website on August 18, 2018, then filling the Website, including the specific BDG Display Pages, with its own revenue generating content from which it intended to profit, and displaying the Copyrighted Works along with that newly created content. DI 26, ¶¶ 10–38. Nothing more is required to establish vicarious liability for indirect copyright infringement.

As to the second theory: "A party engages in contributory copyright infringement when it '(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement.'" *Kast*, 921 F.3d at 831 (internal citations omitted). Here, the Amended Complaint expressly alleges that Defendant, a party sophisticated as to copyright requirements,

was aware that Mr. Hussey created the Copyrighted Works and that Defendant never sought, and was aware that it did not have, a license to display or distribute them on its Website.  DI 26, ¶¶ 41–42.  All of Defendant's specific acts cited in Amended Complaint and recited in Section III above materially contributed to the infringing display of the Copyrighted Works.  In fact, Plaintiff alleges that Defendant intentionally added code to the BDG Display Pages so that they would be far more likely to come up in a search and be viewed by online visitors.  *Id.* ¶¶ 35–36.  Nothing more is required to make out contributory liability for indirect copyright infringement.

For these reasons, Defendant's motion to dismiss Plaintiff's timely and well plead infringement claim must fail.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiff requests the Court deny Defendant's motion to dismiss and motion to transfer.

Dated: April 5, 2021                **DUANE MORRIS LLP**

                                            */s/ Mackenzie M. Wrobel*
                                        Mackenzie M. Wrobel (#6088)
                                        222 Delaware Avenue, Suite 1600
                                        Wilmington, DE 19801-1659
                                        Tel: (302) 657-4900
                                        mmwrobel@duanemorris.com

                                        – and –

                                        Steven M. Cowley
                                        (*admitted pro hac vice*)
                                        100 High Street, Suite 2400
                                        Boston, MA  02110-1724
                                        Tel.:  (857) 488-4261
                                        smcowley@duanemorris.com

                                        *Attorneys for Plaintiff*
                                        *Tom Hussey Photography, LLC*